IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HANFORD EXECUTIVE MANAGEMENT EMPLOYEE ASSOCIATION, et al., | ) ) ) ) | 1:11-CV-00828 AWI DLB |
| Plaintiffs, | ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND ORDER |
| v. | ) ) | DENYING PLAINTIFFS' MOTION FOR PRELIMINARY |
| CITY OF HANFORD, et al., | ) ) | INJUNCTION |
| Defendants. | ) ) | [Doc. #12 and #16] |

## INTRODUCTION

Plaintiffs are Executive Management Employees of the City of Hanford. This case arises out of the Hanford City Council voting to make various changes to Plaintiffs' employment pursuant to a proposal submitted by City Manager Hilary Straus. Plaintiffs initiated the present action against the City of Hanford, Straus and the individual members of the Hanford City Council (collectively "Defendants"). In their Complaint, Plaintiffs assert numerous violations of their constitutional rights under the United States and California Constitutions and bring several other state law claims.

Currently before the Court is Defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and Plaintiffs' motion for preliminary injunction.  For the reasons that follow Defendants' motion to dismiss is granted in part and denied in part and Plaintiffs' motion for preliminary injunction is denied.

**LEGAL STANDARD**

A.      Rule 12(b)(1) Motion to Dismiss

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a motion to dismiss for lack of subject matter jurisdiction.  "It is a fundamental precept that federal courts are courts of limited jurisdiction.  The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must not be disregarded nor evaded." Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978).  A challenge to jurisdiction "can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint." Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  Thus, the Court is not restricted to the face of the pleadings and "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988) (citation omitted).  Furthermore, when subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

B.      Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6)**,** a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are

taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face[.]" Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (citations omitted). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

C.      Preliminary Injunction

A plaintiff seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.

1   Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

2       The Ninth Circuit has also concluded that a preliminary injunction may be granted if there

3   are serious questions going to the merits and a balance of hardships that tips sharply towards the

4   plaintiff, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that

5   the injunction is in the public interest.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127,

6   1135 (9th Cir. 2011).

7                                **ALLEGED FACTS**

8       Plaintiffs Cathy Cain ("Cain"), Louis Camara ("Camara"), George Thomas Dibble

9   ("Dibble"), Timothy Ieronimo ("Ieronimo"), Mary Rose Lindsay ("Lindsay"), Carlos Mestas

10  ("Mestas") and Scott Yeager ("Yeager") are Executive Management Employees of the City of

11  Hanford and are members of the Hanford Executive Management Employee Association

12  ("EMEA").  Complaint at ¶¶ 1-8.  EMEA is the exclusive recognized employee organization

13  representing the City of Hanford bargaining unit, which consists of all seven non-exempt

14  Executive Management Employees.  Id. at ¶ 1.

15      On or about November 16, 2010, Camara, Dibble, Ieronimo, Lindsay, Mestas and Yeager

16  signed a memorandum directed to the Hanford City Council and incoming City Council

17  members, entitled, "Vote of No Confidence - City Manager Hilary Straus."  Id. at ¶ 18.  The

18  Hanford City Council consists of Defendants Dan Chin ("Chin"), Sue Sorensen ("Sorensen"),

19  Jim Irwin ("Irwin"), Lou Martinez ("Martinez") and Joleen Jameson ("Jameson").  Id. at ¶¶ 11-

20  15.  Plaintiffs' three-page memorandum set forth the reasons why each of the signatories had no

21  confidence in the ability of Straus to properly perform the duties of Hanford City Manager.  Id. at

22  ¶ 18.  Some of the stated reasons included allegations of dishonest, unethical and potentially

23  illegal conduct, hiding information from management and the public, improperly awarding

24  contracts to Straus' friends, potential Brown Act violations, and other unprofessional conduct.

25  Id.

26      On March 10, 2011, Straus met with EMEA representatives.  Id. at ¶ 23.  It was not until

27

28                                       4

March 10, 2011 that Plaintiffs discovered that Straus had submitted a proposal for the March 15, 2011 Hanford City Council meeting that would make substantial changes to Plaintiffs' employment.  Id.  The proposed changes included:

a.   Converting Executive Management Employees from permanent employees with property rights in their employment to at-will employees;

b.   Revising the Seniority, Layoff and Bumping provisions to strip Executive Management Employees of the right to return to previously held positions and reemployment rights in the event of a layoff;

c.   Stripping disciplinary appeal rights from Executive Management Employees;

d.   Changing the process by which Executive Management Employees progress through salary steps and creating a right to deny what were previously automatic step increases on the grounds of "average" performance; and

e.   Increasing Executive Management Employees' contributions toward retirement, and decreasing the City of Hanford's contributions toward retirement for Executive Management Employees, including the individual Plaintiffs herein, which also had the impact of decreasing their salaries for purposes of retirement benefit calculations.

Id.  The proposed changes differed from the rules and regulations set forth in the applicable Personnel Rules and Regulations, including the Policy of Administration for Executive Management that was in effect prior to March 15, 2011.  Id. at ¶ 24.

On or about March 11, 2011, all seven individual Plaintiffs signed and submitted a Petition for Recognition and Certification petitioning the Hanford City Council for formal recognition of EMEA as the bargaining unit for the individual Plaintiffs.  Id. at ¶ 19.  On March 15, 2011, prior to the Hanford City Council meeting, the EMEA wrote to the City Council and addressed the chief concerns of EMEA and its members.  Id. at ¶ 25.  The letter warned that passing the proposal by Straus could expose the City of Hanford to liability and could also expose the individual City Council members and Straus to personal liability.  Id.

On the evening of March 15, 2011, the Hanford City Council met to discuss Straus' proposal.  Id. at ¶ 26.  Numerous individuals, including EMEA's counsel, spoke against the proposal, and highlighted the illegal nature of many of the components of the proposal.  Id.  The

1  Hanford City Council unanimously ratified the proposal.  Id.

2        On March 22, 2011, the EMEA delivered a follow-up letter to the Hanford City Council,

3  again advising it of the illegality of the City Council's actions.  Id. at ¶ 27.  The letter warned that

4  if the City Council's actions were not immediately overturned, EMEA and its members would

5  file suit.  Id.  On March 25, 2011, the Hanford City Attorney responded by stating that the City

6  Council would not rescind its actions.  Id. at ¶ 28.  In response, on March 30, 2011, EMEA filed

7  a Government Claim form with the City of Hanford and an amended Government Claim form on

8  April 13, 2011.  Id.  Subsequently, the present action ensued.

9                                   **DISCUSSION**

10  A.      Defendants' Rule 12(b)(1) Motion to Dismiss is denied.

11          1.      Defendants' argument that the Court lacks subject matter jurisdiction over
12                  Plaintiffs' claims for violations of the Public Safety Officers' and Firefighters'
                    Procedural Bill of Rights Acts fails.
13

14        In their Rule 12(b)(1) motion to dismiss, Defendants argue that the Court lacks subject

15  matter jurisdiction to hear Plaintiffs' tenth and eleventh claims for relief brought under the Public

16  Safety Officers' Procedural Bill of Rights Act and Firefighters' Procedural Bill of Rights Act.

17  Motion at 3, Doc. 12-1 at 9.  Defendants argue that Plaintiffs are asking the Court to issue an

18  advisory opinion because Plaintiffs Mestas and Ieronimo have not been removed by the City of

19  Hanford.[1]  Id. at 4, Doc. 12-1 at 10.

20        Defendants' argument is premised on Plaintiffs asserting their claims under California

21  Government Code §§ 3304(c) and 3254(c), which provide that no police chief or fire chief may

22  be removed by a public agency, or appointing authority, without providing the chief of police or

23  fire chief with written notice and the reason or reasons therefor and an opportunity for

24  administrative appeal.  Cal. Gov. Code §§ 3304(c) and 3254(c).  Plaintiffs clarify in their

25

26        [1]      Plaintiff Mestas is the City of Hanford Police Chief.  Complaint at ¶ 7.  Plaintiff
27  Ieronimo is the City of Hanford Fire Chief.  Id. at ¶ 5.

28                                          6

opposition that they are asserting their tenth and eleventh claims for relief under California Government Code §§ 3304(b) and 3254(b), which relate to whether a punitive action can be undertaken by a public agency against a public safety officer or firefighter without an opportunity for administrative appeal.  Cal. Gov. Code §§ 3304(b) and 3254(b); Opposition at 2, Doc. 17 at 9.  Therefore, Defendants' argument is irrelevant to Plaintiffs' tenth and eleventh claims for relief.  Accordingly, Defendants' Rule 12(b)(1) motion to dismiss Plaintiffs' tenth and eleventh claims for relief is DENIED.

       2.      The Court has subject matter jurisdiction over Plaintiff Cain's claims.

Defendants argue that Plaintiff Cain lacks standing to bring her claims.  First, Defendants contend that Cain has no standing to bring her first, fourth and ninth claims for relief because they are based on retaliation for the Plaintiffs submitting the memorandum to the City Council.[2] Motion at 5, Doc. 12-1 at 11.  Defendants state that there is no case or controversy because Plaintiffs do not allege that Cain signed the memorandum to the Hanford City Council and therefore was not subject to retaliation for submitting the memorandum.  Id.

Plaintiffs clarify that Cain's first, fourth and ninth claims for relief are not based on her signing the memorandum, but are based on her protected associational activity, which includes forming the EMEA and engaging in protective collective activity.  Opposition at 4, Doc. 17 at 11; see also Complaint at ¶¶ 30, 53 and 77.  Since Cain's claims for relief are not based on her signing the memorandum, Defendants' argument fails.

Second, Defendants argue that Plaintiffs' second, third, fifth, sixth and seventh claims for relief are based on allegations that Plaintiffs' rights were vested as permanent employees of the City of Hanford.  Motion at 5, Doc. 12-1 at 11.  Defendants contend that there is no case or controversy with respect to Cain because Plaintiffs allege that Cain is not a permanent employee

---

[2]    Plaintiffs' first claim for relief is brought under 42 U.S.C. § 1983 for violation of the First Amendment of the United States Constitution.  Plaintiffs' fourth claim for relief is brought under California Civil Code § 52.1 for violations of Article I, § 2(A) and 3 of the California Constitution.  Plaintiffs' ninth claim for relief is brought under California Labor Code § 1102.5 for retaliation against whistleblower.

1   and therefore Cain could not have had any vested rights taken away.  Id.

2       In their Complaint, Plaintiffs allege that prior to becoming Interim Community

3   Development Director, Cain was a permanent employee as Assistant Planner and then Planning

4   Manager.  Complaint at ¶ 2.  In their opposition, Plaintiffs reiterate that Cain is a permanent

5   employee despite her current title being Interim Community Development Director.  Opposition

6   at 3, Doc. 17 at 10.  Therefore, Defendants' argument fails.  Accordingly, Defendants' Rule

7   12(b)(1) motion to dismiss Plaintiff Cain's claims for relief is DENIED.

8   B.   Defendants' Rule 12(b)(6) Motion to Dismiss is granted in part and denied in part.

9
        1.   Plaintiffs have not stated a claim for alleged violations of the Contract Clause of
10           the United States Constitution or California Constitution.

11      Defendants seek to dismiss Plaintiffs' sixth and seventh claims for relief for violations of

12  the Contract Clause of the United States and California Constitutions.[3]  Defendants argue that

13  Plaintiffs have no vested contractual rights in the terms and conditions of their employment.

14  Motion at 6-8, Doc. 12-1 at 12-14.

15      In their sixth and seventh claims for relief, Plaintiffs allege that they are guaranteed

16  certain contractual rights relating to their employment with Defendant City of Hanford, including

17  (1) the right to continue holding their positions except and unless just cause is shown for

18  termination; (2) the right to a due process hearing regarding discipline; (3) the right to progress

19  through the established salary steps pursuant to the terms in place at the time Plaintiffs were

20  hired and during their employment; and (4) the entitlement to certain specified retirement

21  benefits.  Complaint at ¶¶ 70 and 75.  Plaintiffs allege that Defendants violated Plaintiffs' vested

22

23

24      [3]     Plaintiffs' Complaint is unclear whether their sixth claim for relief for violation of
    the Contract Clause of the United States Constitution is being asserted under 42 U.S.C. § 1983.
    The Court notes that a deprivation of the right of a party not to have a state, or a political
25  subdivision thereof, impair its obligations of contract is a right secured by the first article of the
    United States Constitution and may give rise to a cause of action under 42 U.S.C. § 1983.  S. Cal.
26  Gas Co. v. City of Santa Ana, 336 F.3d 885, 886-87 (9th Cir. 2003).  Plaintiffs are instructed that
    any amended complaint must clarify whether their sixth claim for relief is being asserted under
27  42 U.S.C. § 1983.

28                                          8

contractual rights by changing the City of Hanford's Executive Management Policies at the March 15, 2011 City Council meeting. Id. at ¶¶ 71 and 76.

With respect to Plaintiffs' sixth claim for relief, Article I, Section 10, Clause 1 of the United States Constitution provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." Courts undertake a threshold inquiry to determine whether contract rights have been impaired, examining "whether the state law, has, in fact, operated as a substantial impairment of a contractual relationship." Energy Reserves Group, Inc. v. Kan. Power & Light Co., 459 U.S. 400, 411 (1983). "That inquiry includes (1) whether a contract exists as to the specific terms allegedly at issue, (2) whether the law in question impairs an obligation under that contract and (3) whether the discerned impairment can fairly be characterized as substantial." San Diego Police Officers' Ass'n v. San Diego City Emps. Ret. Sys., 568 F.3d 725, 736-37 (9th Cir. 2009) (citations omitted). Laws that substantially impair state or local contractual obligations are nevertheless valid if they are "reasonable and necessary to serve an important public purpose." U.S. Trust Co. v. N.J., 431 U.S. 1, 25 (1977).

"Although federal courts look to state law to determine the existence of a contract, federal rather than state law controls as to whether state or local statutes or ordinances create contractual rights protected by the Contracts Clause." San Diego, 568 F.3d at 737 (citing Nev. Emps. Ass'n v. Keating, 903 F.2d 1223, 1227 (9th Cir. 1990)). Nevertheless, federal courts do "accord respectful consideration and great weight to the views of the State's highest court." Gen. Motors Corp. v. Romein, 503 U.S. 181, 187 (1977). "Under federal law the state's statutory language must evince a clear and unmistakable indication that the legislature intends to bind itself contractually before a state legislative enactment may be deemed a contract for purposes of the Contracts Clause." San Diego, 568 F.3d at 737 (citations omitted).

It is well established in California that public employment, by and large, is not held by contract, but by statute. Bernstein v. Lopez, 321 F.3d 903, 905 (9th Cir. 2003) (citing Miller v. State of California, 18 Cal. 3d 808, 813 (1977)). "The public employee, thus, can have no vested

contractual right in the terms of his or her employment, such terms being subject to change by the proper statutory authority."  Hinchliffe v. City of San Diego, 165 Cal. App. 3d 722, 725 (1985) "No cited case recognizes a vested right to employment terms after a proper revision of those terms."  Id. at 726-727.

For example, in Risley v. Board of Civil Service Commissioners of the City of Los Angeles, 60 Cal. App. 2d 32 (1943), plaintiffs were city employees that had gained civil service status and were entitled to various benefits, including protection against discharge other than for cause, and other promotional and seniority benefits.  The city subsequently passed a charter amendment that plaintiffs argued would result in the loss of their vested contractual rights.  Id. at 34.  The California Court of Appeal disagreed:

> Plaintiffs' first two contentions may be considered together, as they involve the same fallacious concept, which is, that plaintiffs have a vested, contractual, right to have the terms of their employment continue unaffected by charter amendments.  That they have rights, by virtue of the provisions of the charter, which the courts will protect against unauthorized infringement by the city or any of its legislative or executive officers or boards, is undoubtedly true, and is recognized in the large number of cases cited by the plaintiffs.  But that these rights are vested, contractual, rights, protected by the state and federal constitutional provisions forbidding the impairment of contracts and the taking of "property" without due process, so that they cannot be changed, is not true, and none of the cases relied upon by plaintiffs holds it to be true.  The rights to which plaintiffs would cling are created by or under the provisions of the charter and are dependent upon those provisions.  They may all be lost by the repeal of the provisions or modified by an amendment to the provisions, at the will of those who determine what the charter's terms shall be.

Id. at 37.

The California Supreme Court recognized that public employees do not have vested contractual rights in Miller v. State of California, 18 Cal. 3d 808 (1977).  In Miller, when plaintiff was hired by the State Controller, the mandatory retirement age was 70.  Id. at 811. During his employment, the legislature changed the mandatory retirement age to 67.  Id. Plaintiff argued that he had a "vested, contractual right, based on the mandatory retirement age in effect when he was first employed by the state, to continue in state service until age 70."  Id. at 813.  The California Supreme Court disagreed.  The court held that "it is well settled in

10

California that public employment is not held by contract but by statute" and that "no

employee has a vested contractual right to continue in employment beyond the time or contrary

to the terms and conditions *fixed by law*." Id. at 813 (emphasis added).  Therefore, the court

concluded that "the power of the Legislature to reduce the tenure of plaintiff's civil service

position and thereby to shorten his state service, by changing the mandatory retirement age was

not and *could not be limited by any contractual obligation*."  Id. at 814 (emphasis added).

In light of these "long and well settled principles," the Court concludes that the power of

the Hanford City Council to change the terms and conditions of Plaintiffs' employment could not

be limited by any contractual obligations.  Miller, 18 Cal. 3d at 814.

In their opposition, Plaintiffs rely upon decisions concerning the pension rights of public

employees.  Plaintiffs argue that these cases stand for the proposition that public employees have

vested contractual rights in the terms of their employment that cannot be repealed by amendment.

Plaintiffs are incorrect.  For example, Plaintiffs cite to Kern v. City of Long Beach, 29 Cal. 2d

848 (1947).[4]  In Kern, the California Supreme Court recognized the long standing principle that

public employment is not held by contract.  The court, however, distinguished pension rights

from the "right to remain in an office or employment, or to the continuation of civil service

status."  Id. at 853.  The court concluded that pension rights are protected by the Contract Clause

of the Constitution because they are deferred compensation earned immediately upon the

performance of services for a public employer and cannot be destroyed without impairing a

contractual obligation.  Id.  The Court agrees with Plaintiffs that California law is clear that

promised compensation creates a contractual right, which once vested, "cannot be eliminated

without unconstitutionally impairing the contract obligation."  Olson v. Cory, 27 Cal. 3d 532,

538 (1979).  Nonetheless, the cases Plaintiffs rely on do not stand for the proposition that public

---

[4]     Plaintiffs also cite to Carman v. Alvord, 31 Cal. 3d 318 (1982); International Association of Firefighters, Local 145 (IAFF) v. City of San Diego, 34 Cal. 3d 292 (1983); Legislature v. Eu, 54 Cal. 3d 492 (1991); and Lyon v. Flournoy, 271 Cal. App. 2d 774 (1969). Opposition at 4-6, Doc. 17 at 11-13.  These cases all stand for the general proposition that an employee has a vested contractual right in their pension benefits.

employees have vested contractual rights in the specific terms of their employment that cannot be altered by the proper authority.  The rights Plaintiffs allege were taken away were conferred by the City of Hanford's Personnel Rules and Regulations.  Complaint at ¶ 24.  Thus, these rights "may all be lost by the repeal of the provisions or modified by an amendment to the provisions, at the will of those who determine what the charter's terms shall be."  Risley, 60 Cal. App. 2d at 37.

In addition, Plaintiffs' reliance on Skelly v. State Personnel Board, 15 Cal. 3d 194 (1975) is misplaced.  Opposition at 5 n.2, Doc. 17 at 12.  Plaintiffs argue that Risley is irrelevant to this case because it was decided prior to Skelly, which concluded that there is a vested property interest in public employment.  Id.  In Skelly, the California Supreme Court concluded that the "California statutory scheme regulating civil service employment confers upon an individual who achieves the status of 'permanent employee' a property interest in the continuation of his employment which is protected by due process."  Id. at 206.  The court explicitly recognized that these property rights are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  Id. at 207.  Thus, Skelly did not conclude, as Plaintiffs suggest, that permanent employees have vested contractual rights that cannot be repealed or amended by the proper statutory authority.  Rather, the Skelly court recognized that the scope of a public employees' property rights are subject to the laws that created them.

Finally, Plaintiffs' attempt to distinguish Hinchliffe is also unpersuasive.  Plaintiffs argue that Hinchliffe is factually distinguishable because Hinchliffe involved a probationary employee, whereas in this case all the Plaintiffs are permanent employees.  Opposition at 5-6, Doc. 17 at 12-13.  Plaintiffs state that Hinchliffe found that "[s]ome cases involve the undisputedly vested rights of *permanent*, not probationary employees."  Opposition at 6, Doc. 17 at 13.  In Hinchliffe, plaintiff was a probationary police officer.  Hinchliffe, 165 Cal. App. 3d

at 724.  At the time of plaintiff's hiring, probationary police officers upon removal were entitled

to a hearing before the civil service commission.  Id.  During her probationary period, the City

Charter was amended, which resulted in this right being eliminated for probationary police

officers.  Id.

The California Appellate Court concluded that the charter amendment did not "impinge

on any constitutionally protected right[.]"  Id.  The court held that the Contract Clause was not

violated by the Charter amendment because "[p]ublic employment . . . is not held by contract, but

by statute" and thus the public employee "can have no vested contractual right in the terms of his

or her employment, such terms being subject to change by the proper statutory authority."  Id. at

725 (citations omitted).  The court emphasized that "employees of charter governments work

subject to the amendment, revision or repeal of charter provisions affecting their employment."

Id.

The Hinchliffe court did recognize that "public employment may give rise to certain

obligations which are constitutionally protected."  Id. (citation omitted).  For example, the court

discussed the fact that promised compensation, such as pension rights, cannot be taken away

without violating the Contract Clause.  Id. at 726 (citing to Kern, 29 Cal. 2d at 852-53).

The Court also recognized that permanent employees have certain constitutional rights that

probationary employees do not have, including property rights that are protected by due process.

Id. at 726 (citations omitted).  The court cited to Skelly, among others, for this proposition.

Thus, the fact that the plaintiff was a probationary employee was relevant to whether plaintiff had

any due process rights that entitled her to a hearing.  The court's analysis of whether the Contract

Clause was violated was not dependent on plaintiff being a probationary employee.  Therefore,

Plaintiffs' argument is unpersuasive.

Accordingly, Defendants' motion to dismiss Plaintiffs' sixth claim for relief is

GRANTED.  The Court concludes that the above analysis is equally applicable to Plaintiffs'

seventh claim for relief, which is based on a violation of the Contract Clause of the California

1 Constitution.  Therefore, Defendants' motion to dismiss Plaintiffs' seventh claim for relief is also

2 GRANTED.

3     The Court notes that Plaintiffs do allege in their Complaint that the Hanford City Council

4 impaired Plaintiffs' entitlement to certain specified retirement benefits.  Complaint at ¶¶ 70 and

5 75.  Specifically, Plaintiffs allege that the March 15, 2011 amendments increased Executive

6 Management Employees' contributions towards retirement and decreased the City of Hanford's

7 contributions towards retirement.  Id. at ¶ 23.  Plaintiffs allege that this amendment had the

8 impact of decreasing their salaries for purposes of retirement benefit calculations.  Id.

9     It is unclear whether Plaintiffs are alleging that the Hanford City Council's March 15,

10 2011 amendments impaired their contractual rights to pension benefits.  However, a "government

11 entity may make reasonable modifications and changes in the pension system."  Miller, 18 Cal.

12 3d at 816.  "Thus, a 'public pension system is subject to the implied qualification that the

13 governing body may make reasonable modifications and changes before the pension becomes

14 payable and that until that time the employee does not have a right to any fixed or definite

15 benefits but only to a substantial or reasonable pension.'"  Id. (citing to Kern, 42 Cal. 2d at 183).

16 Thus, to the extent Plaintiffs are alleging that the March 15, 2011 Hanford City Council

17 amendments impaired Plaintiffs' vested contractual rights to promised compensation, Plaintiffs

18 are granted leave to amend.

19       2.     Plaintiffs have not stated a claim under 42 U.S.C. § 1983 for violations of
substantive or procedural due process.

20

21     Defendants seek to dismiss Plaintiffs' second and third claims for relief, which are

22 brought under 42 U.S.C. § 1983 for violations of substantive and procedural due process.

23 Defendants argue that (1) Plaintiffs have not identified a protected interest; (2) Plaintiffs have not

24 alleged that the Hanford City Councils' actions were arbitrary or irrational; and (3) the legislative

25 process provides all the process that is due.  Motion at 8-9, Doc. 12-1 at 14-15.

26     In their second claim for relief, Plaintiffs allege that their substantive due process rights

27

28                                      14

were violated because they were each stripped of their property interest in their public

employment, which prior to March 15, 2011 had been a vested right that could only be taken

away for just cause after a disciplinary hearing meeting the requirements of due process.

Complaint at ¶ 39.  In their third claim for relief, Plaintiffs allege that they were deprived of

procedural due process when the Hanford City Council failed to conduct an evidentiary or other

due process hearing prior to the City Council's actions on March 15, 2011.  Id. at ¶ 47.

To prevail on a § 1983 claim for a procedural due process violation, a plaintiff must show

deprivation of a protected property or liberty interest without being given due process.  Bd. of

Regents v. Roth, 408 U.S. 564, 569-70 (1972).  "To state a substantive due process claim, the

plaintiff must show as a threshold matter that a state actor deprived it of a constitutionally

protected life, liberty or property interest."  Shanks v. Dressel, 540 F.3d 1082, 1087 (9th Cir.

2008) (citation omitted).  The substantive due process clause "guards against arbitrary and

capricious government action, even when the decision to take that action is made through

procedures that are in themselves constitutionally adequate."  Halverson v. Skagit Cnty., 42 F.3d

1257, 1261 (9th Cir. 1994) (citation omitted).  "The protections of substantive due process have

for the most part been accorded to matters relating to marriage, family, procreation, and the right

to bodily integrity."  Graham v. Connor, 490 U.S. 386, 395 (1989).  Accordingly, where, as here,

plaintiffs rely on substantive due process to challenge governmental action that does not impinge

on a fundamental right, federal courts "do not require that the government's action actually

advance its stated purposes, but merely look to see whether the government could have had a

legitimate reason for acting as it did."  Halverson, 42 F.3d at 1262.

The Ninth Circuit addressed a similar case in Rea v. Matteucci, 121 F.3d 483 (9th Cir.

1997).  In Rea, plaintiff was employed as a hearing officer for the state of Nevada and was

classified as a permanent employee.  Id. at 484.  During her employment, the Nevada legislature

enacted a new bill that removed the permanent status of her job.  Id.   Thereafter, plaintiff was

terminated.  Id.  Plaintiff brought suit against her supervisors under 42 U.S.C. § 1983, arguing

that the Nevada legislature's reclassification of plaintiff's position as an at will office and her

subsequent termination from employment violated her Fourteenth Amendment due process

rights.

As an initial matter, the Ninth Circuit stated that a "property entitlement, such as that of

continued employment in a state job, is grounded in state law." Id. (citing to Logan v.

Zimmerman Brush Co., 455 U.S. 422, 430 (1982)).  Thus, the Ninth Circuit concluded that

"plaintiff had a property interest in her continued employment as a hearings officer, until the

position was reclassified pursuant to a statute adopted by the Nevada Legislature and signed into

law by the Governor."  Id.

Nevertheless, the Ninth Circuit emphasized that "[a] state has control over the offices it

creates.  A state legislature may at [its] pleasure create or abolish them, or modify their duties.  It

may also shorten or lengthen the term of service."  Id. (citing to Higginbotham v. City of Baton

Rouge, 306 U.S. 535, 538 (1939)).  "When a state alters a state-conferred property right through

the legislative process, 'the legislative determination provides all the process that is due[.]'"  Id.

(citing to Logan, 455 U.S. at 430; Gattis v. Gravett, 806 F.2d 778, 781 (8th Cir. 1986)).  "Thus,

the legislative process is sufficient to comport with minimal federal due process requirements."

Id.

However, the Ninth Circuit noted that "this rule does not eviscerate all due process

rights" of the plaintiff in Rea.  A "federal interest remains in 'protecting the individual citizen

from state action that is wholly arbitrary or irrational.'"  Id. (citing to Logan, 455 U.S. at 433).

"Similarly, an individual claiming a defect in the legislative process might have a claim for due

process violations."  Id. (citing to Atkins v. Parker, 472 U.S. 115, 130 (1985)).  The Ninth Circuit

affirmed the district court's granting of summary judgment for the defendant because the plaintiff

produced no evidence that the legislative process was defective or that the legislation was

arbitrary.  Id. at 485.

In this case, Defendants are incorrect that Plaintiffs do not have a property interest that is

1    protected by the due process clause.  Similar to <u>Rea</u>, Plaintiffs, as permanent employees, had a

2    property interest in their continued employment until their positions were reclassified pursuant to

3    the amendments enacted at the March 15, 2011 Hanford City Council meeting.  <u>Id.</u> at 484; <u>see</u>

4    <u>also</u> <u>Skelly</u>, 15 Cal. 3d at 206.

5         However, Plaintiffs have not stated a claim for a violation of either procedural or

6    substantive due process.  Plaintiffs' primary argument in their opposition with respect to their

7    procedural due process claim is that Defendants failed to provide the safeguards required under

8    federal law and to which the individual Plaintiffs are entitled to, including a disciplinary hearing.

9    <u>Opposition</u> at 7, Doc. 17 at 14; Complaint at ¶ 46.  As stated above, the legislative process is

10   sufficient to comport with minimum federal procedural due process requirements.  Moreover,

11   Plaintiffs do not allege that the Hanford City Council's actions were arbitrary or irrational.

12        Plaintiffs do argue in their opposition that Defendants have ignored the City of Hanford's

13   own Rules and Regulations in enacting the March 15, 2011 amendments, which could give rise

14   to a due process claim.  <u>Id.</u> at 8-9, Doc. 17 at 15-16.  These allegations, however, were not in the

15   Complaint.  <u>See</u> <u>Broam v. Bogan</u>, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (facts raised in

16   opposition papers may not defeat a motion to dismiss, but may be considered by the court to

17   determine whether dismissal should be with or without prejudice).  Accordingly, Defendants'

18   motion to dismiss Plaintiffs' second and third claims for relief is GRANTED without prejudice

19   and with leave to amend.

20
     3.      Plaintiffs have not stated a claim under the California Constitution for a violation
21           of substantive or procedural due process.

22        Defendants seek to dismiss Plaintiffs' fifth claim for relief under Article 1, § 7 and 19 of

23   the California Constitution for violation of Plaintiffs' substantive and procedural due process

24   rights.  Similar to their second and third claims for relief, Plaintiffs allege in their fifth claim for

25   relief that they were deprived of their substantive and procedural due process rights when they

26   were stripped of their vested property interests in their public employment which could only be

27

28                                              17

taken away for just cause after a disciplinary hearing meeting the requirements of due process. Complaint at ¶ 63.

The California Constitution prohibits the government from depriving a person of property without due process of law.  Kavanau v. Santa Monica Rent Control Bd., 16 Cal. 4th 761, 771 (1997); Cal. Const., Art. I, § 7.  The substantive due process clause "prevents government from enacting legislation that is 'arbitrary' or 'discriminatory' or lacks 'a reasonable relation to a proper legislative purpose.'"  Id. (citation omitted).  The procedural due process clause of the California Constitution exists "to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner."  D&M Fin. Corp. v. City of Long Beach, 136 Cal. App. 4th 165, 175 (2006) (citations omitted).

Plaintiffs concede in their opposition that they have not alleged that the Hanford City Council's actions were arbitrary or irrational.  Opposition at 12-13, Doc. 17 at 19-20. Accordingly, Defendants' motion to dismiss Plaintiffs' fifth claim for relief for violations of their substantive due process rights under the California Constitution is GRANTED without prejudice and with leave to amend.

With respect to Plaintiffs' procedural due process claim under the California Constitution, Plaintiffs maintain that each individual Plaintiff was entitled to an evidentiary or due process hearing prior to the Hanford City Council's actions on March 15, 2011.  Opposition at 11, Doc. 17 at 18.  Plaintiffs are incorrect.  The California Supreme Court has held that legislative action is not burdened by procedural due process requirements.  Horn v. Cnty. of Ventura, 24 Cal. 3d 605, 612 (1979).  "Where a rule of conduct applies to more than a few people it is impracticable that everyone should have a direct voice in its adoption.  The Constitution does not require all public acts to be done in town meeting or an assembly of the whole.  General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard.  Their rights are protected in the only way that they can be in a complex society, by their power,

immediate or remote, over those who make the rule." Id. (citation omitted).

Thus, "only a governmental decision that is adjudicative in nature-a decision involving the application of a rule to a specific set of facts-is subject to these procedural due process principles. A legislative action-the formulation of a rule to be applied in all future cases-is not burdened by such requirements." People ex rel. San Francisco Bay Conservation and Dev. Comm'n v. Gianulias, 188 Cal. App. 3d 520, 528 (1986). "Where a rule of conduct applies to more than a few people it is impractical that every one should have a direct voice in its adoption." Id.

In this case, Plaintiffs allege that the Hanford City Council ratified amendments to the City of Hanford's Personnel Rules and Regulations that made substantial changes to the Policy of Administration for Executive Management Employees, which applied to each of the individual Plaintiffs. Complaint at ¶ 23. The Court concludes that Plaintiffs have not sufficiently alleged how the Hanford City Council's actions on March 15, 2011 were adjudicative, which would then give rise to procedural due process rights under the California Constitution. From the allegations in the Complaint, it appears that the March 15, 2011 amendments applied to all future Executive Management Employees of the City of Hanford, which would make the action legislative. Accordingly, Defendants' motion to dismiss Plaintiffs' fifth claim for relief for violations of their procedural due process rights under the California Constitution is GRANTED without prejudice and with leave to amend.

4.    Plaintiffs have not alleged that they exhausted their administrative remedies for their ninth claim for relief.

Defendants move to dismiss Plaintiffs' ninth claim for relief for retaliation against whistleblower pursuant to California Labor Code § 1102.5. Defendants argue that Plaintiffs have failed to exhaust their administrative remedies as required by California Labor Code § 98.7(a). Motion at 12-13, Doc. 12-1 at 18-19.

Prior to bringing an action under section 1102.5, a plaintiff is required to exhaust all

administrative remedies.  <u>Campbell v. Regents of the Univ. of Cal.</u>, 35 Cal. 4th 311, 317 (2005).

Specifically, a plaintiff is required to exhaust administrative remedies before the Labor

Commissioner pursuant to California Labor Code § 98.7(a) prior to filing a judicial action under

section 1102.5.  <u>Ortiz v. Lopez</u>, 688 F. Supp. 2d 1072, 1081 (E.D. Cal. 2010); <u>Neveu v. City of</u>

<u>Fresno</u>, 392 F. Supp. 2d 1159, 1180 (E.D. Cal. 2005).

In their opposition, Plaintiffs argue that the only administrative process that is required is

the filing of a Government Claim.  <u>Opposition</u> at 20, Doc. 17 at 27.  This argument is

unpersuasive and was expressly rejected in <u>Creighton v. City of Livingston</u>, 628 F. Supp. 2d

1199, 1221 (E.D. Cal. 2010).  In <u>Creighton</u>, the court examined whether a plaintiff, who alleged

compliance with the California Tort Claims Act and "all applicable administrative remedies,"

sufficiently exhausted his remedies in order to allow him to proceed under section 1102.5.  <u>Id.</u>

The court held that the filing a Tort Claim did not satisfy the purposes of exhaustion for a section

1102.5 claim.  <u>Id.</u>  Thus, the court dismissed the section 1102.5 claim because there were no

factual allegations that the plaintiff filed a claim with the Labor Commissioner prior to

commencing the suit.  <u>Id.</u>

Similarly, in this case, there is no allegation that Plaintiffs have filed a claim with the

Labor Commissioner prior to filing this action.  Accordingly, Defendants' motion to dismiss

Plaintiffs' ninth claim for relief is GRANTED without prejudice and with leave to amend.

> 5.      Plaintiffs have not stated a claim for violations of the Public Safety Officers'
> Procedural Bill of Rights Act or Firefighters' Procedural Bill of Rights Act.

Defendants move to dismiss Plaintiffs Mestas and Ieronimo's tenth and eleventh claims

for relief, which are brought under the Public Safety Officers' Procedural Bill of Rights Act

("PSOPBRA") and Firefighters' Procedural Bill of Rights Act ("FPBRA").  Defendants argue

that no "punitive action" has been taken against Plaintiffs Mestas or Ieronimo.  <u>Reply</u> at 8, Doc.

21 at 11.

In the tenth and eleventh claims for relief, Plaintiffs allege that Defendants violated the

1   PSOPBRA and FPBRA by stripping Plaintiffs Mestas and Ieronimo of their status as permanent

2   employees and converting them into at will employees without a full evidentiary hearing.

3   Complaint at ¶¶ 87 and 94.

4          The PSOPBRA and FPBRA set forth a number of basic rights and protections that must

5   be accorded individual public safety officers and firefighters by the public agencies that employ

6   them.[5]  White v. Cnty. of Sacramento, 31 Cal. 3d 676, 679 (1982).  California Government Code

7   §§ 3304(b) and 3254(b) provide that no punitive action shall be undertaken by any public agency

8   against any public safety officer or firefighter without providing the public safety officer or

9   firefighter with an opportunity for administrative appeal.  Cal Gov. Code §§ 3304(b) and

10  3254(b).  A "punitive action" is defined as any action that may lead to dismissal, demotion,

11  suspension, reduction in salary, written reprimand, or transfer for purposes of punishment.  Cal.

12  Gov. Code §§ 3303 and 3251(c).  Section 3304(b) "does not provide for an automatic

13  administrative appeal, but merely requires that an opportunity for such an appeal be provided . . .

14  [T]he procedural details for implementing the provisions for an administrative appeal are to be

15  formulated by the local agency."  James v. City of Colorado, 106 Cal. App. 4th 905, 909 (2003)

16  (internal quotation marks and citations omitted).

17         In their opposition, Plaintiffs conclude that "taking away an employee's property interest

18  in their job and converting them to at-will status is both a punitive action and an act that could

19  lead to any of the adverse consequences noted."  Opposition at 21, Doc. 17 at 28.  However,

20  Plaintiffs have not sufficiently alleged in their Complaint how the Hanford City Council's

21  enactment of the March 15, 2011 amendments constituted a punitive action.  It is unclear how the

22  Defendants' actions were "per se disciplinary" or "punitive" in nature as required by section

23  3304(b) and 3254(b).  White, 31 Cal. 3d at 681.  Moreover, Plaintiffs have not sufficiently

24  alleged how the enactment of the amendments may lead to any of the adverse consequences at a

25

26         [5]      With few exceptions that are not applicable to this case, the FPBRA mirrors and is
    substantially the same as the PSOPBRA.  Therefore, the Court will rely on precedent under the
27  PSOPBRA and apply it to the FPBRA.

28                                              21

future time.  See James v. City of Coronado, 106 Cal. App. 4th 905, 909 (2003) (holding that punitive action, sufficient to trigger a public safety officer's administrative appellate rights under PSOPBRA, may exist when action is taken which may lead to adverse consequences at some future time).

In addition, Plaintiffs maintain that even where there is no punitive action or any conduct that can lead to punitive action, a right to an administrative appeal exists if the action has an adverse potential impact on the officer.  Opposition at 2, Doc. 17 at 9.  Plaintiffs analogize this case to Hopson v. City of Los Angeles, 139 Cal. App. 3d 347 (1983).  In Hopson, two police officers were involved in the shooting of a citizen.  Id. at 349.  The Board of Police Commissioners proposed to enter into each officers' personnel file a report that concluded the officers' actions had violated departmental polices and represented serious errors in judgment. Id. at 350.  The California Court of Appeal concluded that placing the report in the officers' personnel file was a "punitive action" because of its "potential impact on the career opportunities of the two officers[.]"  Id. at 352.  Specifically, the court emphasized that the reports would have a negative effect upon the officers' future employment prospects and their ability to gain or seek transfers.  Id. at 353 n.2.

Plaintiffs contend that in this case "what the City did far exceeds just a 'negative report' that might someday impact career opportunities.  Rather, the City made a change which stripped Plaintiffs Mestas and Ieronimo of [their] due process rights and made their employment at-will, subject to discharge at any time without cause."  Opposition at 3, Doc. 17 at 10.  The Court is not persuaded by Plaintiffs' argument.  Plaintiffs have not alleged in the Complaint how the change of employment status will impact their future career opportunities.  Unlike in Hopson, Plaintiffs have not alleged that the change in employment status will negatively impact their ability to seek a promotion or transfer.

Accordingly, Defendants' motion to dismiss Plaintiffs' tenth and eleventh claims for relief is GRANTED without prejudice and with leave to amend.

6.     Defendants' motion to dismiss Plaintiffs' first and fourth claims for relief is denied.

Defendants move to dismiss Plaintiffs' first and fourth claims for relief.  Plaintiffs' first claim for relief is brought under 42 U.S.C. § 1983 for violation of Plaintiffs' rights to freedom of speech, association and collective activity under the First Amendment.  Plaintiffs' fourth claim for relief is brought under California Civil Code § 52.1 for violation of Plaintiffs' rights to freedom of speech, association, and collective activity under Article I, § 2(A) and 3 of the California Constitution.  Plaintiffs allege that Defendants retaliated against Plaintiffs through the March 15, 2011 City Council amendments because Plaintiffs submitted the memorandum to the City Council and engaged in political activity to promote the interests of the union.  Complaint at ¶¶ 30-31 and 53-54.  Defendants' motion to dismiss relates only to Plaintiffs' freedom of speech claim, arguing that Plaintiffs have not engaged in protected speech because the memorandum submitted to the Hanford City Council did not relate to a matter of public concern.  Motion at 10-12, Doc. 12-1 at 16-18.

It is well settled that the state may not abuse its position as employer to stifle the First Amendment rights its employees would otherwise enjoy as citizens to comment on matters of public interest.  Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968).  The Supreme Court has explained that "[t]he problem in any case is to arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  Id.

In order to determine whether a plaintiff has stated a First Amendment retaliation claim, courts examine (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of

the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.[6] Id.

With respect to the first element, which is the sole focus of Defendants' motion, "[s]peech involves a matter of public concern when it can fairly be considered to relate to 'any matter of political, social, or other concern to the community.'" Johnson v. Multnomah Cnty., Or., 48 F.3d 420, 422 (9th Cir. 1995) (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). But "speech that deals with 'individual personnel disputes and grievances; and that would be of 'no relevance to the public's evaluation of the performance of governmental agencies' is generally not of 'public concern.'" Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (quoting McKinley v. City of Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983)). "'Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.'" Johnson, 48 F.3d at 422 (quoting Connick, 461 U.S. at 147-48).

The crux of Defendants' argument is that Plaintiffs' memorandum to the Hanford City Council relates solely to personnel and personal issues that Plaintiffs have with Defendant Straus. Motion at 11-12, Doc. 12-1 at 17-18. Plaintiffs concede that portions of their memorandum relate to individual personnel disputes and grievances and thus do not relate to a matter of public concern, but argue that portions of the memorandum directly relate to matters of public concern. Opposition at 15, Doc. 17 at 22.

In their memorandum, Plaintiffs' concern with Straus' management style and the "hostile work environment" Straus has created appear to relate to Plaintiffs' individual personnel disputes

---

[6]     California Courts utilize the Pickering test in order to examine whether a public employee has stated a claim for violation of freedom of speech under the California Constitution. Kaye v. Bd. of Trs. of San Diego Cnty. Public Law Library, 179 Cal. App. 4th 48 (2009). Therefore, the Court's analysis under Pickering is also applicable to Plaintiffs' fourth claim for relief.

and grievances with Straus.[7]  Complaint at Exhibit 1, Doc. 1-2 at 1.  Nonetheless, "misuse of public funds, wastefulness, and inefficiency in managing and operating government entities are matters of inherent public concern."  Johnson, 48 F.3d at 425.  The memorandum states that "Straus continues to purchase non-budgeted items without seeking public Council approval" and "Straus lied about the need for an 'expert financial' consultant, who in reality is a 'close, personal friend[.]'"  Complaint at Exhibit 1, Doc. 1-2 at 3.  The memorandum further states that Straus made certain hires without doing a request for qualifications.  Id.  These statements directly relate to the misuse of public funds and wastefulness and are therefore matters of public concern.

In addition, "[u]nlawful conduct by a government employee or illegal activity within a government agency is a matter of public concern."  Thomas v. City of Beaverton, 379 F.3d 802, 809 (9th Cir.2004).  The memorandum indicates that there are potential Brown Act violations because Straus repeatedly advises staff that particular action is required because it was directed by the City Council.  Id.  The Brown Act requires that most meetings of a local agency's legislative body be open to the public for attendance by all.  Los Angeles Times Commc'ns v. Los Angeles Cnty. Bd. of Supervisors, 112 Cal. App. 4th 1313, 1321 (2003).  Whether or not the Hanford City Council and Defendant Straus were having secret meetings and taking action in violation of the Brown Act is a matter of public concern.  Therefore, at least certain statements within Plaintiffs' memorandum touch upon matters of public concern.  If some part of a communication addresses an issue of public concern, the First Amendment's protections will be triggered.  Connick, 461 U.S. at 149.  Accordingly, Defendants' motion to dismiss Plaintiffs'

---

[7]     "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the motion into a Rule 56 motion for summary judgment[.]"  United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment."  Id. at 908.  In this case, Plaintiffs have attached the memorandum to the Complaint and incorporated the memorandum by reference.  Complaint at ¶ 18 and Exhibit 1.  Therefore, the Court will consider the memorandum in ruling on Defendants' motion to dismiss.

first and fourth claim for relief is DENIED.

       7.     The individual City Council members are entitled to absolutely immunity in their individual capacities with respect to Plaintiffs' first claim for relief.

In the alternative, Defendants contend that even if Plaintiffs' first claim for relief survives Defendants' arguments above, the individual City Council members are entitled to absolute legislative immunity in their individual capacities.[8] <u>Motion at 14-17</u>, Doc. 12-1 at 20-23.

"Local legislators are entitled to absolute immunity from § 1983 liability for their legislative activities." <u>Bogan v. Scott-Harris</u>, 523 U.S. 44, 53 (1998).  Absolute legislative immunity attaches to all actions taken "in the sphere of legitimate legislative activity." <u>Tenney v. Brandhove</u>, 341 U.S. 367, 376 (1951).  "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it."  <u>Bogan</u>, 523 U.S. at 54. Thus, a court must determine whether the actions of the legislators, when "stripped of all considerations of intent and motive," were legislative rather than administrative or executive.  <u>Id.</u>

The Ninth Circuit has set out a four-factor analysis for determining whether an act is legislative for the purposes of establishing absolute immunity.  The court must consider: "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." <u>Kaahumanu v. Cnty. of Maui</u>, 315 F.3d 1215, 1220 (9th Cir. 2003) (internal quotation marks omitted).

       A.     Whether the act was an ad hoc decision.

An "ad hoc" decision is one made "based on the circumstances of the particular case" rather than a decision that effectuates policy or creates a binding rule of conduct.  <u>Id.</u>  For example, in <u>Kaahumanu</u>, the Ninth Circuit held that a city council's denial of a conditional use

---

[8]     In light of the Court's conclusion that Plaintiffs have not stated a claim for their second and third claims for relief, the Court will not address Defendants' alternative arguments with respect to those claims.

1   permit was ad hoc because the decision only affected a single permit and a single parcel of land

2   and therefore the decision did not effectuate any new policy.  Id.  In contrast, in this case,

3   Plaintiffs allege that the Hanford City Council amended the Personnel Rules and Regulations

4   applying to Executive Management Staff.  Complaint at ¶¶ 21, 23 and 26.  These changes

5   included, *inter alia*, converting Executive Management Employees from permanent to at-will

6   employees and changing the process by which Executive Management Employees progress

7   through salary steps.  Id. at  23.  Thus, unlike in Kaahumanu, the Hanford City Council

8   effectuated new policies that did not only affect Plaintiffs.

9        In their opposition, Plaintiffs argue that the Hanford City Council's actions were ad hoc

10  because the actions only impact Plaintiffs.  Opposition at 22, Doc. 17 at 29.  Plaintiffs state that

11  the Hanford City Council's actions only strip Plaintiffs' rights away because any new employees

12  hired would be hired into a situation where those rights did not exist.  Id.  In addition, Plaintiffs

13  state that this was not a City-wide change to all employees, rather it was a decision that was

14  made to target Plaintiffs.  Id.  Plaintiffs' arguments are both without merit.  First, general

15  legislative acts that have an inordinate impact on certain individuals do not necessarily deprive

16  legislators of absolute immunity.  See Bogan, 523 U.S. at 54-56 (granting absolute immunity to

17  legislators who voted to eliminate one position from city government); San Pedro Hotel Co., Inc.

18  v. City of Los Angeles, 159 F.3d 470, 476 (9th Cir. 1998) (granting absolute immunity to a

19  legislator who lobbied and voted against a loan to a specific party).  Second, as stated above, in

20  determining whether a decision is legislative, the Court must remove "all considerations of intent

21  and motive."  The Hanford City Council members' conduct involved the formulation of policy

22  and therefore this factor weighs in favor of legislative immunity.

23        B.      Whether the act applied to a few individuals or the public at large.

24        "When the act in question applies to a few individuals rather than the public at large,

25  legislative immunity is disfavored."  Kaahumanu, 315 F.3d at 1222.  "An act need not affect a

26  city's entire population in order to be considered legislative.  It is sufficient that the act affects a

27

28                                          27

discrete group of people or places." Cmty. House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 960 (9th Cir. 2010).

In this case, the act in question affected a discrete group of people, which are Executive Management Employees for the City of Hanford.  In addition, the act did not only affect the individual Plaintiffs because there are prospective implications for future Executive Management Employees.  See Bogan, 523 U.S. at 56 (stating that "termination of a position . . . unlike the hiring or firing of a particular employee, may have prospective implications that reach well beyond the particular occupant of the office").  Therefore, this factor weighs in favor of finding legislative immunity.

C.      Whether the act is formally legislative in character and bears all the hallmarks of traditional legislation.

The Hanford City Council members' actions at the March 15, 2011 meeting were undoubtedly formally legislative in character and bore all the hallmarks of traditional legislation.  See Bogan, 523 U.S. at 55 (stating that "acts of voting . . . were, in form, quintessentially legislative").  Moreover, the City Council members voting to ratify the proposed amendments "reflected a discretionary, policymaking decision" in determining the Personnel Rules and Regulations that apply to Executive Management employees.  Therefore, these factors also weigh in favor of finding legislative immunity.

Accordingly, the Court concludes that the individual City Council member Defendants are entitled to absolute legislative immunity with respect to Plaintiffs' first claim for relief.[9] The Court notes, however, that an act is not legislative in nature when the acting official's process fails to comply with the law.  Bechard v. Rappold, 287 F.3d 827, 831 (9th Cir. 2002).  As

---

[9]      It appears to the Court that absolute legislative immunity may also apply to Defendant Straus.  Officials outside the legislative branch are entitled to absolute legislative immunity when they perform legislative functions.  Supreme Court of Va. v. Consumers Union of United States, Inc., 446 U.S. 719, 731-34 (1980).  Actions taken that are integral steps in the legislative process are entitled to absolute immunity.  Bogan, 523 U.S. 44, 55 (citations omitted).  However, this argument was not raised in Defendants' motion to dismiss and the Court declines to address it sua sponte.

discussed earlier in this order, Plaintiffs raise new allegations in their opposition that relate to whether the Hanford City Council's actions failed to comply with the City of Hanford's Rules and Regulations.  These allegations, however, were not contained within the Complaint.  Therefore, dismissal is without prejudice and with leave to amend.

       8.     Defendants' argument that Straus is entitled to qualified immunity fails.

     Defendants argue that even if Plaintiffs' first claim for relief survives their arguments above, that Defendant Straus is entitled to qualified immunity.[10]  Motion at 17-18, Doc. 12-1 at 23-24.  Defendants assert that Straus is entitled to qualified immunity with respect to Plaintiffs' first claim for relief because Plaintiffs have not sufficiently alleged that Defendants violated Plaintiffs' freedom of speech.  Id.  Defendants repeat their argument that Plaintiffs' memorandum is not protected activity because it spoke on personnel issues and grievances which are unprotected speech.  Id.  Therefore, Defendants contend that "[b]ecause Plaintiffs' only possible constitutional right is one that as a matter of law is not protected speech, qualified immunity should be granted" to Defendant Straus in his individual capacity.  Motion at 18, Doc. 12-1 at 24.

     In § 1983 actions, the doctrine of qualified immunity protects city officials from personal liability in their individual capacities for their official conduct so long as that conduct is objectively reasonable and does not violate clearly-established federal rights.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A qualified immunity analysis consists of two prongs: (1) whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [official's] conduct violated a constitutional right" and (2) whether that right was clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001).

     In this case, the Court has already concluded above that parts of the memorandum address

---

[10]    Having concluded that the individual City Council members are entitled to absolute legislative immunity, the Court will not address Defendants' argument that the individual City Council members are entitled to qualified immunity.

issues of public concern. Accordingly, Defendants' motion to dismiss Plaintiffs' first claim for relief against Defendant Straus based on qualified immunity is DENIED.

C.      Plaintiffs' Motion for Preliminary Injunction

Having determined that (1) Plaintiffs' first claim for relief against Defendant Straus and (2) the fourth claim for relief against Straus and the City Council members survive Defendants' dismissal motion, the Court now turns to Plaintiffs' motion for preliminary injunction.[11]

Plaintiffs seek an injunction that enjoins Defendants from (1) undertaking or performing any activity or conduct that is inconsistent with, contradicted by, or not in conformity with the City of Hanford's Merit System Rules and Regulations in effect on March 14, 2011; (2) conducting any adverse or disciplinary activity against Plaintiffs that is not in conformity with the procedures required to be utilized as set forth in the City of Hanford's Merit System Rules and Regulations that were in effect as of March 14, 2011; (3) undertaking or conducting any adverse activity relating to the employment of all the individual Plaintiffs that has a premise that any of said Plaintiffs are at will employees; (4) undertaking or conducting activity against Plaintiffs that has the effect of denying to said Plaintiffs any "bumping" rights as set forth in the City of Hanford's Merit System Rules and Regulations in effect as of March 14, 2011; (5) undertaking or conducting any activity as to Plaintiff Cain that has the effect of denying any step pay increases to which she was entitled pursuant to the City of Hanford's Merit System Rules and Regulations in effect as of March 14, 2011; and (6) undertaking or conducting any retaliatory, punitive or adverse activity against Plaintiffs based on or related to any associational or union-related activities. Motion at 2-3, Doc. 16 at 2-3.

---

[11]     On November 16, 2011, Plaintiffs filed a Statement of Recent Decision, requesting that the Court consider Jaramillo v. County of Orange, Nos. G043142, G043813, 2011 WL 5338998, at *1 (Cal. Ct. App. Nov. 8, 2011) in connection with their motion for preliminary injunction. In Jaramillo, it was undisputed that there was a violation of PSOPBRA. Id. The court noted that if a court concludes that there is a violation of PSOPBRA, it has "no choice but to order an 'appropriate injunction'" under California Government Code § 3309.5. In this case, the Court has concluded above that Plaintiffs have not stated a claim for any violation of PSOPBRA or FPBRA. Therefore, Jaramillo is not relevant to whether this Court must issue an injunction in this case.

A "preliminary injunction is an extraordinary and drastic remedy." Munaf v. Geren, 553 U.S. 674, 689 (2008). As such, the Court may only grant such relief "upon a clear showing that the plaintiff is entitled to such relief." Winter, 555 U.S. at 22. A plaintiff seeking a preliminary injunction must establish: (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. Id. at 21. In the alternative, the Ninth Circuit has concluded that a preliminary injunction may be granted if there are serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011).

1.      Likelihood of Success on the Merits

Plaintiffs contend that there is a high probability that they will succeed on the merits. As noted above, only two of Plaintiffs' claims have survived Defendants' motion to dismiss: (1) Plaintiffs' first claim for relief against Straus and (2) Plaintiffs' fourth claim for relief against Straus and the individual City Council members. With respect to these claims, Plaintiffs have not demonstrated that they will succeed on the merits.

Plaintiffs' first and fourth claims for relief relate to whether (1) Defendants retaliated against Plaintiffs for their submission of their memorandum to the Hanford City Council in violation of Plaintiffs' rights to freedom of speech under the United States and California Constitutions; (2) Defendants' retaliated against Plaintiffs for submitting their memorandum in violation of Plaintiffs' right to petition the government for redress of grievances in violation of the United States and California Constitutions; and (3) Defendants retaliated against Plaintiffs to punish Plaintiffs for exercising their associational rights in violation of the United States and California Constitutions.

A.      Freedom of Speech

In order to succeed on Plaintiffs' freedom of speech claims, Plaintiffs must establish that (1) the Plaintiffs spoke on a matter of public concern; (2) the Plaintiffs spoke as private citizens; (3) the Plaintiffs protected speech was a substantial or motivating factor in the adverse employment action; (4) the state did not have an adequate justification for treating Plaintiffs differently from other members of the general public; and (5) the state would not have taken the adverse employment actions even absent the protected speech.  Pickering, 391 U.S. at 568.

As against Defendant Straus, Plaintiffs have not established that their protected speech was a substantial and motivating factor in Straus submitting his proposal to the Hanford City Council.  In Keyser v. Sacramento City Unified School District, 265 F.3d 741 (9th Cir. 2001), the Ninth Circuit listed three ways in which a plaintiff can show that retaliation was a substantial or motivating factor behind a defendant's adverse employment actions.  First, a plaintiff can introduce evidence regarding the proximity of time between the protected action and the allegedly retaliatory employment decision from which a jury can logically infer that the plaintiff was terminated in retaliation for his speech.  Id. at 751 (citation omitted).  Second, a plaintiff can introduce evidence that "his employer expressed opposition to his speech, either to him or to others."  Id.  Third, the plaintiff can introduce evidence that "his employer's proffered explanations for the adverse employment action were false and pre-textual."  Id. at 752.

In this case, Plaintiffs contend that this requirement is established because Straus submitted the proposal to the Hanford City Council only four months after Plaintiffs submitted their memorandum.  Motion at 28, Doc. 16-12 at 9.  Plaintiffs point out that the Ninth Circuit has stated that "three to eight months is easily within a time range that can support an inference of retaliation."  Coszalter v. City of Salem, 320 F.3d 968, 977 (9th Cir. 2003).  Nonetheless, the Ninth Circuit also stated in Coszalter that "[t]here is no set time beyond which acts cannot support an inference of retaliation, and there is no set time within which acts necessarily support an inference of retaliation."  Id. at 978.  "Whether an adverse employment action is intended to

32

be retaliatory is a question of fact that must be decided in the light of the timing and the surrounding circumstances." Id.

In support of their opposition to Plaintiffs' motion for preliminary injunction, Defendants submit the declaration of Defendant Straus.  Straus has declared and submitted evidence that the March 15, 2011 policy changes were discussed by Straus and the Hanford City Council long before Plaintiffs submitted the memorandum.  Straus states that he began employment with the City of Hanford in December 2008 as Deputy City Manager.  Straus Declaration at ¶ 1, Doc. 19 at 1.  When the City Manager position became available, Straus applied for the position and created a plan that included various policy changes, including at-will status for all management staff and a shift from "seniority based" operations.  Id. at ¶ 2 and Exhibit A, Doc. 19 at 1 and 6.  On January 27, 2010, Straus interviewed with the Hanford City Council for the City Manager position at which time he presented his plan to amend certain employment policies.  Id. at ¶ 3, Doc. 19 at 1.

Straus interviewed with the Hanford City Council again on February 10, 2010, where he presented another document to the City Council.  Id. at ¶ 4 and Exhibit B, Doc. 19 at 2 and 10.  The document included a proposal that required employees to begin paying their share of retirement costs.  Id.  Straus states that his employment plan was developed in approximately January 2010 and is consistent with the strategic plan of the Hanford City Council that was developed later that year on June 4, 2010, which was four months prior to Plaintiffs' submission of their memorandum.  Id. at ¶ 5, Doc. 19 at 2.  Straus was officially promoted to City Manager on May 1, 2010.  Id. at ¶ 6, Doc. 19 at 2.

Straus began working on the text of the policies presented to the Hanford City Council in approximately August 2010, which was a month before Plaintiffs issued their memorandum.  Id. at ¶ 19, Doc. 19 at 3.  In February 2011, negotiations began with the bargaining unit representing the Confidential and Mid-management Employees, who were the direct subordinates of the individual Plaintiffs.  Id. at ¶ 7, Doc. 19 at 2.  The individual Plaintiffs had not been publicly

33

made aware of Straus' employment plan.  Id. at ¶ 8, Doc. 19 at 2.  As part of the negotiations

with the Confidential and Mid-Management Unit, Straus wished to implement some of the

changes in the plan presented to the City Council during his interviews.  Id. at ¶ 9, Doc. 19 at 2.

Straus declares that he called a meeting with the individual Plaintiffs on March 10, 2011

because Straus did not want the individual Plaintiffs to learn of the proposed changes via

negotiations with their subordinates.  Id. at ¶ 10, Doc. 19 at 2.  At the meeting, Straus informed

Plaintiffs of the changes that he would be proposing to the City Council on March 15, 2011.  Id.

at ¶ 11, Doc. 19 at 2.  On March 15, 2011, Straus proposed the amendments to the City of

Hanford's personnel policies, which were consistent with the plan he presented to the City

Council during his hiring process.  Id. at ¶¶ 11-12, Doc. 19 at 2-3.  Straus states that Plaintiffs'

memorandum had nothing to do with the implementation or timing of the policy changes.  Id. at ¶

20, Doc. 19 at 3.  The implementation of the amendments was the continuation of Straus' plan to

reorganize the City of Hanford and the timing was driven purely by negotiations with Plaintiffs'

subordinates.  Id.  Straus' declaration and supporting exhibits are strong evidence that he was

planning to implement these changes to Plaintiffs' employment prior to the submission of

Plaintiffs' memorandum.  Moreover, this evidence also supports prong five of the Pickering test

because it shows that Straus would have proposed the amendments to the City of Hanford even

absent Plaintiffs' protected speech.

In their reply brief, Plaintiffs argue that the fact that Straus claims that he first began

preparing his plan prior to the submission of Plaintiffs' memorandum does not preclude the

determination that his actions were retaliatory.  Reply at 9, Doc. 22 at 13.  Plaintiffs cite to the

declaration of Plaintiff Lindsay because she states that she began complaining to the prior City

Manager about Straus' conduct as far back as January 2009, which was before Straus states he

began formulating his employment plan.  Id.  Plaintiffs' argument is unpersuasive.  Plaintiffs'

freedom of speech claims, as alleged in the Complaint, are based on the submission of their

memorandum.  Plaintiffs' Complaint does not include any allegations that Lindsay complained to

the prior City Manager about Straus in January 2009.  Moreover, even assuming Plaintiffs are

basing their freedom of speech claims on Plaintiff Lindsay's complaints to the prior City

Manager, it is unclear whether her complaints addressed matters of public concern.  Plaintiff

Lindsay's declaration merely states that she "became aware of certain conduct and activities on

[Straus'] part that I believed were improper and merited investigation by the City.  I reported this

conduct to the then City Manager beginning in January 2009 and continuing thereafter."  Lindsay

declaration at ¶ 10, Doc. 16-13 at 2.  Lindsay does not specify the nature or scope of her report,

making it impossible for the Court to determine whether it garners first amendment protections.

Accordingly, Plaintiffs have failed to establish that they are likely to succeed on their freedom of

speech claims against Straus.

As against the City Council members, Plaintiffs also fail to establish the likelihood of

success of their freedom of speech claim under the California Constitution.  Plaintiffs have not

established that their protected speech was a substantial and motivating factor in the City Council

members voting for the amendments.  Straus' declaration indicates that the Hanford City Council

became aware of Straus' plan during Straus' interviews in January and February 2010.  Straus

declaration at ¶¶ 3-4, Doc. 19 at 2-3.  Straus declared that the Hanford City Council began

formulating a plan to amend personnel policies on June 4, 2010, which was four months prior to

Plaintiffs' submission of their memorandum.  Id. at ¶ 5, Doc. 19 at 2.  This is strong evidence

that the City Council members did not vote to make changes to the personnel policies in

retaliation for Plaintiffs' submission of their memorandum.  Therefore, Plaintiffs have not

established the likelihood of success of their freedom of speech claim under the California

Constitution against the individual City Council members.

B.      Freedom to petition for redress of grievances

In their first and fourth claims for relief, Plaintiffs bring claims for violations of their

right to petition the government for redress of grievances.  Plaintiffs state that their memorandum

constituted a petition to the City of Hanford for redress of grievances with respect to the waste,

1  inefficiencies and illegal activities on the part of Straus.  Motion at 31-33, Doc. 16-12 at 12-14.

2  Plaintiffs contend that the subsequent actions of Straus and the City Council members in

3  amending the Executive Management Employee personnel policies constituted retaliation in

4  violation of Plaintiffs' right to petition government for redress of grievances.  Id.

5         In their attempt to establish the likelihood of success on their right to petition claims,

6  Plaintiffs cite to Borough of Duryea, Pennsylvania v. Guarnieri, 131 S. Ct. 2488 (2011).  In

7  Guarnieri, the Supreme Court concluded that when a public employee asserts a First Amendment

8  claim based on the right to petition for grievances, courts should utilize the four-pronged

9  Pickering test that is applied in freedom of speech cases.  Id. at 2500.  The Supreme Court

10  emphasized that the "framework used to govern Speech Clause claims by public employees,

11  when applied to the Petition Clause, will protect both the interests of the government and the

12  First Amendment right."  Id.  Therefore, Plaintiffs argue that since they established the likelihood

13  of success on their freedom of speech claims under Pickering that they also established the

14  likelihood of success on their right to petition claims.  Motion at 32-33, Doc. 16-12 at 13-14.  In

15  light of the Court's conclusion above regarding the likelihood of success of Plaintiffs' freedom of

16  speech claims under Pickering, the Court also concludes that Plaintiffs have not established a

17  likelihood of success on their right to petition claims.

18                C.      Freedom of association

19         In their first and fourth claims for relief, Plaintiffs assert that Straus and City Council

20  members retaliated against Plaintiffs by enacting the personnel policies because of Plaintiffs'

21  union activity in violation of their right to freedom of association.  Motion at 33, Doc. 16-12 at

22  14.  Plaintiffs also contend that the right of association of Plaintiff EMEA was violated as a

23  result of Defendants' conduct.  Id.

24         In order to succeed on their freedom of association claims, Plaintiffs must establish that

25  they were (1) engaged in protected association; (2) Defendants took an adverse employment

26  against them; and (3) Plaintiffs' association was a substantial or motivating factor for the adverse

27

28                                              36

1    employment action.  Hudson v. Craven, 403 F.3d 691, 695 (9th Cir. 2005).

2            Similar to Plaintiffs' freedom of speech and right to petition claims, Plaintiffs have not

3    established that any of Defendants' conduct was undertaken in retaliation for Plaintiffs' union

4    activities.  Plaintiffs' motion for preliminary injunction merely concludes that Defendants'

5    conduct was motivated by Plaintiffs' union activity.  Motion at 33-35, Doc. 16-12 at 14-16.

6    The only evidence Plaintiffs cite to is the declaration of Plaintiff Mestas.  Id.  In Mestas'

7    declaration, he states that on June 28, 2011, he attended the Hanford City Council meeting in his

8    capacity as Vice President of the EMEA.  Mestas declaration at ¶ 18, Doc. 16-8 at 8.  Mestas

9    states that the City Council had placed on the agenda a resolution to put into effect the retirement

10   payment plan that had been voted on as part of the City Council's activities on March 15, 2011.

11   Id.  Specifically, the June 28, 2011 resolution sought to require the Hanford Executive

12   Management employees to begin paying 6% contributions to their retirement plan which had not

13   been previously required.  Id.

14           Mestas states that at the June 28, 2011 meeting he indicated that the retirement plan

15   payments had not been the subject of any meet and confer activities between the City of Hanford

16   and EMEA.  Id. at ¶ 19, Doc. 16-8 at 9.  Mestas states that he requested that the City Council

17   table the resolution until the meet and confer activities had been conducted.  Id.  However, the

18   City Council denied Mestas' request and voted to implement the retirement contribution plan.

19   Id.

20           Plaintiffs contend that this evidence illustrates Defendants' motive to retaliate against

21   Plaintiffs for their associational activity.  Motion at 33, Doc. 16-12 at 14.  The Court disagrees.

22   As discussed above, Defendants have submitted evidence that Straus proposed plans to the

23   Hanford City Council regarding the City of Hanford's personnel policies beginning in January

24   and February 2010.  Straus declaration at ¶¶ 3-4, Doc. 19 at 1-2.  The Hanford City Council

25   began formulating their plan on June 4, 2010.  Id. at ¶ 5, Doc. 19 at 2.  Straus states that he began

26   working on the text of the policies that were presented to the Hanford City Council in

27

28                                                     37

approximately August 2010. Id. at ¶ 19, Doc. 19 at 3.  Straus states that as of March 10, 2011 he had no knowledge that Plaintiff EMEA existed or that the individual Plaintiffs were considering the formation of a union.  Id. at ¶¶ 14-15.  Plaintiffs did not submit their paperwork to the Hanford City Council to be recognized as a bargaining unit until March 11, 2011.  Complaint at ¶ 19.[12]  This evidence is strong support that Plaintiffs' associational activity was not a substantial or motivating factor in the proposal and enactment of the March 15, 2011 amendments. Accordingly, the Court concludes that Plaintiffs have failed to establish a likelihood of success on their freedom of association claims.

2.       Serious questions on the merits and balance of hardships

As stated above, in the alternative, the Ninth Circuit has held that a "preliminary injunction is appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."  Alliance, 632 F.3d at 1134-35.  In light of the Court's conclusions that Plaintiffs' claims have either (1) failed to survive Defendants' dismissal motion or (2) failed to establish a likelihood of success on the merits, the Court also concludes that Plaintiffs have not raised serious questions with respect to the merits of their claims.

Since Plaintiffs have failed to establish a likelihood of success on the merits and have not raised serious questions with respect to the merits of their claims, Plaintiffs' motion for preliminary injunction is DENIED.

**CONCLUSION**

IT IS HEREBY ORDERED that:

1.       Defendants' Rule 12(b)(1) motion to dismiss is DENIED;

2.       Defendants' Rule 12(b)(6) motion to dismiss is GRANTED in part and DENIED

---

[12]      Straus states that a special City Council meeting was scheduled on March 22, 2011 in order to officially recognize EMEA as the exclusive representative for the individual Plaintiffs.  Straus declaration at ¶ 17, Doc. 19 at 3.

1           in part;

2       3.      Plaintiffs' motion for preliminary injunction is DENIED; and

3       4.      Any amended complaint must be filed within twenty-one (21) days of the filing of

4           this order.

5 IT IS SO ORDERED.

6

Dated:   __November 17, 2011__

7                                CHIEF UNITED STATES DISTRICT JUDGE