**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HANFORD EXECUTIVE MANAGEMENT EMPLOYEE ASSOCIATION, CATHY CAIN, LOUIS CAMARA, GEORGE THOMAS DIBBLE, TIMOTHY IERONIMO, MARY ROSE LINDSAY, CARLOS MESTAS, SCOTT YEAGER, | 1:11-cv-00828-AWI-DLB ORDER RE: MOTION FOR RECONSIDERATION AND/OR MOTION TO ALTER OR AMEND JUDGMENT (Doc. 34) |

                        Plaintiffs,

        v.

CITY OF HANFORD, HILARY STRAUS,
DAN CHIN, SUE SORENSEN, JIM
IRWIN, LOU MARTINEZ,
JOLEEN JAMESON,

                        Defendants.
_____

**I. INTRODUCTION**

Plaintiffs Hanford Executive Management Employee Association et al. have filed a motion for reconsideration and/or to alter or amend judgment in response to the Court's November 17, 2011 order granting in part and denying in part the motion of Defendants City of Hanford et al. to dismiss the complaint and denying Plaintiffs' motion for preliminary injunction. For reasons discussed below, the motion for reconsideration and/or to alter or amend judgment shall be denied.

## II. FACTS AND PROCEDURAL BACKGROUND[1]

On May 19, 2011, plaintiffs Hanford Executive Management Employee Association ("EMEA"), Cathy Cain, Louis Camara, George Thomas Dibble, Timothy Ieronimo, Mary Rose Lindsay, Carlos Mestas and Scott Yeager (hereinafter referred to as "Plaintiffs") filed their complaint for damages and injunctive relief against defendants City of Hanford ("City"), Hilary Straus, Dan Chin, Sue Sorensen, Jim Irwin, Lou Martinez and Joleen Jameson (hereinafter referred to as "Defendants"), alleging causes of action for (1) violation of 42 U.S.C. § 1983 – freedom of speech, association and collective activity; (2) violation of 42 U.S.C. § 1983 – substantive due process; (3) violation of 42 U.S.C. § 1983 – procedural due process; (4) violation of Article I, § 2(A) and 3 of the California Constitution, Civil Code § 52.1; (5) violation of Article I, § 7 and 19 of the California Constitution, Civil Code § 52.1; (6) violation of the Contract Clause of the United States Constitution, Art. I, section 10; (7) violation of the California Constitution, Article I, section 9; (9) retaliation against whistleblower – California Labor Code Section 1102.5; (10) violation of Public Safety Officers' Procedural Bill of Rights Act – California Gov. Code § 3300 et seq.; (11) violation of Firefighters' Procedural Bill of Rights Act – California Gov. Code § 3250 et seq.; (12) injunctive relief and (13) declaratory relief.[2]  In the complaint, Plaintiffs alleged that EMEA is the "exclusive recognized employee organization representing the City of Hanford bargaining unit" and the individual plaintiffs are "non-exempt executive management employees" of City.  Plaintiffs further alleged as follows:

---

[1] The Court refers the parties to the order issued November 17, 2011 (*Hanford Executive Management Association v. City of Hanford,* slip copy, 2011 WL 5825691 (E.D.Cal. 2011) (*Hanford Executive*)) for a complete chronology of the proceedings and brief discussion of the legal standards governing motions to dismiss and requests for preliminary injunction.

[2] Plaintiffs asserted only twelve causes of action but labeled them 1 through 7 and 9 through 13; an eighth cause of action was inadvertently omitted.  For the sake of clarity, the Court shall refer to the causes of action as they are labeled, not in the order in which they appear numerically.

"18. On or about November 16, 2010, six of the seven individual Plaintiffs in this matter (CAMARA, DIBBLE, IERONIMO, LINDSAY, MESTAS and YEAGER) signed a memorandum directed to the Hanford City Counsel and incoming City Council Members, entitled, 'Vote of No Confidence – City Manager Hilary Straus.' The three page document set forth the reasons why each of the signatories had no confidence in the ability of STRAUS to properly perform the duties of Hanford City Manager. Some of these stated reasons included allegations of dishonest, unethical and potentially illegal conduct, hiding information from management and the public, improperly awarding contracts to STRAUS' friends, potential Brown Act violations, and other unprofessional conduct. Attached hereto as Exhibit 1, and incorporated herein by this reference is a true and correct copy of the Vote of No Confidence Memorandum regarding STRAUS, dated November 16, 2010."

Plaintiffs further alleged:

"19. On or about March 11, 2011, all seven of the individuals named as Plaintiffs in this matter signed and submitted a Petition for Recognition and Certification petitioning the Hanford City Council for formal recognition of EMEA as the bargaining unit for the individual Plaintiffs. [¶] 20. A true and correct copy of the applicable Personnel Rules and Regulations, including the Policy of Administration for Executive Management, in effect prior to March 15, 2011 is attached hereto as Exhibit 2, and incorporated herein by this reference. [¶] 21. Attached hereto as Exhibit 3, and incorporated herein by this reference is a true and accurate copy of the March 15, 2011 Memorandum to the City Council, which proposed changes to the Personnel Rules and Regulations. [¶] 22. Attached hereto as Exhibit 3, and incorporated herein by this reference is a true and accurate copy of the City of Hanford Management Pay Plan that existed prior to the City of Hanford's March 15, 2011 amendments. Among other changes, the pay plan was revised so that step increases can now be denied for 'average' performance, where previously step increases could not be denied for 'average' performance."

Plaintiffs further alleged:

"23. STRAUS, on behalf of each and every one of the Defendants, first met with EMEA representatives on March 10, 2011, to discuss the changes proposed to the Hanford City Council for ratification on March 15, 2011. At the time of that meeting, STRAUS refused to provide the EMEA representatives with the PowerPoint presentation that was shown to the City Council on March 15, 2011. It was not until March 10, 2011 that Plaintiffs first discovered there was an item on the agenda, submitted to the City Council by STRAUS which would amend the City's Personnel Rules and Regulations to make substantial changes to the Policy of Administration for Executive Management Employees, which applied to each of the individual Plaintiffs. The proposed changes included: [¶] a. Converting Executive Management Employees from Permanent employees with property rights in their employment to at-will employees; [¶] b. Revising the Seniority, Layoff and Bumping provisions to strip Executive Management Employees of the right to return to previously held positions and reemployment rights in the event of a layoff; [¶] c. Stripping disciplinary appeal rights from Executive Management Employees; [¶] d. Changing the process by which Executive Management Employees progress through salary steps and creating a right to deny what were previously automatic step increases on the grounds of 'average' performance; and [¶] e. Increasing Executive Management Employees' contributions toward retirement, and decreasing Hanford's contributions

3

toward retirement for Executive Management Employees, including the individual Plaintiffs herein, which also had the impact of decreasing their salaries for purposes of retirement benefit calculations. [¶] 24. The changes outlined in the paragraph above differed from the rules and regulations set forth in the applicable Personnel Rules and Regulations, including the Policy of Administration for Executive Management, in effect prior to March 15, 2011."

Plaintiffs further alleged:

"25. On March 15, 2011, prior to the Hanford City Council meeting, the EMEA wrote to the City Council and addressed the chief concerns of the EMEA and its members. The letter also warned the City Council that passing the proposal by City Manager STRAUS could expose the CITY OF HANFORD to liability and could also expose the individual City members and City Manager STRAUS to personal liability. Attached hereto as Exhibit 5, and incorporated herein by this reference is a true and correct copy of the EMEA's letter of March 15, 2011, addressed to the City Council. [¶] 26. On the evening of March 15, 2011, the HANFORD City Council met to discuss the proposal by City Manager STRAUS. Numerous individuals, including EMEA's counsel, spoke against the proposal, and highlighted the illegal nature of many of the components of the proposal. In spite of being aware of the illegality of the proposal, the Hanford City Council ratified the changes that night, with each and every City Council Defendant voting for the changes. Attached hereto as Exhibit 6, and incorporated herein by this reference, is a true and correct copy of the Minutes of the March 15, 2011 City Council meeting at which the Personnel Rules and Regulations were amended."

Plaintiffs further alleged:

"27. On March 22, 2011, the EMEA delivered a follow-up letter to the Hanford City Council, again advising it of the illegality of the City Council's actions and highlighting the violations of U.S. and California Constitutions, 42 U.S.C. § 1983, the Meyer-Milias-Brown Act, the Public Safety Officers Procedural Bill of Rights Act, and the Firefighters Procedural Bill of Rights Act, and warned that if the actions were not immediately overturned, the EMEA and its members would file suit, seek damages, statutory penalties, and an award of attorneys' fees. Like the March 15, 2011 letter before it, this March 22, 2011 letter also warned the City Council that its actions, if not rescinded, could expose the CITY OF HANFORD to liability and could also expose the individual City Council members and City Manager STRAUS to personal liability. Attached hereto as Exhibit 7, and incorporated herein by this reference is a true and accurate copy of the EMEA's letter of March 22, 2011, addressed to the City Council."

Plaintiffs further alleged:

"28. On March 25, 2011, the Hanford City Attorney responded by stating that the City Council would not rescind its actions. In response, on March 30, 2011, the EMEA filed a Government Claim Form with HANFORD regarding the state law damage claims arising from the illegal actions of the Defendants, and each of them."

Plaintiff further alleged they filed an amended government claim form with City on April 13, 2011

and that they intend to amend the pleadings upon rejection of the claim.

4

1    On June 14, 2011, Defendants filed a motion to dismiss the complaint for lack of subject

2 matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1)

3 and 12(b)(6), respectively.  Defendants argued the Court lacked jurisdiction to hear claims involving

4 alleged violations of the Public Safety Officers' and Firefighters' Procedural Bill of Rights Acts or

5 any claims involving plaintiff Cain.  Defendants further contended the substantive causes of action

6 (1-7, 9-11) failed to allege facts sufficient to state a claim upon which relief could be granted.

7    On July 9, 2011, while Defendants' motion to dismiss was pending, Plaintiffs filed a motion

8 for preliminary injunction pursuant to Federal Rule of Civil Procedure 65.  In particular, Plaintiffs

9 requested that Defendants and their representatives be enjoined from (1) undertaking or performing

10 any activity or conduct inconsistent with, contradicted by or not in conformity with the City of

11 Hanford's Merit System Rules and Regulations in effect on March 14, 2011; (2) taking any adverse

12 or disciplinary action against Plaintiffs not in conformity with the procedures set forth in the City

13 of Hanford's Merit System Rules and Regulations in effect on March 14, 2011; (3) undertaking or

14 conducting any adverse activity relating to Plaintiffs' employment on any basis with a premise

15 Plaintiffs are at-will employees; (4) undertaking or conducting activity against Plaintiffs having the

16 effect of denying Plaintiffs "bumping" rights[3] set forth in the City of Hanford's Merit System Rules

17 and Regulations in effect on March 14, 2011; (5) undertaking or conducting any activity as to

18 plaintiff Cain having the effect of denying any step pay increases to which she was entitled pursuant

19 to the City of Hanford's Merit System Rules and Regulations in effect on March 14, 2011; and (6)

20 undertaking or conducting any retaliatory, punitive or adverse activity against Plaintiffs based on or

21 related to Plaintiffs' associational or union-related activities.  Plaintiffs contended immediate and

22 irreparable injury would result to them unless the foregoing actions were enjoined pending trial.

23    On November 17, 2011, the Court issued its order granting in part and denying in part

24

25    [3] The term "bumping rights," otherwise known as demotional rights, refers to an employee's

26 right to accept a voluntary demotion in the event of a layoff by displacing (i.e., taking the job of) a less senior employee or employee with a lower classification.  *Daniels v. Shasta-Tehama-Trinity*

27 *Joint Community College District,* 212 Cal.App.3d 909, 926, 260 Cal.Rptr. 867 (1989).

28    5

1  Defendants' motion to dismiss the complaint and denying Plaintiffs' motion for a preliminary

2  injunction. *Hanford Executive, supra,* 2011 WL 5825691.  As an initial matter, the Court denied

3  Defendants' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, finding the Court

4  had jurisdiction over Plaintiffs' claims for alleged violations of the Public Safety Officers' and

5  Firefighters Bill of Rights Acts as well as the claims of plaintiff Cain.  *Id*. at \*4-\*5.  The Court

6  further found Plaintiffs had alleged facts sufficient to state a plausible claim to relief under the first

7  and fourth causes of action for violation of the constitutional rights to freedom of speech, association

8  and collective activity pursuant to 42 U.S.C. § 1983 and California Civil Code § 52.1, respectively,

9  and denied Defendants' motion to dismiss the first and fourth causes of action.[4]  *Id*. at \*14-\*16.  The

10 Court further found Plaintiffs had not alleged facts sufficient to constitute the second and third

11 causes of action for violations of substantive and procedural due process pursuant to 42 U.S.C. §

12 1983, respectively, and dismissed the second and third causes of action with leave to amend.  *Id*. at

13 \*9-\*11.  The Court further found Plaintiffs had not alleged facts sufficient to constitute the fifth

14 cause of action for violation of substantive and procedural due process rights under the California

15 Constitution, and dismissed the fifth cause of action with leave to amend. *Id*. at \*11-\*12.  The Court

16 further found Plaintiffs had not alleged facts sufficient to constitute the sixth and seventh causes of

17 action for alleged violations of the contract clauses of the U.S. or California Constitutions,

18 respectively, and dismissed the sixth and seventh causes of action with leave to amend, but only to

19 the extent Plaintiffs were alleging that the March 15, 2011 Hanford City Council amendments

20 impaired their vested contractual rights to promised compensation. *Id*. at \*5-\*9.  The Court further

21 _____

22      [4] The Court found that, inasmuch as the complaint had been pled, the individual Hanford City
Council members would be entitled to absolute legislative immunity in their individual capacities
23 for their roles in amending and ratifying the changes to the Policy of Administration for Executive
Management Employees.  Nevertheless, recognizing that "an act is not legislative in nature when the
24 acting official's process fails to comply with the law," the Court concluded that Plaintiffs could
conceivably overcome the immunity issue by alleging the council members' actions did not comport
25 with the City of Hanford's Rules and Regulations. *Hanford Executive, supra,* 2011 WL 5825691,
at \*16-\*18.  The Court, however, found that defendant Straus would not be entitled to even qualified
26 immunity for any misconduct alleged under the first cause of action.  *Id*. at \*18-\*19.

28                                            6

found Plaintiffs had not alleged exhaustion of administrative remedies under the ninth cause of action for whistleblower retaliation pursuant to California Labor Code Section 1102.5, and dismissed the ninth cause of action with leave to amend. *Id*. at \*12-\*13.  The Court further found Plaintiffs had not alleged facts sufficient to constitute the tenth and eleventh causes of action for violations of the Public Safety Officers' and Firefighters' Procedural Bill of Rights Acts, and dismissed the tenth and eleventh causes of action with leave to amend. *Id*. at \*13-\*14.  Lastly, the Court, relying exclusively on the causes of action that survived Defendants' motion to dismiss (the first and fourth) and all competent and admissible evidence submitted by the parties, found Plaintiffs had failed to establish a likelihood of success on the merits of their claims or raise serious questions with respect to the merits, and denied Plaintiffs' motion for a preliminary injunction.  *Id*. at \*19-\*24.

On December 15, 2011, Plaintiffs filed their motion for reconsideration and/or motion to alter or amend judgment in response to the Court's November 17, 2011 order dismissing portions of the complaint.  As a threshold matter, Plaintiffs informed the Court that only their alleged vested rights in permanent employment status and in bumping rights were the subject of this motion, and that they were challenging the dismissal of the second, fifth, sixth and seventh causes of action only under a vested rights theory.[5]  (The motion did not challenge the Court's dismissal of the third, fifth, sixth, seventh, tenth and eleventh causes of action with leave to amend inasmuch as those claims were based on a non-vested rights theory.)  Plaintiffs argued the foregoing dismissals were erroneous because they had adequately pled claims for relief based on an unlawful deprivation of vested rights, contending that under California law, the permanent employment status and bumping rights of public employees are recognized property interests that cannot be legislated away.  Plaintiffs further challenged the dismissal of the ninth cause of action, contending California authority has specifically

---

[5] Plaintiffs asserted substantive and procedural due process claims under their fifth cause of action, which the Court dismissed with leave to amend.  As to that cause of action, Plaintiffs expressly state in their motion that they seek reconsideration only of the Court's dismissal of the substantive due process claim; they do not seek reconsideration of the Court's dismissal of the procedural due process claim.

7

held that a plaintiff need not exhaust administrative remedies before pursuing a claim for violation of Labor Code § 1102.5. Lastly, Plaintiffs moved for reconsideration of their motion for preliminary injunction, contending the Court improperly denied that motion by failing to consider the substantive due process or contract clause vested rights claims in the preliminary injunction analysis.

On January 30, 2012, Defendants filed their opposition to the motion for reconsideration and/or motion to alter or amend judgment.

On February 6, 2012, Plaintiffs filed their reply to Defendants' opposition.

### III. LEGAL STANDARD

"Whenever any motion has been granted or denied in whole or in part, and a subsequent motion for reconsideration is made upon the same or any alleged different set of facts, counsel shall present to the Judge or Magistrate Judge to whom such subsequent motion is made an affidavit or brief, as appropriate, setting forth the material facts and circumstances surrounding each motion for which reconsideration is sought, including [¶] (1) when and to what Judge or Magistrate Judge the prior motion was made; [¶] (2) what ruling, decision, or order was made thereon; [¶] (3) what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion; and [¶] (4) why the facts or circumstances were not shown at the time of the prior motion." Local Rule 230(j). Reconsideration of motions may also be granted under the standards applicable to reconsideration of a final judgment under Federal Rule of Civil Procedure 59(e). Under Rule 59(e), "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. There may also be other, highly unusual, circumstances warranting reconsideration." *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993) (citations omitted).

8

## IV. DISCUSSION

***A. Plaintiffs' sixth and seventh causes of action (violations of the contract clauses of the U.S. Constitution, art. I, sec. 10, and California Constitution, art. I, sec. 9, respectively)*** – Plaintiffs first move for reconsideration of the portion of the Court's November 17, 2011 order dismissing the sixth and seventh causes of action in the complaint.  Relying on California cases holding that public employment is not held by contract but by statute and that public employees generally do not have vested contractual rights to the terms of their employment, the Court concluded in its previous order: "The rights Plaintiffs allege were taken away were conferred by the City of Hanford's Personnel Rules and Regulations.  Thus, these rights 'may all be lost by the repeal of the provisions or modified by an amendment to the provisions, at the will of those who determine what the charter's terms shall be.' " *Hanford Executive, supra,* 2011 WL 5825691, at *6-*7 (internal citations omitted). Accordingly, the Court found Plaintiffs had not stated a contract clause claim under the state or federal Constitutions. *Id*. at *9.  Nonetheless recognizing that "a 'public pension system is subject to the implied qualification that the governing body may make reasonable modifications and changes [only] before the pension becomes payable," the Court granted Plaintiffs leave to amend, but only to the extent Plaintiffs were alleging the March 15, 2011 Hanford City Council amendments impaired their vested contractual rights to promised compensation. *Id*. (citations omitted). Plaintiffs now contend the dismissal was clearly erroneous.  Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court finds dismissal of the sixth and seventh causes of action was not erroneous, and further finds leave to amend those causes of action was properly restricted to allegations of vested contractual rights to promised compensation.

The Contract Clause of the U.S. Constitution provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const., art. I, sec. 10.  It imposes "limits upon the power of a State to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power." *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 242, 98 S.Ct. 2716,

57 L.Ed.2d 727 (1978).  Similarly, the contract clause of the California Constitution provides: "A . . . law impairing the obligation of contracts may not be passed."  Cal. Const., art. I, sec. 9.  As the Court observed in its previous order, "to determine whether contract rights have been impaired," a court must "examin[e] 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.' [Citation.] 'That inquiry includes (1) whether a contract exists as to the specific terms allegedly at issue, (2) whether the law in question impairs an obligation under that contract and (3) whether the discerned impairment can fairly be characterized as substantial.' [Citation.]"  *Hanford Executive, supra,* 2011 WL 5825691, at *5.  The Court essentially found Plaintiffs had not alleged facts sufficient to establish the threshold element of a contract clause violation – namely, the existence of an agreement between themselves and City creating rights and obligations concerning the benefits of employment to which Plaintiffs alleged they had contractual rights.  *Id.* at *6-*7.  Rather, inasmuch as the complaint had been pled, the "contractual" rights allegedly possessed by Plaintiffs originated in City's Rules and Regulations, which were enacted, per exhibits attached to the complaint, through legislative action of the Hanford City Council pursuant to authority granted in the Hanford Municipal Code.  Because the rights alleged arose solely from statute, the Court concluded Defendants' amendment of that statute to alter those rights could not constitute an impairment of contract and thus dismissed the contract clause claims.  *Id.* at *7.

Citing *Retired Employees Association of Orange County, Inc. v. County of Orange,* 52 Cal.4th 1171, 134 Cal.Rptr.3d 779, 266 P.3d 287 (2011) (*Retired Employees*), Plaintiffs contend the dismissal was erroneous because even though public employment is held by statute, statutes may give rise to vested contractual rights, which cannot be divested from public employees simply through legislative action.  The Court does not disagree with the proposition that contractual rights of public employees to certain benefits of employment may vest, and such rights, once vested, may not be "substantially impaired" by legislative action that is neither reasonable nor necessary " 'to serve the . . . important purposes claimed by the State.' "  *United Firefighters of Los Angeles City v. City of Los Angeles,* 210 Cal.App.3d 1095, 1102-1108, 259 Cal.Rptr. 65 (1989) (quoting *United*

10

*States Trust Co. v. New Jersey,* 431 U.S. 1, 29, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)).  The Court noted in its previous order that " 'public employment may give rise to certain obligations which are constitutionally protected,' " and even cited *Hinchliffe v. City of San Diego,* 165 Cal.App.3d 722, 726, 211 Cal.Rptr. 560 (1985), for the proposition that "promised compensation, such as pension rights, cannot be taken away without violating the Contract Clause."  *Hanford Executive, supra,* 2011 WL 5825691, at *8.  Problematically for Plaintiffs, insufficient facts were alleged in the complaint to invoke the vested contractual rights theory as a means of stating a claim.

A vested right "is one that is either already possessed or legitimately acquired" (*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga,* 175 Cal.App.4th 1306, 1321, 96 Cal.Rptr.3d 813 (2009) (citing *Berlinghieri v. Department of Motor Vehicles,* 33 Cal.3d 392, 396, 188 Cal.Rptr. 891, 657 P.2d 383 (1983)), and "is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking *judicial* power.' " *Whaler's Village Club v. California Coastal Com.,* 173 Cal.App.3d 240, 252, 220 Cal.Rptr. 2 (1985) (quoting *Frank v. Prod,* 31 Cal.3d 166, 176, 181 Cal.Rptr. 893, 643 P.2d 476 (1982)) (emphasis original).  A vested right may be acquired, for example, after an individual has rendered services or incurred liabilities in reliance on the representations of another.  *See Avco Community Developers, Inc. v. South Coast Regional Com.,* 17 Cal.3d 785, 791-802, 132 Cal.Rptr. 386, 553 P.2d 546 (1976).  A contractual right, by contrast, is expressly bargained for by the parties or implied from their conduct, and is typically memorialized in an oral or written agreement.  The contract clauses of the California and U.S. Constitutions only protect against the State's impairment of *contractual* rights; they do not protect against the State's impairment of *vested* rights unless such rights "arise out of contract."  *Olson v. Cory,* 134 Cal.App.3d 85, 100, 184 Cal.Rptr. 325 (1982) (*Olson II*).  Stated differently, vested rights are not protected under the contract clauses unless they happen to be *vested contractual* rights.[6]  *See Legislature v. Eu,* 54 Cal.3d 492, 528, 534, 286 Cal.Rptr. 283, 816 P.2d 1309 (1991).

---

[6] A vested right that is not also contractual in nature may still protected by the Due Process Clause of the Fourteenth Amendment.  *Olson II, supra,* 134 Cal.App.4th at 100.

11

1    In the context of public employment, vested contractual rights are the exception, not the rule.

2    "[I]t is well settled in California that public employment is not held by contract but by statute and

3    that, insofar as the duration of such employment is concerned, no employee has a vested contractual

4    right to continue in employment beyond the time or contrary to the terms and conditions fixed by

5    law. [Citations.] Nor is any vested contractual right conferred on the public employee because he

6    occupies a civil service position since it is equally well settled that '[t]he terms and conditions of

7    civil service employment are fixed by statute and not by contract. [Citations.] Indeed, '[t]he statutory

8    provisions controlling the terms and conditions of civil service employment cannot be circumvented

9    by purported contracts in conflict therewith.' [Citation.]"  *Miller v. State of California,* 18 Cal.3d

10   808, 813-14, 135 Cal.Rptr. 386, 557 P.2d 970 (1977).  California courts, as noted in the Court's

11   previous order, have carved out a narrow exception to this general rule: public employees' rights to

12   promised compensation, such as pension benefits, may ripen into vested contractual rights protected

13   under the contract clauses even though they are codified in statute.  *Olson v. Cory,* 27 Cal.3d 532,

14   537-38, 178 Cal.Rptr. 568, 636 P.2d 532 (1980) (*Olson I*); *Kern v. City of Long Beach,* 29 Cal.2d

15   848, 853, 179 P.2d 799 (1947); *see, e.g., Teachers' Retirement Bd. v. Genest,* 154 Cal.App.4th 1012,

16   65 Cal.Rptr.3d 326 (2007); *California Teachers Assn. v. Cory,* 155 Cal.App.3d 494, 202 Cal.Rptr.

17   611 (1984); *Valdez v. Cory,* 139 Cal.App.3d 773, 189 Cal.Rptr. 212 (1983).  The reason for this, as

18   explained by the California Supreme Court in *Kern,* is that a promise of compensation essentially

19   manifests an intent to form a contract in which the employer agrees to defer compensation to the

20   employee in exchange for the employee's performance of services.  *Kern, supra,* 29 Cal.2d at 855.

21   Those payments, though deferred, are earned immediately upon performance of services, and the

22   employee's right to receive payments vests – that is, becomes irrevocable – once the employee has

23   served for the period required by statute and met all contingencies imposed by the employer.  *Id.*

24   Compensation such as pension benefits are also typically negotiated by employees' unions on behalf

25   of their members, and thus have underlying contractual bases aside from mere statutory enactment.

26   In the complaint, Plaintiffs alleged that Defendants' amendment of City's Personnel Rules

27

28                                          12

and Regulations violated the contract clauses by (1) converting their employment status from permanent to at-will; (2) stripping them of their bumping rights; (3) stripping them of their disciplinary appeal rights; (4) changing the process by which they progressed through salary steps; and (5) increasing their contributions toward retirement while decreasing City's contributions. Each of the rights at issue were alleged to have arisen from City's Personnel Rules and Regulations and Policy of Administration for Executive Management; Plaintiffs alleged no facts to suggest that the rights had some sort of contractual basis. Accordingly, the Court's dismissal of the contract clause claims was proper. Cognizant the allegations Defendants increased Plaintiffs' contributions toward their retirement but lowered City's corresponding contributions, thereby decreasing Plaintiffs' salaries for the purposes of retirement benefit calculations, might state a claim for impairment of promised compensation if clarified, the Court gave Plaintiffs leave to amend to allege Defendants' actions impaired their vested contractual rights to promised compensation. *Hanford Executive, supra,* 2011 WL 5825691, at *9. This was also proper in light of the foregoing principles.

The Court notes that Chapter 12, subsection (a) of the Rules and Regulations does provide, "(2) The exercise of the express and implied powers, rights, duties, and responsibilities by the City, such as, the adoption of Policies, Rules, Regulations and Practices, and the use of judgment and discretion in connection therewith shall be limited only by law and the specific and express terms of existing, valid, MOU's [memoranda of understanding]. [¶] (3) The City has and will continue to retain, whether exercised or not, the unilateral and exclusive right to operate, administer and manage its Municipal Services and work force performing these Services limited only by law and the specific and express terms of existing, valid MOU's. The exclusive rights of the City shall include but not be limited . . . to establish and effect Rules and Regulations consistent with applicable law and the specific and express provisions of existing, valid MOU's." The language of chapter 12 suggests the rights alleged by Plaintiffs could conceivably have been negotiated by their union in a memorandum of understanding or other collective bargaining agreement and were simply memorialized in statute. If so, those rights would arguably have arisen from contract. *See Alameda County Management*

13

1   *Employees Assn. v. Superior Court,* 195 Cal.App.4th 325, 344-45, 125 Cal.Rptr.3d 556 (2011), and

2   authorities cited therein.  However, Plaintiffs did not allege their rights were contained in any such

3   agreements, and even now, in face of the Court's dismissal, they do not make such an assertion.

4            Instead, Plaintiffs contend the contract clause claims should have survived Defendants'

5   motion to dismiss because two of the rights allegedly impaired by Defendants – Plaintiffs' rights to

6   permanent employment and bumping – have been recognized as vested contractual rights.  Plaintiffs

7   have provided no authority – and the Court's research reveals no authority – to support this

8   proposition.  A public employee's right to continued permanent employment, once attained, is

9   unquestionably a *vested* right.  *Pipkin v. Board of Supervisors,* 82 Cal.App.3d 652, 661, 147

10  Cal.Rptr. 502 (1978) ("It is beyond question that the right of continued employment is so important

11  and so substantially affects the individual that it is a fundamental right . . . . [¶] . . . The full rights

12  of continued employment vest upon appointment, subject to divestment upon periodic review only

13  after a showing of adequate cause for such divestment in a proceeding consistent with minimal due

14  process requirements").  But no California case has held that a public employee's right to continued

15  permanent employment can ripen into a *vested contractual* right as with promised compensation.[7]

16  *Retired Employees,* the case cited by Plaintiffs, does not suggest otherwise.

17           The defendant in *Retired Employees*, Orange County ("County"), began offering group

18  medical insurance to retired County employees in 1966.  *Retired Employees, supra,* 52 Cal.4th at

19  1177.  From 1985 to 2007, County combined active and retired employees into a single pool for the

20  purpose of calculating insurance premiums, which raised the premiums for active employees but

21  effectively subsidized the premiums for retired employees, who were generally older and more

22  expensive to insure.  For budgetary reasons, County passed a resolution in 2007 dividing the pool

23  into active and retired employees, to take effect January 1, 2008.  County negotiated the changes with

24  the unions representing the active employees before the resolution was passed, but did not negotiate

25

26           [7] Plaintiffs have not directed the Court to any case law holding that a public employee's

27  bumping rights may vest, let alone be contractually vested.

28                                              14

1   with the retirees.  *Id.*  The Retired Employees Association of Orange County (REAOC) sued County

2   in federal district court and sought to enjoin it from dividing the pool, contending County's actions

3   "constituted an impairment of contract in violation of the federal and state Constitutions, in that

4   County's long-standing and consistent practice of pooling active and retired employees, along with

5   County's representations to employees regarding a unified pool, created an *implied* contractual right

6   to a continuation of the single unified pool for employees who retired before January 1, 2008."  *Id.*

7   (emphasis original).  The district court granted summary judgment in favor of County and against

8   REAOC, finding that, as to REAOC's causes of action for breach and impairment of contract,

9   County could not "as a matter of state law, be liable for any obligation it did not undertake explicitly

10  through a resolution" by the Orange County Board of Supervisors (Board).  *Id.* at 1178.  On appeal,

11  the Ninth Circuit certified to the California Supreme Court the question of " '[w]hether, as a matter

12  of California law, a California county and its employees can form an implied contract that confers

13  vested rights to health benefits on retired county employees.' "  *Id.* at 1176.

14          As an initial matter, the California Supreme Court rejected County's contention that a county

15  government and its employees could not form an implied contract.  *Retired Employees, supra,* 52

16  Cal.4th at 1179-89.  Observing that its " 'often quoted language that public employment is not held

17  by contract has limited force where . . . the parties are legally authorized to enter (and have in fact

18  entered) into bilateral contracts to govern the employment relationship," the court noted that County

19  had negotiated and approved memoranda of understanding (MOUs) with its employee bargaining

20  units before and during the pooling period.  *Id.* at 1182.  Accordingly, the court reasoned that the

21  contractual right alleged by REAOC "[did] not necessarily depend on whether there is express

22  language in a statute or ordinance granting REAOC members the right to a single unified insurance

23  pool during their lifetimes.  The parties here entered into valid bilateral contracts governing

24  compensation . . . .  Where the relationship *is* governed by contract, a county may be bound by an

25  implied contract (or by implied terms of a written contract), as long as there is no statutory

26  prohibition against such an agreement."  *Id.* (citation omitted, emphasis original).  The court agreed

27

with County's contention that "a court must look to Board resolutions, including those resolutions approving or ratifying MOU's . . . to determine the parties' contractual rights and obligations," but concluded that where a party sought recognition "only of an implied *term* of an existing contract [as did REAOC] (and not the recognition of an implied *contract*)," the fact "[t]hat matters of compensation must be addressed by resolution does not necessarily bar recognition of implied terms concerning compensation." *Id*. at 1185 (emphases original).  Relying on three Court of Appeal decisions that held contractual obligations of public employers and employees could be implied from statute, the court then concluded: "[L]egislation in California may be said to create contractual rights when the statutory language or circumstances accompanying its passage 'clearly " . . . evince a legislative intent to create private rights of a contractual nature enforceable against the [governmental body]." '  Although the intent to make a contract must be clear, our case law does not inexorably require that the intent be express.  A contractual right can be implied from legislation in appropriate circumstances.  Where, for example, the legislation is itself the ratification or approval of a contract, the intent to make a contract is clearly shown." *Id*. at 1186-87 (internal citations omitted).  The court further rejected County's argument that even if contractual rights could be implied from legislation, *vested* contractual rights could not: "In the cases [County and amici curiae] have cited, the courts found that the particular benefits at issue were not vested, not that vesting was categorically barred. Vesting remains a matter of the parties' intent." *Id*. at 1189.  Lastly, reasoning that certain anti-vesting language in the California Government Code did not apply to REAOC's claims, the court concluded "under California law, a vested right to health benefits for retired county employees can be implied under certain circumstances from a county ordinance or resolution." *Id*. at 1193-94.

*Retired Employees* does not salvage Plaintiffs' contract clause claims for several reasons. First, the case reaffirms that vested contractual rights to the benefits of public employment do not arise absent indicia of an express or implied contract to confer such rights, whether it be evidence that the employer negotiated and approved collective bargaining agreements with its employees' unions or language in a statute demonstrating the employer's intent to create contractual obligations.

*Retired Employees, supra,* 52 Cal.4th at 1182-87.  The court further cautioned that "as with any contractual obligation that would bind one party for a period extending far beyond the term of the contract of employment, implied rights to vested benefits should not be inferred without a clear basis in the contract or convincing extrinsic evidence." *Id*. at 1191.  Again, Plaintiffs did not allege any contractual basis for their asserted rights.  Plaintiffs also did not point to any language in City's Rules and Regulations that could arguably be construed as intending to create contractual obligations on the part of Defendants (such as the ratification of an MOU), nor did they allege circumstances accompanying the adoption of the ordinance to suggest Defendants so intended. The Court is confident that if Plaintiffs could in good faith have made such allegations, they would have been provided in the complaint.  Second, and perhaps more importantly, the *Retired Employees* decision is limited to health benefits for existing retirees.  *Id*. at 1194.  Plaintiffs are not retirees and the permanent employment and bumping rights claimed by Plaintiffs are not health benefits.

Furthermore, whether a vested right to the unified insurance pool claimed by REAOC was implied under the circumstances was not actually decided by the *Retired Employees* court.  52 Cal.4th at 1194.  The court also expressly refrained from addressing REAOC's assertion that the reduced premium resulting from the unified pool was promised compensation, the right to which vested as soon as its members retired. *Id*. at 1190-91.  Thus, even if health benefits were comparable to the rights claimed by Plaintiffs, nothing in *Retired Employees* conclusively establishes Plaintiffs alleged sufficient facts in the complaint to state contract clause claims under the vested contractual rights theory resulting from an alleged impairment of permanent employment and bumping rights. Based on the foregoing, the Court find its dismissal of Plaintiffs' sixth and seventh causes of action with leave to amend to the extent Plaintiffs were alleging the Hanford City Council amendments impaired their vested contractual rights to promised compensation was not clearly erroneous, and reconsideration of the dismissal of the sixth and seventh causes of action shall be denied.

**B. Plaintiffs' second and fifth causes of action (violation of 42 U.S.C. § 1983 – substantive due**

17

1   *process and Article I, § 7 and 19 of the California Constitution, Civil Code § 52.1)* – Plaintiffs

2   further move for reconsideration of the portion of the Court's November 17, 2011 order dismissing

3   the substantive due process claims asserted under the second and fifth causes of action.  As to the

4   substantive due process claim brought pursuant to 42 U.S.C. § 1983, the Court observed: " 'To state

5   a substantive due process claim, the plaintiff must show as a threshold matter that a state actor

6   deprived it of a constitutionally protected life, liberty or property interest.'  The substantive due

7   process clause 'guards against arbitrary and capricious government action, even when the decision

8   to take that action is made through procedures that are in themselves constitutionally adequate.'

9   'The protections of substantive due process have for the most part been accorded to matters relating

10  to marriage, family, procreation, and the right to bodily integrity.'  Accordingly, where, as here,

11  plaintiffs rely on substantive due process to challenge governmental action that does not impinge on

12  a fundamental right, federal courts 'do not require that the government's action actually advance its

13  state purposes, but merely look to see whether the government could have had a legitimate reason

14  for acting as it did.' "  *Hanford Executive, supra,* 2011 WL 5825691, at *10 (internal citations

15  omitted).  Finding Plaintiffs had not alleged the Hanford City Council's actions were arbitrary or

16  irrational, the Court dismissed the claim.  However, recognizing " 'an individual claiming a defect

17  in the legislative process might have a claim for due process violations' " (*id*. (citation omitted)), the

18  Court concluded because Plaintiffs had argued in their opposition to Defendants' motion to dismiss

19  that Defendants ignored City's Rules and Regulations in enacting the March 15, 2011 amendments,

20  Plaintiffs could conceivably state a claim.  Accordingly, the Court granted Plaintiffs leave to amend.

21  *Id*.  As to the substantive due process claim brought pursuant to the California Constitution, the

22  Court observed: "The California Constitution prohibits the government from depriving a person of

23  property without due process of law. [Citation.] The substantive due process clause 'prevents

24  government from enacting legislation that is "arbitrary" or "discriminatory" or lacks "a reasonable

25  relation to a proper legislative purpose." ' [Citation.]"  *Hanford Executive, supra,* 2011 WL

26  5825691, at *12.  Again observing Plaintiffs had not alleged the Hanford City Council's actions were

27

28                                                          18

arbitrary or irrational, the Court dismissed the claim with leave to amend. *Id.* Plaintiffs now contend dismissal was erroneous because under Ninth Circuit authority, they need only allege Defendants deprived them of a constitutionally protected property interest to state a substantive due process claim, but need not plead defects in the legislative process or that the state's actions were arbitrary or irrational. Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court finds dismissal of the substantive due process claims was not erroneous.

The Due Process Clause of the Fourteenth Amendment "prohibits states from 'depriv[ing] any person of life, liberty, or property, without due process of law.' " *Newman v. Sathyavagiswaran,* 287 F.3d 786, 789 (9th Cir. 2002) (quoting U.S. Const., amend. XIV, § 1). "The Supreme Court has interpreted the Due Process Clause of the Fourteenth Amendment to include a substantive component that protects certain individual liberties from state interference[.]" *Mullins v. State of Oregon,* 57 F.3d 789, 793 (9th Cir. 1995) (citing *Reno v. Flores,* 507 U.S. 292, 301-302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) and *Collins v. City of Harker Heights,* 503 U.S. 115, 123-25, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)). "The substantive component of this Clause 'bar[s] certain government actions regardless of the fairness of the procedures used to implement them . . . .' [Citation.] By doing so, 'it serves to prevent governmental power from being "used for purposes of oppression." ' [Citation.]" *Sagana v. Tenorio,* 384 F.3d 731, 742 (9th Cir. 2004).

"In a substantive due process analysis, [the court] must first consider whether the statute in question abridges a fundamental right. If it does, the statute will be subject to strict scrutiny and is invalidated unless it is 'narrowly tailored to serve a compelling state interest.' If not, the statute need only bear a 'reasonable relation to a legitimate state interest to justify the action.' " *United States v. Juvenile Male,* _F.3d_ (9th Cir. 2012), 2012 WL 206263, at *11 (citations omitted); cf. *Richardson v. City and County of Honolulu,* 124 F.3d 1150, 1162 (9th Cir. 1997) ("A municipal act that neither utilizes a suspect classification nor draws distinctions among individuals that implicate fundamental rights will violate substantive due process rights when it is shown that the action is not 'rationally related to a legitimate governmental purpose' . . . . We will strike down a statute on substantive due

19

process grounds if it is arbitrary and irrational").   "The Supreme Court has described the 'fundamental' rights protected by substantive due process as 'those personal activities and decisions that this Court has identified as so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty, that they are protected by the Fourteenth Amendment.' Those rights are few, and include the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment." *Juvenile Male, supra,* 2012 WL 206263, at *11 (citations omitted).  In the complaint, Plaintiffs alleged Defendants' act of amending and ratifying changes to City's Rules and Regulations deprived them of their rights to permanent employment and bumping, which are the subject of the motion for reconsideration. Problematically for Plaintiffs, Defendants' actions do not implicate any fundamental rights under the Constitution.  Plaintiffs have provided no authority – and the Court's research reveals no authority – stating permanent employment and bumping rights of public employees are rights more basic or fundamental than that endowed by the statutes that created them.  Plaintiffs have not shown their asserted rights are "objectively, 'deeply rooted in this Nation's history and tradition[.]' " *Washington v. Glucksberg,* 521 U.S. 702, 720-21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (quoting *Moore v. East Cleveland,* 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)).

Indeed, the great weight of authority suggests public employment is not a fundamental right for purposes of substantive due process.  In *Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (per curiam), the Supreme Court observed: "This Court's decisions give no support to the proposition that a right of governmental employment Per [sic] se is fundamental. [Citations.] Accordingly, we have expressly stated that a standard less than strict scrutiny 'has consistently been applied to state legislation restricting the availability of employment opportunities.' [Citation.]" *Id.* at 313.  The Ninth Circuit does not appear to have addressed this issue, but other circuits have reached similar conclusions.  *See Palka v. Shelton,* 623 F.3d 447, 453 (7th Cir. 2010) (substantive due process claims "limited to violations of fundamental rights . . . , and

employment-related rights are not fundamental; an alleged wrongful termination of public

employment is not actionable as a violation of substantive due process unless the employee also

alleges the defendants violated some other constitutional right"); *Nicholas v. Pennsylvania State*

*University,* 227 F.3d 133, 142 (3d Cir. 2000), and authorities cited therein (tenured public

employment is not fundamental property interest entitled to substantive due process protection);

*Singleton v. Cecil,* 176 F.3d 419, 425-26 (8th Cir. 1999) (citing *Harrah Indep. Sch. Dist. v. Martin,*

440 U.S. 194, 198, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979)) ("There is no suggestion that a right to

continued employment with a particular governmental employer has 'anything resembling "the

individual's freedom of choice with respect to certain basic matters of procreation, marriage, and

family life." ' [Citation.] To the contrary, the Supreme Court has suggested that a public employee's

interest in continued employment with a governmental employer is not so 'fundamental' as to be

protected by substantive due process"); *Zorzi v. County of Putnam,* 30 F.3d 885, 895 (7th Cir. 1994)

("Occupational liberty . . . is not protected by substantive due process . . . . Rather, any cause of

action for the deprivation of occupational liberty would be confined to a claim under procedural due

process; there is no cause of action under substantive due process"); *Hilliard v.Ferguson,* 30 F.3d

649, 652 (5th Cir. 1994) (" '[R]ight to hold public employment is not a recognized fundamental

right' " (quoting *Murgia, supra,* 427 U.S. at 313)); *McKinney v. Pate,* 20 F.3d 1550, 1560 (11th Cir.

1994) ("Because employment rights are state-created rights and are not 'fundamental' rights created

by the Constitution, they do not enjoy substantive due process protection"); *Huang v. Board of*

*Governors of University of North Carolina,* 902 F.2d 1134, 1142 n. 10 (4th Cir. 1990) ("It is

doubtful that Dr. Huang's position in [North Carolina State University's Department of Biological

and Agricultural Engineering ('BAE')] is a right properly subject to substantive due process review.

Unlike rights subject to procedural due process protection, which arise from sources other than the

Constitution, substantive due process rights arise solely from the Constitution.  Dr. Huang's

entitlement to a position in BAE, if it exists, is essentially a state law contract right, not a

fundamental interest embodied in the Constitution"); *Zielasko v. State of Ohio,* 873 F.2d 957, 961-62

21

1   (6th Cir. 1989) (no fundamental right to public employment); *Arceneaux v. Treen,* 671 F.2d 128, 133

2   (5th Cir. 1982) ("[R]ight to hold public employment is not a recognized fundamental right").

3          Thus, to state a substantive due process claim, Plaintiffs were required to allege Defendants'

4   actions had no rational relationship to legitimate governmental interests, but were arbitrary and

5   irrational.  They did not.  Accordingly, the Court properly dismissed the federal substantive due

6   process claim.  The Court's dismissal of the state substantive due process claim was likewise proper.

7   As with substantive due process under the Fourteenth Amendment, substantive due process under

8   the California Constitution "prohibits governmental interference with a person's fundamental right

9   to life, liberty or property by unreasonable or arbitrary legislation . . . . [D]eprivation of a right is

10  supportable only if the conduct from which the deprivation flows is prescribed by reasonable

11  legislation that is reasonably applied; that is, the law must have a reasonable and substantial relation

12  to the object sought to be attained."  *In re Marilyn H.,* 5 Cal.4th 295, 306-307, 19 Cal.Rptr.2d 544,

13  851 P.2d 826 (1993).  Again, Plaintiffs did not allege interference with any fundamental rights in the

14  complaint.[8]  Plaintiffs also did not allege Defendants' actions were arbitrary or irrational.

15

16          [8] California cases have described the permanent employment status of public employees as
    a "fundamental right" or "fundamental vested right."  *See Pipkin, supra,* 82 Cal.App.3d at 661
17  ("right of continued employment . . . is a fundamental right"); *see also Wences v. City of Los
    Angeles,* 177 Cal.App.4th 305, 316, 99 Cal.Rptr.3d 199 (2009) (right to employment as a non-
18  probationary public employee is both "vested and fundamental"), and authorities cited therein;
    *Valenzuela v. Board of Civil Service Commissioners of the City of Los Angeles,* 40 Cal.App.3d 557,
19  565, 115 Cal.Rptr. 103 (1974).  It is important to note that in these cases, the right to permanent
20  public employment is characterized as "fundamental" not in the context of substantive due process
    but administrative review, in the sense that administrative decisions adversely affecting that right
21  must be subject to independent judgment review by California courts in accordance with California
    Code of Civil Procedure § 1094.5.  *See Bixby v. Pierno,* 4 Cal.3d 130, 93 Cal.Rptr. 234, 481 P.2d
22  242 (1971); *Strumsky v. San Diego County Employees Retirement Assn.,* 11 Cal.3d 28, 112 Cal.Rptr.
23  805, 520 P.2d 29 (1974).  As the California Supreme Court observed in *Hernandez v. Department
    of Motor Vehicles,* 30 Cal.3d 70, 177 Cal.Rptr. 566, 634 P.2d 917 (1981), "[U]nder *Bixby-Strumsky,*
24  the 'fundamental right' category does not identify areas in which substantive legislative judgments
25  are in any manner constitutionally suspect or justify unusual judicial scrutiny; rather, that category
    simply encompasses those quasi-judicial administrative decisions that have 'an impact on the
26  individual "sufficiently vital to compel a full and independent review" by the court.' [Citation.]" *Id.*
27  at 83.  The court subsequently cautioned: "There is little similarity between the analysis applied in

It appears from the motion that Plaintiffs may have intended to seek reconsideration of the portion of the Court's November 17, 2011 order dismissing the *procedural*, not substantive, due process causes of action. "California's statutory scheme regulating employment in civil service 'confers upon an individual who achieves the status of "permanent employee" a property interest in the continuation of her [or her] employment which is protected by [procedural] due process.' " *Coleman v. Department of Personnel Administration,* 52 Cal.3d 1102, 1112, 278 Cal.Rptr. 346, 805 P.2d 300 (1991) (quoting *Skelly v. State Personnel Board,* 15 Cal.3d 194, 206, 124 Cal.Rptr. 14, 539 P.2d 774 (1975)). The right of public employees "to bump[ ] . . . to particular positions" pursuant to a municipality's rules and regulations, as here, is also protected by procedural due process. *Alexander v. City of Menlo Park,* 787 F.2d 1371, 1374 (9th Cir. 1986). In arguing that the Court's dismissal of the substantive due process causes of action was erroneous, Plaintiffs rely principally on the reasoning of four cases – *Skelly, supra,* 15 Cal.3d 194; *Mendoza v. Regents of the Univ. Of California,* 78 Cal.App.3d 168, 144 Cal.Rptr. 117 (1978); *Sanchez v. City of Santa Ana,* 915 F.2d 424 (9th Cir. 1990); and *Healdsburg Police Officers Assn. v. City of Healdsburg,* 57 Cal.App.3d 444, 129 Cal.Rptr. 216 (1976) (disagreed with by *Palma v. U.S. Industrial Fasteners, Inc.,* 36 Cal.3d 171, 203 Cal.Rptr. 626, 681 P.2d 893 (1984)) – they contend the Court should have followed in its previous order. Each of these cases dealt, however, with claims of procedural due process. Plaintiffs may move for reconsideration of the procedural due process causes of action if they so desire. Meanwhile, reconsideration of the substantive due process claims shall be denied.

In light of the foregoing conclusion, the Court need not address Plaintiffs' argument that their

---

determining (1) whether a right is a 'fundamental right' for equal protection/due process purposes on the one hand, and (2) which scrutiny is applicable for administrative review purposes. The principle of 'fundamentality' differs depending on the context or analysis within which the concept arises. Thus, for example, when determining which rights are 'fundamental' for due process purposes, a court's attention focuses primarily on whether the right (1) is specifically guaranteed by the Constitution, (2) affects the integrity of the political process, or (3) has a disproportionate impact upon a discrete and insular minority. [Citation.] [¶] Obviously, the foregoing . . . test bears little relation to the standard used when determining which rights are 'fundamental' under the *Bixby* rule for administrative review purposes." *Berlinghieri, supra,* 33 Cal.3d at 397.

motion for preliminary injunction was improperly denied because the Court failed to analyze the substantive due process or contract clause vested rights claims as a basis for the motion. Accordingly, reconsideration of Plaintiffs' motion for preliminary injunction shall be denied.

**C. Plaintiffs' ninth cause of action (retaliation against whistleblower – California Labor Code Section 1102.5) –** Plaintiffs further request the Court reconsider its dismissal of the ninth cause of action with leave to amend for failure to allege exhaustion of administrative remedies.   In its November 17, 2011 order, the Court observed: "Prior to bringing an action under section 1102.5, a plaintiff is required to exhaust all administrative remedies.  Specifically, a plaintiff is required to exhaust administrative remedies before the Labor Commissioner pursuant to California Labor Code § 98.7(a) prior to filing a judicial action under section 1102.5." *Hanford Executive, supra,* 2011 WL 5825691, at \*13 (citations omitted).   Relying principally on *Creighton v. City of Livingston,* 628 F.Supp.2d 1199, 1221 (E.D.Cal. 2009) (*Creighton I*), the Court dismissed the claim because there was no allegation Plaintiffs had filed a claim with the Labor Commissioner prior to bringing suit. *Id*.  Plaintiffs now contend the dismissal was clearly erroneous because exhaustion of administrative remedies with the Labor Commissioner is not a prerequisite to pursuing a section 1102.5 claim. Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court finds it committed no clear error of law in granting Defendants' motion to dismiss.

In *Creighton I*, the plaintiff brought an action against his former employer and supervisor for, among other things, whistleblower retaliation in violation of section 1102.5.  *Creighton I, supra,* 628 F.Supp.2d at 1204, 1221.  The defendants moved for partial summary judgment or dismissal of the claim in the alternative, contending the plaintiff had failed to allege exhaustion of administrative remedies before the Labor Commissioner.  *Id*. at 1221.  Concluding the jurisdictional prerequisite of administrative exhaustion before the Labor Commissioner set forth in California Labor Code § 98.7 applied to section 1102.5 actions, the court dismissed the claim because the plaintiff had failed to allege facts establishing compliance with the exhaustion requirement.  *Id*. at 1222.  The court

1   further observed the exhaustion requirement was distinct from, and thus not satisfied by, compliance

2   with the California Tort Claims Act public entity claim filing requirement.  *Id*.  This Court, as noted

3   above, based its dismissal of Plaintiffs' section 1102.5 claim on the reasoning of *Creighton I*.

4        In support of their contention it was error for the Court to require them to allege exhaustion

5   of administrative remedies with the Labor Commissioner, Plaintiffs point to *Creighton v. City of*

6   *Livingston,* slip copy, 2009 WL 3246825 (E.D.Cal. 2009) (*Creighton II*), a case that arose out of the

7   same litigation as *Creighton I*.  In *Creighton II,* the court reconsidered the exhaustion issue raised

8   in *Creighton I* after the defendants moved to dismiss the plaintiff's amended section 1102.5 claim

9   on the same ground.  *Id*. at *4.  The court observed the decisions it had relied upon in dismissing the

10  plaintiff's claim in *Creighton I* "were all federal district court decisions relying on *Campbell* [*v.*

11  *Regents of University of California,* 35 Cal.4th 311, 25 Cal.Rptr.3d 320, 106 P.3d 976 (2005)] to

12  conclude that exhaustion of administrative remedies is required before the Labor Commissioner."

13  *Id*. at *12.  After systematically reviewing the California precedents on Labor Code administrative

14  exhaustion, including *Campbell*, the court further observed: "No California decision requires as a

15  prerequisite to suit for statutory violation of the Labor Code exhaustion of administrative remedies

16  before the Labor Commissioner.  California case law is to the contrary.  By its terms, *Campbell* only

17  held that exhaustion of *internal* administrative remedies is required; there is no discussion in

18  *Campbell* of exhaustion of administrative remedies before the Labor Commission."  *Id*. (emphasis

19  original).  The court then held exhaustion of administrative remedies with the Labor Commissioner

20  was not a prerequisite to filing suit for statutory Labor Code violations and denied the defendants'

21  motion to dismiss.  *Id*.  In the Court's view, *Creighton II* is anomalous and unpersuasive.

22       *Campbell*, a unanimous decision by the California Supreme Court, involved a plaintiff, Janet

23  Campbell, who had worked as an architect for the University of California, San Francisco (UCSF).

24  *Campbell, supra,* 35 Cal.4th at 317.  Campbell claimed that in 1991, her supervisor directed her to

25  prepare bid documents for campus construction projects that limited access to competitive bidding

26  by imposing restrictive specifications.  She informed the Regents of the University of California

27

28                                          25

("Regents") that use of the documents violated competitive bidding laws and reported the alleged violations to the FBI.  *Id.*  After being terminated due to asserted downsizing, she brought an action against the Regents for retaliatory discharge in violation of California Government Code § 12653 and Labor Code § 1102.5, alleging she had exhausted all administrative remedies or was not required to exhaust them.  *Id.* at 319.  The Regents demurred to the complaint, arguing Campbell's refusal to avail herself of the complaint resolution process in UCSF's "Policy and Procedures for Reporting Improper Governmental Activities and Protection Against Retaliation for Reporting Improper Activities" constituted a failure to exhaust administrative remedies.  The trial court sustained the Regents' demurrer to the section 1102.5 claim and the California Court of Appeal affirmed.  *Id.*  On appeal to the Supreme Court, Campbell argued "the Legislature's statutory language allegedly authorizing direct access to the court" implied the Legislature intended to abrogate the general rule of exhaustion of administrative remedies for section 1102.5 claims.  *Id.* at 322.  The court disagreed. After discussing the statute's legislative history, the court concluded exhaustion of administrative remedies was a prerequisite to filing suit for a statutory 1102.5 violation.  *Id.* at 329-33.

*Creighton II* correctly observes that *Campbell* only required the plaintiff to allege exhaustion of internal UCSF administrative remedies before filing a section 1102.5 action; *Campbell* does not mention exhaustion of administrative remedies with the Labor Commissioner.  Problematically for Plaintiffs, nothing suggests the *Campbell* court intended to limit its holding to require the exhaustion of *only* internal remedies, and no California decision has interpreted *Campbell* as narrowly as *Creighton II*.  Furthermore, the *Campbell* court reasoned that the plaintiff was required to exhaust the administrative remedies available to her under UCSF's policies and procedures in part because they "provide[d] a comprehensive system of administrative enforcement" over the claims she had asserted against the Regents.  *Campbell, supra,* 35 Cal.4th at 328-29.  Here, Plaintiffs alleged that after they submitted their memorandum to the Hanford City Council alleging unethical and potentially illegal conduct by the city manager, Defendants retaliated against them by unilaterally imposing new and adverse personnel changes such as altering their employment classifications and

1  removing their bumping rights.  These allegations arguably allege violations of anti-retaliation laws

2  which the Labor Commissioner has not only the jurisdiction but requisite expertise to enforce.

3       Plaintiffs further direct the Court to another case discussed in *Creighton II*, *Lloyd v. County*

4  *of Los Angeles,* 172 Cal.App.4th 320, 90 Cal.Rptr.3d 872 (2009), wherein the Second District of the

5  California Court of Appeal held that Labor Code § 98.7(a) "merely provides the employee with an

6  additional remedy, which the employee may choose to pursue," and concluded there was "no reason

7  to . . . impose an administrative exhaustion requirement on plaintiffs seeking to sue for Labor Code

8  violations." *Id*. at 331.  *Lloyd*, however, did not distinguish *Campbell*, and the Court finds *Lloyd* to

9  be unpersuasive for all of the reasons set forth in *Adams v. Robert Mondavi Winery Woodbridge,*

10 2009 WL 3166669 (Cal.App.3d Dist. 2009) (unpublished), at *7-*9.[9]  In addition, the Court notes

11 that federal district courts addressing this issue have almost uniformly agreed that a plaintiff alleging

12 a violation of section 1102.5 is required to allege exhaustion of administrative remedies with the

13 Labor Commissioner before bringing suit.  *See, e.g., LaTourelle v. Barber,* slip copy, 2012 WL

14 218952 (E.D.Cal. 2012), at *8; *Reynolds v. City and County of San Francisco,* slip copy, 2011 WL

15 4808423 (N.D.Cal. 2011), at *1-*2; *Dolis v. Bleum USA, Inc.,* slip copy, 2011 WL 4501979

16 (N.D.Cal. 2011), at *2; *Chacon v. Housing Authority of County of Merced,* slip copy, 2011 WL

17 2621313 (E.D.Cal. 2011), at *4; *Ortiz v. Lopez,* 688 F.Supp.2d 1072, 1080 (E.D.Cal. 2010); *Carter*

18 *v. Dept. of Corrections,* slip copy, 2010 WL 2681905 (N.D.Cal. 2010), at *10; *Cartwright v. Regents*

19 *of University of California,* slip copy, 2009 WL 2190072 (E.D.Cal. 2009), at * 7-*8; *Neveu v. City*

20 *of Fresno,* 392 F.Supp.2d 1159, 1180 (E.D.Cal. 2005).  *Creighton II*, while supportive of Plaintiffs'

21 position, is an outlier, and an outlier is hardly sufficient to show that the Court's previous order

22 dismissing Plaintiffs' ninth cause of action with leave to amend was clearly erroneous.

23      Even if the Court were to accept Plaintiffs' proposition that only exhaustion of internal

24 administrative remedies is required, Plaintiffs did not allege exhaustion of the internal remedies

25

26      [9] The Court may cite unpublished California appellate decisions as persuasive authority. *See
Employers Ins. of Wausau v. Granite State Ins. Co.,* 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003).

27

28                                              27

available to them.  Chapter 11 of the City of Hanford's Merit System Rules and Regulations, a copy of which was submitted as an exhibit to the complaint, sets forth an informal and formal multi-level procedure for resolution of employee grievances.  Section 1102 of Chapter 11 provides: "(b) Matters Subject to Grievance Procedure: [¶] Any City employee shall have the right to present a grievance concerning matters listed below for which appeal is not provided or is not prohibited under provisions of Chapter 10: [¶] (1) Improper application of City or Departmental Rules, Regulations, and/or current Memorandum of Understanding. [¶] (2) Unfair treatment of employees. [¶] (3) Discrimination because of race, age, sex, color, religion, creed or national origin. [¶] (4) Any matter affecting an employee's work schedule, supplemental wage benefits, holidays, vacation, sick leave, retirement or classification changes."  The misconduct alleged under the ninth cause of action is arguably encompassed by the grievance procedure.  Thus, by their own argument, Plaintiffs would at the very least be required to allege exhaustion of the grievance procedure.  That was not done. The only administrative recourse Plaintiffs allegedly took was the filing of a government claim with City.  Again, the mere filing of a government claim – especially one that, as here, was not alleged to have been denied or even rejected by operation of law – is insufficient to satisfy the exhaustion requirement.  *Creighton I, supra,* 628 F.Supp.2d at 1222; *see also Chacon, supra,* 2011 WL 2621313 at *4.  Accordingly, reconsideration of the dismissal of the ninth cause of action shall be denied.

## V. DISPOSITION

Based on the foregoing, Plaintiffs' motion for reconsideration and/or to alter or amend judgment is DENIED in its entirety.

IT IS SO ORDERED.

Dated:    February 22, 2012

_____
CHIEF UNITED STATES DISTRICT JUDGE