1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT FOR THE

9                 EASTERN DISTRICT OF CALIFORNIA

10

11  HANFORD EXECUTIVE                )   1:11-cv-00828-AWI-DLB
    MANAGEMENT EMPLOYEE              )
12  ASSOCIATION, CATHY CAIN, LOUIS   )   ORDER RE: MOTION TO
    CAMARA, GEORGE THOMAS DIBBLE,    )   DISMISS AMENDED
13  TIMOTHY IERONIMO, MARY ROSE      )   COMPLAINT
    LINDSAY, CARLOS MESTAS,          )
14  SCOTT YEAGER,                    )   (Doc. 50)
                                     )
15                  Plaintiffs,      )
                                     )
16          v.                       )
                                     )
17  CITY OF HANFORD, HILARY STRAUS,  )
    DAN CHIN, SUE SORENSEN, JIM      )
18  IRWIN, LOU MARTINEZ,             )
    JOLEEN JAMESON,                  )
19                                   )
                    Defendants.      )
20  _____ )

21

22                    **I. INTRODUCTION**

23

24  Defendants City of Hanford et al. move to dismiss the first amended complaint of plaintiffs Hanford

25  Executive Management Employee Association et al. pursuant to Federal Rule of Civil Procedure

26  12(b)(6).  For reasons discussed below, the motion shall be granted in part and denied in part.

27

28

## II. FACTS AND PROCEDURAL BACKGROUND[1]

On March 15, 2012, plaintiffs Hanford Executive Management Employee Association, Cathy Cain, Louis Camara, George Thomas Dibble, Timothy Ieronimo, Mary Rose Lindsay, Carlos Mestas and Scott Yeager (hereinafter referred to as "Plaintiffs") filed their first amended complaint (FAC) against defendants City of Hanford, Hilary Straus, Dan Chin, Sue Sorensen, Jim Irwin, Lou Martinez and Joleen Jameson (hereinafter referred to as "Defendants") asserting causes of action for (1) violation of 42 U.S.C. § 1983 – freedom of speech, association and collective activity, (2) violation of 42 U.S.C. § 1983 – substantive due process, (3) violation of 42 U.S.C. § 1983 – procedural due process, (4) violation of Article I, § 2(A) and 3 of the California Constitution, California Civil Code § 52.1, (5) violation of Article I, §§ 7 and 19 of the California Constitution, California Civil Code § 52.1, (6) violation of Public Safety Officers Procedural Bill of Rights Act – California Gov. Code §§ 3300 et seq., (7) violation of Firefighters Procedural Bill of Rights Act – California Gov. Code §§ 3250 et seq., (8) injunctive relief, and (9) declaratory relief.  Plaintiffs alleged therein as follows:

> "19. On or about November 16, 2010, six of the seven individual Plaintiffs in this matter (CAMARA, DIBBLE, IERONIMO, LINDSAY, MESTAS and YEAGER) signed a memorandum directed to the Hanford City Council and incoming City Council members, entitled, 'Vote of No Confidence – City Manager Hilary Straus.' The three page document set forth the reasons why each of the signatories had no confidence in the ability of STRAUS to properly perform the duties of Hanford City Manager.  Some of these stated reasons included allegations of dishonest, unethical and potentially illegal conduct, hiding information from management and the public, improperly awarding contracts to STRAUS' friends, potential Brown Act violations, and other unprofessional conduct.  Attached hereto as Exhibit 1, and incorporated herein by this reference is a true and correct copy of the Vote of No Confidence Memorandum regarding STRAUS, dated November 16, 2010."

Plaintiffs further alleged:

> "20. On or about March 11, 2011, all seven of the individuals named as Plaintiffs in this matter signed and submitted a Petition for Recognition and Certification

---

[1] The Court refers the parties to the orders issued November 17, 2011 (*Hanford Executive Management Association v. City of Hanford,* slip copy, 2011 WL 5825691 (E.D.Cal. 2011) (*Hanford I*)) and February 22, 2012 (*Hanford Executive Management Association v. City of Hanford,* slip copy, 2012 WL 603222 (E.D.Cal. 2012) (*Hanford II*)) for a partial chronology of the proceedings.

2

petitioning the Hanford City Council for formal recognition of EMEA as the bargaining unit for the individual Plaintiffs.  As executive management employees, the terms and conditions of their employment with the City of Hanford are governed by the City's Rules and Regulations in effect at the time they were hired.  Attached hereto as Exhibit 2 and incorporated herein by this reference is a true and correct copy of the Rules and Regulations."

Plaintiffs further alleged:

"21. The Rules and Regulations expressly and by operation of law give the individual plaintiffs certain vested property rights protected under California law, including the following: [¶] a. Status as a permanent employee who could only be terminated and/or disciplined for 'just cause' after completion of a probationary period; [¶] b. 'Bumping rights': the right to return to a previously held position and reemployment rights in the event of a layoff; [¶] c. Appeal rights for discipline; and [¶] d. Progression through salary steps and a non-discretionary right to automatic step increases for 'average' performance."

Plaintiffs further alleged:

"22. Plaintiffs were induced to accept jobs with the CITY in partial reliance on the fact that they knew they would be permanent employees once they passed their probation.  Having passed their probationary periods the Plaintiffs then enjoyed the benefits of permanent employment, including the knowledge that they could not be divested of their permanent status or employment without due process, and would be entitled to bump to lower positions in the event of layoffs."

Plaintiffs further alleged:

"23. On or about March 10, 2011, STRAUS, on behalf of each and every one of the Defendant, first met with EMEA representatives to inform Plaintiffs of proposed changes to the existing Rules and Regulations.  Those changes were to be presented to the Hanford City Council for ratification on March 15, 2011.  At that meeting, STRAUS refused to provide the EMEA representatives with the PowerPoint presentation that was shown to the City Council. [¶] 24. Plaintiffs thus discovered for the first on March 10, 2011 that STRAUS had submitted an agenda item to the City Council to amend the Rules and Regulations to make substantial changes to the Policy of Administration for Executive Management Employees.

Plaintiffs further alleged:

The proposed changes included: [¶] a. Converting Executive Management Employees from permanent employees with property rights in their employment to at-will employees; [¶] b. Revising the Seniority, Layoff and Bumping provisions to strip Executive Management Employees of the right to return to previously held positions and reemployment rights in the event of a layoff; [¶] c. Stripping disciplinary appeal rights from Executive Management Employees; [¶] d. Changing the process by which Executive Management Employees progress through salary steps and creating a right to deny what were previously automatic step increases on the grounds of 'average' performance; and [¶] e. Increasing Executive Management Employees' contributions toward retirement, and decreasing Hanford's contributions toward retirement for Executive Management Employees, including the individual

Plaintiffs herein, which also had the impact of decreasing their salaries for purposes of retirement benefit calculations."

Plaintiffs further alleged:

"25. The changes outlined . . . above differed substantially from the Rules and Regulations then in existence which apply to the individual plaintiffs. Attached hereto as Exhibit 3, and incorporated herein by this reference is a true and correct copy of the March 15, 2011 Memorandum to the City Council proposing changes to the Rules and Regulations. [¶] 26. Attached hereto as Exhibit 4, and incorporated herein by this reference is a true and accurate copy of the City of Hanford Management Pay Plan applicable to the individual plaintiffs. Among other changes, the City revised the pay plan so that step increases could be denied for 'average' performance, whereas previously step increases could not be so denied."

Plaintiffs further alleged:

"27. On March 15, 2011, prior to the Hanford City Council meeting, the EMEA wrote to the City Council regarding the City's arbitrary and unlawful stripping of the individual plaintiffs' vested property rights. The letter warned the City Council that passing the proposal by City Manager STRAUS could expose the CITY OF HANFORD to liability and could also expose the individual City Council members and City Manager STRAUS to personal liability. Attached hereto as Exhibit 5, and incorporated herein by this reference is a true and correct copy of the EMEA's letter."

Plaintiffs further alleged:

"28. On the evening of March 15, 2011, the HANFORD City Council met to consider the proposal by City Manager STRAUS. Numerous individuals, including EMEA's counsel, spoke against the proposal, and highlighted the arbitrary and unlawful nature of many of the components of the proposal. [¶] 29. At no time before, during or after the meeting on the evening of March 15, 2011 were Plaintiffs given full documentation, as required under the Rules and Regulations, regarding the basis for the actions outlined above, including the stripping of plaintiffs' vested rights. [¶] 30. At no time before, during or after the meeting on the evening of March 15, 2011 were Plaintiffs given any explanation, as required under the Rules and Regulations, regarding Defendants' 'just cause' for the actions outlined above, including the stripping of plaintiffs' vested rights. [¶] 31. At no time before, during or after the meeting on the evening of March 15, 2011 were Plaintiffs permitted to call sworn witnesses on their behalf, as required under the Rules and Regulations, to defend against the actions described above, including the stripping of plaintiffs' vested rights. [¶] 32. At no time before, during or after the meeting on the evening of March 15, 2011, were Plaintiffs provided with any justification, as required under the Rules and Regulations, for the actions described above, including the stripping of plaintiffs' vested rights. [¶] 33. In spite of being aware of the unlawfulness of STRAUS' proposal, and refusing to provide any due process to Plaintiffs, each and every City Council member voted to accept the changes and adopted the Amended Rules and Regulations on March 15, 2011."

Plaintiffs further alleged:

"34. Although the Amended Rules and Regulations do not specifically state they

4

apply to existing employees previously-hired [sic] under the Rules and Regulations in place before March 15, 2011,  Defendants have represented they apply to the individual Plaintiffs to strip them of their vested rights.  Attached hereto as Exhibit 6, and incorporated herein by this reference, is a true and correct copy of the Minutes of the March 15, 2011 City Council meeting at which the Rules and Regulations were amended. [¶] 35. On March 22, 2011, the EMEA delivered a follow-up letter to the Hanford City Council, again advising it of the arbitrary and unlawful nature of the City Council's actions and highlighting the violations of U.S. and California Constitutions, 42 USC § 1983, the Meyer-Milias-Brown Act, the Public Safety Officers Procedural Bill of Rights Act, and the Firefighters Procedural Bill of Rights Act, and warned that if the actions were not immediately overturned, the EMEA and its members would file suit, seek damages, statutory penalties, and an award of attorneys' fees.  Like the March 15, 2011 letter before it, this March 22, 2011 letter also warned the City Council that its actions, if not rescinded, could expose the CITY OF HANFORD to liability and could also expose the individual City Council members and City Manager STRAUS to personal liability.  Attached hereto as Exhibit 7, and incorporated herein by this reference is a true and accurate copy of the EMEA's letter of March 22, 2011, addressed to the City Council."

Plaintiffs further alleged:

"36. On March 25, 2011, the Hanford City Attorney responded by stating that the City Council would not rescind its actions. [¶] 37. On March 30, 2011, the EMEA filed a Government Claim Form with HANFORD.  An Amended Government Claim Form was filed . . . on April 13, 2011.  The City rejected the claim on May 24, 2011."

On March 29, 2012, Defendants filed their motion to dismiss the FAC in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs filed their opposition on April 30, 2012.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *see* Fed. R. Civ. P. 12(b)(6).  "A claim has facial plausibility," and thus survives a motion to dismiss, "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868

(2009).  On a Rule 12(b)(6) motion to dismiss, the court accepts all material facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff.  *Knievel v. ESPN,* 393 F.3d 1068, 1072 (9th Cir. 2005).  However, the court need not accept conclusory allegations, allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial notice, unwarranted deductions of fact or unreasonable inferences.  *Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010).  "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . the complaint could not be saved by amendment."  *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003).

## IV. DISCUSSION

*A. First cause of action ("violation of 42 U.S.C. § 1983 - freedom of speech, association and collective activity")* – Defendants first move to dismiss Plaintiffs' first cause of action, brought under 42 U.S.C. § 1983, for violation of Plaintiffs' rights to freedom of speech, association and collective activity under the First Amendment, contending Plaintiffs have failed to allege all essential elements or meet minimum federal pleading requirements.  In its November 17, 2011 order granting in part and denying in part Defendants' motion to dismiss Plaintiffs' original complaint with leave to amend, the Court found Plaintiffs had alleged facts sufficient to state a plausible claim to relief. *Hanford I, supra,* 2011 WL 5825691 at *15-*16.  The Court has reviewed the FAC in its entirety and finds Plaintiffs have alleged no new facts that would render this cause of action subject to dismissal.  Accordingly, Defendants' motion to dismiss the first cause of action shall be denied.

*B. Second cause of action ("violation of 42 U.S.C. § 1983 – substantive due process")* – Plaintiffs' second cause of action is brought under section 1983 for violation of substantive due process.  The Due Process Clause of the Fourteenth Amendment "prohibits states from 'depriv[ing] any person of life, liberty, or property, without due process of law.' "  *Newman v. Sathyavagiswaran,* 287 F.3d

786, 789 (9th Cir. 2002) (quoting U.S. Const., amend. XIV, § 1).  "The Supreme Court has interpreted the Due Process Clause of the Fourteenth Amendment to include a substantive component that protects certain individual liberties from state interference[.]"  *Mullins v. State of Oregon,* 57 F.3d 789, 793 (9th Cir. 1995) (citing *Reno v. Flores,* 507 U.S. 292, 301-302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) and *Collins v. City of Harker Heights,* 503 U.S. 115, 123-25, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).  "The substantive component of this Clause 'bar[s] certain government actions regardless of the fairness of the procedures used to implement them . . . .' [Citation.] By doing so, 'it serves to prevent governmental power from being "used for purposes of oppression." ' [Citation.]"  *Sagana v. Tenorio,* 384 F.3d 731, 742 (9th Cir. 2004).

"In a substantive due process analysis, [the court] must first consider whether the statute in question abridges a fundamental right.  If it does, the statute will be subject to strict scrutiny and is invalidated unless it is 'narrowly tailored to serve a compelling state interest.'  If not, the statute need only bear a 'reasonable relation to a legitimate state interest to justify the action.' "  *United States v. Juvenile Male,* 670 F.3d 999, 1012 (9th Cir. 2012) (citations omitted); *accord Richardson v. City and County of Honolulu,* 124 F.3d 1150, 1162 (9th Cir. 1997) ("A municipal act that neither utilizes a suspect classification nor draws distinctions among individuals that implicate fundamental rights will violate substantive due process rights when it is shown that the action is not 'rationally related to a legitimate governmental purpose' . . . . We will strike down a statute on substantive due process grounds if it is arbitrary and irrational").  "The Supreme Court has described the 'fundamental' rights protected by substantive due process as 'those personal activities and decisions that this Court has identified as so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty, that they are protected by the Fourteenth Amendment.' Those rights are few, and include the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, to abortion, and to refuse unwanted lifesaving medical treatment."  *Juvenile Male, supra,* at p. 1012 (citations omitted).

In its February 22, 2012 order denying reconsideration of its November 17, 2011 order

granting in part and denying in part Defendants' motion to dismiss the original complaint with leave to amend, the Court concluded the employment-related rights alleged by Plaintiffs were not fundamental rights. *Hanford II, supra,* 2012 WL 603222 at *12-*13.  Accordingly, because no fundamental rights were implicated here, Plaintiffs were required to allege the actions taken by Defendants to divest them of their employment-related rights had no rational relationship to any legitimate governmental interests, but were arbitrary and irrational, in order to state a substantive due process claim. *Id.* at *14; *see Juvenile Male, supra,* 670 F.3d at 1012.  Having reviewed the FAC in its entirety, the Court finds Plaintiffs have now stated a plausible claim to relief for violations of substantive due process by alleging Defendants' actions were arbitrary and irrational.

In their motion, Defendants, citing *Twombly, supra,* 550 U.S. at 555 and *Iqbal, supra,* 556 U.S. 662, contend the allegations Defendants' actions were arbitrary are merely conclusory and lack factual support sufficient to state a claim.  Not so.  Plaintiffs allege Defendants, in enacting the amendments that took away Plaintiffs' rights, failed to follow the procedures set forth in the City of Hanford's Rules and Regulations.  In the Court's view, this tends to suggest Defendants' actions were arbitrary.  *See Mazaleski v. Treusdell,* 562 F.2d 701, 720 (D.C. Cir. 1977) (citing *Vitarelli v. Seaton,* 359 U.S. 535, 539-40, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959)) ("Where . . . a government employee has no . . . due process rights apart from those which [an] agency has chosen to create by its own regulations, scrupulous compliance with those regulations is required to avoid any injustice"); *see also Doe v. Hampton,* 566 F.2d 265, 280 (D.C. Cir. 1977) ("[A]n agency must abide by its own regulations in effecting the removal of one of its employees").  Construing the allegations liberally and drawing all reasonable inferences in favor of Plaintiffs, as the Court is required to do, the FAC could also be read to allege Defendants' actions had no relation to legitimate governmental interests in that they were undertaken simply to punish Plaintiffs for issuing the "Vote of No Confidence" memorandum to defendant Straus and for alleging dishonest, unethical and potentially illegal conduct by Defendants.  *See Galland v. City of Clovis,* 24 Cal.4th 1003, 1034, 103 Cal.Rptr.2d 711, 16 P.3d 130 (2001) ("[A] substantial infringement of state law prompted by

8

personal or group animus, or *a deliberate flouting of the law that trammels significant personal or property rights*, qualifies for relief under § 1983").  Where, as here, the purported arbitrariness of the defendants' actions relates to their states of mind, it may be alleged in generalities.  *See* Fed. R. Civ. P. 9(b).  Accordingly, Defendants' motion to dismiss this cause of action shall be denied.[2]

***C. Third cause of action ("violation of 42 U.S.C. § 1983 – procedural due process")*** – Plaintiffs' third cause of action is brought under 42 U.S.C. § 1983 for violation of procedural due process.  "The Fourteenth Amendment to the United States Constitution prohibits any state deprivation or termination of a protected property interest without procedural due process safeguards. 'Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment.' " *Anchor Pacifica Management Co. v. Green,* 205 Cal.App.4th 232, _Cal.Rptr.3d_, 2012 WL 1382577 (Cal.App. 2 Dist. 2012), at *3 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 332,

---

[2] Defendants may move for summary judgment and submit competent evidence if it is Defendants' position their actions were reasonably related to legitimate governmental interests and were neither arbitrary nor irrational.  Where, as in this case, "the plaintiffs rely on substantive due process to challenge governmental action that does not impinge on fundamental rights, '[courts] do not require that the government's action actually advance its stated purposes, but merely look to see whether the government *could* have had a legitimate reason for acting as it did.' " *Halverson v. Skagit County,* 42 F.3d 1257, 1262 (9th Cir. 1994) (quoting *Wedges/Ledges of California, Inc. v. City of Phoenix,* 24 F.3d 56, 66 (9th Cir. 1994)) (emphasis original).  On motion for summary judgment, Plaintiffs would bear the "heavy burden" of "demonstrat[ing] the irrational nature of [Defendants'] actions by showing that [Defendants] '*could* have had no legitimate reason for its decision.'  If it is 'at least fairly debatable' that [Defendants'] conduct is rationally related to a legitimate governmental interest, there has been no violation of substantive due process." *Halverson, supra,* at p. 1262 (quoting *Kawaoka v. City of Arroyo Grande,* 17 F.3d 1227, 1234 (9th Cir.), *cert. denied*, 513 U.S. 870, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994)) (emphasis original).  "A substantive due process violation requires more than 'ordinary government error,' and the 'arbitrary and capricious' standard applicable in other contexts is a lower threshold than that required to establish a substantive due process violation.  A substantive due process violation requires some form of outrageous or egregious conduct constituting 'a true abuse of power.' " *Las Lomas Land Co., LLC v. City of Los Angeles,* 177 Cal.App.4th 837, 99 Cal.Rptr.3d 503 (2009) (citations omitted).

96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).  To state a claim for violation of procedural due process, a plaintiff must allege facts sufficient to establish the government action at issue (1) was the type of action to which procedural due process applies and (2) deprived the plaintiff of a protected property interest (3) without procedural due process protections.  *See Harris v. County of Riverside,* 904 F.2d 497, 501, 503; *Hanford I, supra,* 2011 WL 5825691 at *10 (citing *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569-70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).  Having reviewed the FAC, the Court finds Plaintiffs have alleged facts sufficient to satisfy the foregoing elements.

As to this cause of action, Defendants first contend Plaintiffs have failed to allege facts sufficient to state a plausible claim to relief because the allegations show Plaintiffs' rights were divested through legislative action that, in the absence of allegations the action was also arbitrary or capricious, was sufficient to meet due process requirements.  "In considering the applicability of due process principles, [courts] must distinguish between actions that are legislative in character and actions that are adjudicatory."  *Beck Development Co. v. Southern Pacific Transportation Co.,* 44 Cal.App.4th 1160, 1188, 52 Cal.Rptr.2d 518 (1996).  As Defendants correctly imply, "[i]t is . . . well settled . . . that only those governmental decisions which are [a]djudicative in nature are subject to procedural due process principles.  Legislative action is not burdened by such requirements."  *Horn v. County of Ventura,* 24 Cal.3d 605, 612, 158 Cal.Rptr. 718, 596 P.2d 1134 (1979) (citing, *inter alia*, *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)); *see Rea v. Matteucci,* 121 F.3d 483, 485 (9th Cir. 1997) ("When a state alters a state-conferred property right through the legislative process, 'the legislative determination provides all the process that is due . . .' ").  The question that arises, therefore, is whether the allegations show Defendants' action was legislative or adjudicative in nature, an issue to which the Court now turns.

The difference between adjudicative and legislative action was illustrated in *Horn, supra,* 24 Cal.3d 605, a land use case.  Frederick Osborne, the real party in interest, had proposed to divide his property into four lots and applied to the planning department of Ventura County ("County") for approval.  *Id.* at 610.  County subsequently issued a declaration under the California Environmental

Quality Act (CEQA) stating the proposed subdivision would not significantly affect the environment and approved a tentative map with the condition Osborne install sewers for the lots.  No notice, and presumably no hearing, was given by County to adjoining property owners.  *Id*.  The plaintiff Merlin Horn, who purchased a parcel of land adjacent to Osborne's proposed subdivision after County's approval of the tentative map but before final approval by the Board of Supervisors ("Board"), learned of the approval and requested the Board refer the proposal back to the planning department for a noticed public hearing and further environmental studies.  *Id*. at 610-11.  The Board denied the request and approved the subdivision.  Horn then petitioned for a writ of mandate setting aside the approvals, contending County had exceeded its jurisdiction by approving the subdivision without affording affected landowners constitutionally adequate notice and a hearing.  County and Osborne demurred to Horn's petition, contending the approvals were legislative rather than adjudicatory in nature and thus did not require notice and a hearing, and further contended County's procedures for public review of environment decisions provided all the process that was due.  The demurrers were sustained without leave to amend, and the California Supreme Court reversed.  *Id*. at 611.

The court concluded: "Subdivision approvals, like variances and conditional use permits, involve the application of general standards to *specific* parcels of real property.  Such governmental conduct, *affecting the relatively few*, is '*determined by facts peculiar to the individual case*' and are 'adjudicatory' in nature."  *Horn, supra,* 24 Cal.3d at 614 (emphasis added).  The court explained: "Subdivisions are subject to environmental evaluation under CEQA [citation].  Moreover, the Subdivision Map Act . . . mandates rejection of a subdivision plan if it is deemed unsuitable in terms of topography, density, public health and access rights, or community land use plans. [Citations.] It is significant that several of these statutory concerns are precisely those which the plaintiff seeks to raise . . . . [¶] *Resolution of these issues involves the exercise of judgment, and the careful balancing of conflicting interests, the hallmark of the adjudicative process*.  The expressed opinions of the affected landowners might very well be persuasive to those public officials who make the decisions, and affect the outcome of the subdivision process."  *Id*. at 614-15 (emphasis added).

11

As is evident from *Horn*, "[t]he three primary considerations [in distinguishing between legislative and adjudicative actions] are: (1) whether the government action applies to specific individuals or to unnamed and unspecified persons; (2) whether the promulgating agency considers general facts or adjudicates a particular set of disputed facts; and (3) whether the action determines policy issues or resolves specific disputes between particular parties." *Gallo v. U.S. District Court for the District of Arizona,* 349 F.3d 1169, 1182 (9th Cir. 2003) (citing *United States v. Fla. E. Coast R.R. Co.,* 410 U.S. 224, 244-46, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973)); *accord Lawrence v. Superior Court,* 206 Cal.App.3d 611, 618, 253 Cal.Rptr. 748 (1988) (citing *Oceanside Marina Towers Assn. v. Oceanside Community Development Com.,* 187 Cal.App.3d 735, 745, 231 Cal.Rptr. 910 (1986)) ("An adjudicatory matter is one in which the government's action affecting an individual is determined by facts peculiar to the individual case; a legislative decision involves the adoption of a broad, generally applicable rule of conduct on the basis of general public policy").

The allegations, interpreted in light of the foregoing considerations, show Defendants' act of amending the City of Hanford's Rules and Regulations was adjudicative in nature.  First, the act could reasonably be construed to have applied to specific individuals rather than unnamed and unspecified persons.  Plaintiffs allege the act effectuated a deprivation of property interests affecting only the City of Hanford's executive management employees.  Plaintiffs further allege the executive management employees consisted exclusively of the seven individual plaintiffs.  Thus, the act, as alleged, affected only a few identifiable persons.  (This conclusion is supported by the minutes of the March 15, 2011 City Council meeting, submitted as an exhibit to the FAC, during which the Rules and Regulations were purportedly amended.  In the minutes, defendant Straus is described as stating that for the executive management group, "there are only seven employees[.]")  Second, taking the allegations as true, Defendants undoubtedly knew when they amended the Rules and Regulations that Plaintiffs had (1) submitted a memorandum to the Hanford City Council and incoming council members impugning Straus's ability to properly perform the duties of Hanford City Manager and (2) petitioned for formal recognition of the Executive Management Employee

12

Association as the bargaining unit for the individual plaintiffs.  Drawing all reasonable inferences in favor of Plaintiffs, Defendants' decision to amend the Rules and Regulations resulted from their disagreement with Plaintiffs' actions and was therefore a "resolution" of a specific dispute between the parties, as opposed to a consideration of policy issues.  Thus, the Court finds Plaintiffs have adequately alleged Defendant's action was the type giving rise to procedural due process requirements.  In any case, Plaintiffs further allege that even if Defendants' action was purely legislative, the action was arbitrary because it was performed to punish Plaintiffs by taking away their employment rights.  The legislative process is insufficient to protect due process rights if the process is arbitrary.  Cf. *Hanford I, supra,* 2011 WL 5825691 at *11 (citing, *inter alia, Rea, supra,* 121 F.3d at 485).  Again, where, as here, the purported arbitrariness of the defendants' actions relates to their states of mind, it may be alleged in generalities.  *See* Fed. R. Civ. P. 9(b).  If it is Defendants' position their action was legislative and not arbitrary, they may move for summary judgment.

Defendants further suggest Plaintiffs have failed to allege facts sufficient to establish Defendants deprived them of a protected property interest.  As noted above, "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  *Roth, supra,* 408 U.S. at 569.  "Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Id.* at 577.  To allege the existence of a protected property interest, "a party must demonstrate a promise or guarantee of a specific benefit or right in the entity's policies or state law." *Chan v. Judicial Council of California,* 199 Cal.App.4th 194, 200, 131 Cal.Rptr.3d 32 (2011).  "A benefit is not a protected property interest under the due process clause if the decision maker has the discretion to grant or deny the benefit."  *Las Lomas Land Co., LLC, supra,* 177 Cal.App.4th at 853 (citing *Castle Rock v. Gonzalez,* 545 U.S. 748, 756, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005)).

Having reviewed the FAC, the Court finds that, contrary to Defendants' suggestion, Plaintiffs

13

have established a deprivation of a protected property interest by alleging Defendants reclassified their employment status from permanent to at-will.  The pre-amended version of the Rules and Regulations allegedly governing Plaintiffs' employment with the City of Hanford, a copy of which is submitted with the FAC, classified employment in the Hanford municipal service into three categories: (1) regular, (2) probationary and (3) part-time.  Regular employees are defined as "those who have been appointed to an authorized position in the Employee Compensation Plan, having a monthly salary and who have successfully completed their probationary period and have been retained as hereafter provided in Chapter 9 of these Rules and Regulations;" probationary employees are defined as "those who, through the regular examining process, have been appointed to an authorized position in the Employee Compensation Plan, having a monthly salary, but who have not completed the probationary period provided in Chapter 9 of the Rules and Regulations."  Chapter 9 provided that probationary employees, unlike regular employees, may be suspended, demoted or terminated at any time without cause and without the right to appeal or to submit a grievance in accordance with Chapters 10 and 11.  The FAC alleges each of the individual plaintiffs had already passed the probationary periods for their respective positions and attained regular (i.e., permanent) status in their employment with the City of Hanford when their positions were allegedly reclassified by Defendants.  "California's statutory scheme governing civil service employment gives state employees who attain 'permanent' status a property interest in continued employment that cannot be denied without due process." *Lawrence v. Hartnell Community College Dist.,* 194 Cal.App.4th 687, 701, 123 Cal.Rptr.3d 535 (2011) (citing *Skelly v. State Personnel Bd.,* 15 Cal.3d 194, 206-207, 124 Cal.Rptr. 14, 539 P.2d 774 (1975)).  This interest in continued employment embraces not simply the employment itself, but also the employee's current classification.  *Ng v. California State Personnel Board,* 68 Cal.App.3d 600, 606, 137 Cal.Rptr. 387 (1977).  As alleged, Plaintiffs had a property interest in their permanent classifications under the Fourteenth Amendment that could not be converted to at-will classifications by Defendants absent procedural due process protections.

The Court further finds Plaintiffs have established a deprivation of a protected property

interest by alleging Defendants revised the seniority, layoff and bumping provisions in the City of Hanford's Rules and Regulations to strip them of their bumping rights – that is, their "right to accept a voluntary demotion in the event of a layoff by displacing (i.e., taking the job of) a less senior employee or employee with a lower classification." *Hanford II, supra,* 2012 WL 603222 at *4, fn. 3 (citing *Daniels v. Shasta-Tehama-Trinity Joint Community College District,* 212 Cal.App.3d 909, 926, 260 Cal.Rptr. 867 (1989)). On the subject of bumping, the pre-amended Rules and Regulations provided: "An employee scheduled to be laid off may voluntarily demote to a lower class when the lower class has similar duties, responsibilities, and requirements as designated by the Personnel Officer, providing the total seniority exceeds the total seniority of the employee in the lower class. Employees may also demote to any previously held position where their performance had been judged to be satisfactory, so long as their seniority exceeds that of the person occupying that position. To be considered for voluntary demotion in lieu of lay-off, an employee must notify the Personnel Officer in writing of this election no later than seven calendar days after receiving notice of lay-off." Courts have recognized "[t]he right of public employees 'to bump [ ] . . . to particular positions' pursuant to a municipality's rules and regulations . . . is . . . protected by procedural due process." *Hanford II, supra,* 2012 WL 603222 at *14 (citing *Alexander v. City of Menlo Park,* 787 F.2d 1371, 1374 (9th Cir. 1986)). *Alexander,* a case the Court brought to the parties' attention in its February 22, 2012 order, and *Gabe v. Clark County,* 701 F.2d 102 (9th Cir. 1983), are instructive on this issue.

Robert Alexander served as a youth services facility director for Menlo Park, California. *Alexander, supra,* 787 F.2d at 1372. After the city council eliminated his position, the city manager offered him the option of being laid off or accepting a probationary promotion to the position of recreation supervisor II. Alexander accepted the new position, but was terminated at the end of his probationary period. *Id*. at 1372-73. Under Menlo Park's rules, however, Alexander had, as a probationary employee, "a right to be returned to a job in the same classification as his prior job," and, in the event no such job was available, bumping rights permitting him " 'to displace a less senior employee in the same department who occupies a position which the more senior employee

15

is qualified to occupy in the judgment of the department head' unless the department head and City Manager determine that the less senior employee has special skills such that displacement would impede or impair the operation of the department." *Id*. at 1373.  The city had two positions to which Alexander could have bumped but did not offer either position to him after he was terminated.  The evidence further suggested Alexander did not exercise his bumping rights because he was not aware he had them.  *Id*. at 1374-75.  The Ninth Circuit held that because Alexander had a legitimate claim of entitlement to bumping rights under Menlo Park rules, he had a property interest protected by procedural due process.  *Alexander, supra,* 787 F.2d at 1374.  The court further found the defendants denied Alexander due process by failing to inform him of his bumping rights.  *Id.*

Paula Gabe transferred to the position of legal secretary to Judge Keith Hayes of Nevada's Eighth Judicial District after working at the Clark County Clerk's office and was entitled to the normal rights of a merit employee under Nevada law, including the due process protections of notice and a hearing upon termination.  *Gabe, supra,* 701 F.2d at 102.  In 1978, the Eighth Judicial District adopted Rule 7.1, which provided that the secretary to a judge, as a member of the judge's personal staff, served at the pleasure of the judge and was not entitled to the normal termination procedures of notice and a hearing accorded to regular county employees.  *Id*. at 103.  Gabe, who had no notice of the rule's adoption, was subsequently terminated by Judge Hayes, purportedly for cause. Although she requested a written notice of discharge and a hearing, neither was provided.  *Id*.  Gabe then brought an action against the county, contending that at the time of her termination, she had a legitimate claim of entitlement to continued job security as a county employee guaranteed by notice, a hearing and consideration for lateral transfer to another county position.  The county contended Rule 7.1 effectively deprived her of such rights.  In granting the county's motion for summary judgment, the district court found the adoption of Rule 7.1 was a valid exercise of judicial administration under the Nevada Constitution removing any expectation of a protectable property interest in employment as a judge's legal secretary, and concluded Gabe was no longer entitled to notice and a hearing upon termination under state law.  The Ninth Circuit reversed.  *Id*. at 103-104.

The *Gabe* court agreed that under Nevada law, the Nevada State Judiciary had inherent power to adopt Rule 7.1. *Gabe, supra,* 701 F.3d at 103. The court further agreed that Rule 7.1 eliminated any expectation of a protectable property interest in the legal secretary position for anyone hired *after* Rule 7.1 was adopted: "It is well established that an employee has no legitimate expectation in continued employment, and thus no protected interest under the Fourteenth Amendment, where state law provides that a public employee holds a position at the will and pleasure of the employer." *Id.* (citing, *inter alia, Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 11, 98 S.Ct. 1554, 1561, 56 L.Ed.2d 30 (1978)). Nevertheless, the court, relying on *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 448 (2d Cir. 1980), found "the enactment of Rule 7.1 could not terminate Gabe's protectable job security interest by changing the status of her employment without her knowledge and consent." *Gabe, supra,* at p. 103. The court reasoned: " '[A]lthough the primary source of property rights is state law, the state may not magically declare an interest to be "non-property" after the fact for Fourteenth Amendment purposes if, for example, a longstanding pattern of practice has established an individual's entitlement to a particular government benefit.' [Citation.] [¶] Accordingly, at the time of the promulgation of Rule 7.1, [Gabe] was entitled to notice thereof and a reasonable time within which to make her decision whether to continue in her current position as legal secretary, despite the removal of the job security safeguards, or seek to return to the Clerk's office, accept a lateral transfer to other County employment, or look for a position elsewhere. Not having been accorded such notice or opportunity, she is entitled to damages." *Id.* at 103-104. Under *Alexander* and *Gabe,* Plaintiffs had a protected property interest in the form of bumping rights that Defendants could not divest absent compliance with minimum due process requirements.

Lastly, as to this cause of action, the Court finds Plaintiffs have alleged facts sufficient to show they were not permitted to invoke procedural due process mechanisms before their rights were taken away. "When the [government] action is purely legislative, the statute satisfies due process if the enacting body provides public notice and open hearings." *Gallo, supra,* 349 F.3d at 1181 (citing *Texaco v. Short,* 454 U.S. 516, 536, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982)). "When the

17

government action is adjudicative . . . , due process requires 'notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id.* at 1181-82 (citing *Mullane, supra,* 339 U.S. at 315). Plaintiffs allege Defendants failed and refused to conduct an evidentiary or other due process hearing; provide documentation upon which the changes to Plaintiffs' rights were based; or explain the reason for such changes. Plaintiffs further allege Defendants ignored parts of the City of Hanford's Rules and Regulations providing that employees subject to actions adversely affecting their employment were entitled to notice and an opportunity to respond and, unless the safety of an employee or the public good was at risk, a hearing. Plaintiffs further allege the Rules and Regulations required the hearing to be conducted before a hearing officer selected jointly by the City and the affected employee, and that such hearing allowed for the presentation of evidence and the opportunity to present witnesses. Plaintiffs further allege Defendants violated the Rules and Regulations by substituting the City Council for the hearing officer and by not affording the individual plaintiffs an opportunity to be heard or to present evidence and witnesses.

In their motion, Defendants contend this cause of action should be dismissed because Plaintiffs had no right to invoke the foregoing due process mechanisms under the Rules and Regulations. The process alluded to by Plaintiffs is contained in Chapter 10 of the Rules and Regulations, which sets forth an employee's right to appeal and request a hearing in response to "disciplinary action" by the City Manager or a department head; "disciplinary action" is defined to include a discharge, demotion or reduction in salary. Defendants contend their act of amending the Rules and Regulations could not have constituted disciplinary action because the amendments did not have the effect of discharging or demoting Plaintiffs or reducing their salaries. Plaintiffs, on the other hand, contend the reclassification of their status from permanent to at-will constituted a de facto demotion and that, in any case, the removal of automatic salary step increases, permanent status and bumping rights constituted reductions in salary because they expected to receive those benefits as non-monetary consideration for accepting employment with the City. In the Court's view,

resolution of these issues would require construction and interpretation of the Rules and Regulations and is therefore properly left to a motion for summary judgment. *See, e.g., Schultz v. Regents of University of California,* 160 Cal.App.3d 768, 206 Cal.Rptr. 910 (1984); *Kramer v. Latah County, Idaho,* 2006 WL 3239969 (D.Idaho 2006) (unpublished).  Defendants further contend the minutes of the March 15, 2011 City Council meeting directly contradict Plaintiffs' assertion they were not provided due process by showing that the passage of the amendments at issue was preceded by nearly two and a half hours of discussion, including comments from the public and Plaintiffs.  If it is Defendants' position the discussion and comments satisfied due process hearing requirements, that is yet another issue they may raise on motion for summary judgment.  Accordingly, Defendants' motion to dismiss the cause of action for violation of procedural due process shall be denied.

**D. Fourth cause of action ("violation of Article I, § 2(A) and 3 of the California Constitution, Civil Code § 52.1")** – Defendants further move to dismiss Plaintiffs' fourth cause of action, brought under California Civil Code § 52.1 for violation Plaintiffs' rights to freedom of speech, association and collective activity under Article I, §§ 2(A) and 3 of the California Constitution, contending Plaintiffs have failed to meet minimum federal pleading requirements.  In its November 17, 2011 order granting in part and denying in part Defendants' motion to dismiss Plaintiffs' original complaint, the Court found Plaintiffs had alleged facts sufficient to state a plausible claim to relief. *Hanford I, supra,* 2011 WL 5825691 at *15-*16.  The Court has reviewed the FAC in its entirety and finds Plaintiffs have alleged no new facts that would render this cause of action subject to dismissal.  Accordingly, Defendants' motion to dismiss the fourth cause of action shall be denied.

**E. Fifth cause of action ("violation of Article I, § 7 and 19 of the California Constitution, Civil Code § 52.1")** – Defendants further move to dismiss Plaintiffs' fifth cause of action for violation of substantive and procedural due process under the California Constitution.  "The California Constitution [Cal. Const., art. I, § 7] prohibits the government from depriving a person of property

without due process of law. [Citations.] The substantive due process clause 'prevents government from enacting legislation that is "arbitrary" or "discriminatory" or lacks a "reasonable relation to a proper legislative purpose." ' [Citation.] The procedural due process clause of the California Constitution exists 'to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner.' [Citation.]" *Hanford I, supra,* 2011 WL 5825691 at *12. In its November 17, 2011 order granting Defendants' motion to dismiss this cause of action with leave to amend, the Court found Plaintiffs had failed to allege facts sufficient to state a claim for violation of substantive due process under the California Constitution because they did not allege Defendants' actions were arbitrary or irrational. *See id.,* at *12. The Court further found Plaintiffs had failed to allege facts sufficient to state a claim for violation of procedural due process under the California Constitution because Plaintiffs had not alleged Defendants' actions were adjudicative. *Id.* at *12. Consistent with its analysis above of Plaintiffs' second and third causes of action for violations of substantive and procedural due process under the federal Constitution, respectively, the Court finds Plaintiffs have now rectified the foregoing defects in the FAC. Accordingly, Defendants' motion to dismiss Plaintiffs' fifth cause of action for violation of the California Constitution shall be denied.

***F. Sixth and seventh causes of action (violations of Public Safety Officers Procedural Bill of Rights Act – Cal. Gov. Code § 3300, et seq., and Firefighters Procedural Bill of Rights Act – Cal. Gov. Code § 3250, et seq.) –*** Defendants further move to dismiss Plaintiffs' sixth and seventh causes of action, brought on behalf of plaintiffs Mestas and Ieronimo, respectively, for violation of the Public Safety Officers Procedural Bill of Rights Act (POBRA), Cal. Gov. Code §§ 3300 et seq., and the Firefighters Procedural Bill of Rights Act (FFBOR), Cal. Gov. Code §§ 3250-3262. "As the title suggests, the Public Safety Officers Procedural Bill of Rights Act provides a catalogue of basic rights and protections which must be afforded all peace officers by the public entities which employ them. [Citation.] The Act bespeaks the Legislature's determination that, because labor unrest and strikes produce consequences extending far beyond local boundaries, the maintenance of stable employment

relations between peace officers and their employers is a matter of statewide concern. [Citations.]" *Binkley v. City of Long Beach,* 16 Cal.App.4th 1795, 1805, 20 Cal.Rptr.2d 903 (1993). The statute provides in pertinent part, "No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period that may be required by his or her employing agency without providing the public safety officer with an opportunity for administrative appeal," Cal. Gov. Code, § 3304, subd. (b); "punitive action" is defined as "any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." *Id.,* § 3303. "Apart from a transfer, the agency's motive in taking any of such actions is irrelevant. They are each per se punitive without regard to the agency's motivation." *Otto v. Los Angeles Unified School Dist.,* 89 Cal.App.4th 985, 996, 107 Cal.Rptr.2d 664 (2001). Importantly, POBRA "does *not* require a showing that an adverse employment consequence has occurred or is likely to occur. It is sufficient if the [punitive action] 'may lead' to such consequences in the future." *Id.* at 997.

"With few exceptions that are not applicable to this case, [FFBOR] mirrors and is substantially the same as [POBRA]." *Hanford I, supra,* 2011 5825691 at *13 n. 5. As relevant here, FFBOR provides "[p]unitive action or denial of promotion on grounds other than merit shall not be undertaken by any employing department or licensing or certifying agency against any firefighter who has successfully completed the probationary period without providing the firefighter with an opportunity for administrative appeal." Cal. Gov. Code, § 3254, subd. (b). As in POBRA, "punitive action" in FFBOR means "any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment." *Id.,* § 3251, subd. (c).

In its November 17, 2011 order granting Defendants' motion to dismiss these causes of action with leave to amend, the Court explained why Plaintiffs had previously failed to allege facts sufficient to state a plausible claim to relief: "Plaintiffs have not sufficiently alleged in their Complaint how the Hanford City Council's enactment of the March 15, 2011 amendments constituted a punitive action. It is unclear how the Defendants' action were 'per se disciplinary' or

'punitive' in nature . . . . Moreover, Plaintiffs have not sufficiently alleged how the enactment of the amendments may lead to any of the adverse consequences at a future time." *Hanford I, supra,* 2011 WL 5825691 at *14.  The Court further found Plaintiffs had failed to allege facts indicating how the change in their employment status would impact their future career opportunities or that such change would negatively impact their ability to seek a promotion or transfer sometime in the future.  *Id.* Plaintiffs have not rectified these defects in the FAC.  Accordingly, Defendants' motion to dismiss the sixth and seventh causes of action shall be granted with one final opportunity to amend.

***G. Eighth cause of action (injunctive relief)*** – Defendants further move to dismiss Plaintiffs' eighth cause of action for injunctive relief.  Under this cause of action, Plaintiffs request that Defendants be enjoined from enforcing the amendments to the City of Hanford's Rules and Regulations through which Plaintiffs' employment rights were altered.  Given the Court has already found Plaintiffs adequately alleged facts to show Defendants enacted the amendments in violation of Plaintiffs' substantive and procedural due process rights, the cause of action for injunctive relief survives. Accordingly, Defendants' motion to dismiss this cause of action shall be denied.

***H. Ninth cause of action (declaratory relief)*** – Lastly, Defendants move to dismiss Plaintiffs' ninth cause of action for declaratory relief, wherein Plaintiffs seek "a declaration that Defendants may not: [¶] a. Convert Executive Management Employees from permanent employees with property rights in their employment to at-will employees; [¶] b. Revise the Seniority, Layoff and Bumping provisions to strip Executive Management Employees of the right to return to previously held positions and reemployment rights in the event of a layoff; [¶] c. Strip the disciplinary appeal rights from Executive Management Employees; [¶] d. Change the process by which Executive Management Employees progress through salary steps and create a right to deny what were previously automatic step increases on the grounds of 'average' performance; and [¶] e. Increase Executive Management Employees' contributions toward retirement, and decrease HANFORD's contributions toward

retirement, for Executive Management Employees, including the individual Plaintiffs herein."

"[D]eclaratory relief ' "operates prospectively, and not merely for the redress of past wrongs. It serves to set controversies at rest before they lead to repudiation of obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them." [Citations.]' [Citations.]" *Baxter Healthcare Corp. v. Denton,* 120 Cal.App.4th 333, 360, 15 Cal.Rptr.3d 430 (2004). Stated differently, "declaratory relief is designed in large part as a practical means of resolving controversies, so that parties can conform their conduct to the law and prevent future litigation." *Meyer v. Sprint Spectrum L.P.,* 45 Cal.4th 634, 648, 88 Cal.Rptr.3d 859, 200 P.3d 295 (2009). According to the allegations, Defendants have *already amended* the City of Hanford's Rules and Regulations to alter Plaintiffs' employment rights. Thus, in seeking a declaration that Defendants should not be permitted to do *things they have already done,* Plaintiffs are not seeking a prospective declaration of rights. Instead, Plaintiffs are essentially seeking to revert back to the status quo ante as of March 14, 2011 – the day before their rights were altered. Such a request would more appropriately be subsumed within their request for injunctive relief. Furthermore, the gravamen of Plaintiffs' claims, inasmuch as the Court can discern from the pleadings, is *not* that Defendants were prohibited from altering Plaintiffs' employment rights; the gravamen of Plaintiffs' claims is that Defendants were prohibited from altering Plaintiffs' employment rights *without due process of law*. Plaintiffs have provided no authority – and the Court's research reveals no authority – to suggest Defendants were categorically barred from enacting the amendments at issue under the facts presented here, and none of Plaintiffs' substantive causes of action entitle them to the relief requested.[3]   Accordingly, Defendants' motion to dismiss

---

[3] In the original complaint, Plaintiffs asserted two causes of action for violations of the Contract Clauses of the federal and California Constitutions alleging they were guaranteed certain contractual rights relating to their employment with the City of Hanford which Defendants could not unilaterally modify or impair.  The Court dismissed those causes of action with leave to amend, *Hanford I, supra,* 2011 WL 5825691 at *5-*8, and subsequently denied reconsideration of the dismissal.  *Hanford II, supra,* 2012 WL 603222 at *6-*11.  Plaintiffs did not reassert these causes of action in the FAC.

the ninth cause of action for declaratory relief shall be granted with one final opportunity to amend.

## V. DISPOSITION

Based on the foregoing, Defendants' motion to dismiss the first through fifth and eighth causes of action in the FAC as against them is DENIED.  Defendants' motion to dismiss the sixth, seventh and ninth causes of action in the FAC as against them is GRANTED with leave to amend.  Plaintiffs shall have one final opportunity to amend within thirty days of entry of this order.

IT IS SO ORDERED.

Dated:    June 12, 2012    _____

                                           CHIEF UNITED STATES DISTRICT JUDGE