1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANFORD EXECUTIVE MANAGEMENT EMPLOYEE ASSOCIATION, et al., | Case No.  1:11-cv-00828-AWI-SAB |
| Plaintiffs, | ORDER RE DISCOVERY MOTIONS |
| v. | ECF NO. 95, 96, 97 |
| CITY OF HANFORD, et al., | |
| Defendants. | |

On September 3, 2013, three discovery motions were filed in this matter: 1) Plaintiffs' motion to compel Defendant City of Hanford to provide further responses to interrogatories, 2) Plaintiffs' motion to compel Defendant City of Hanford to provide further responses to requests for production of documents, and 3) Defendants' motion to quash Plaintiffs' subpoena served on Scott Nelson.  The motions were heard by the Court on September 25, 2013.

For the reasons set forth below, the Court partially grants Plaintiffs' motions to compel and denies Defendants' motion to quash.

## I.

## BACKGROUND

The operative pleading in this action is the Second Amended Complaint filed on July 13, 2012.  (ECF No. 66.)  The claims raised by Plaintiffs arise from their employment with

1

Defendant City of Hanford ("Hanford").  Plaintiff Hanford Executive Management Employee Association is a union representing executive management employees.  The individual plaintiffs are current and former executive management employees.  Plaintiffs allege that they drafted a "Vote of No Confidence" memorandum directed at Defendant Hilary Straus, who was the city manager for the City of Hanford.  Afterwards, Plaintiffs contend that they were divested of various employment benefits, such as their status as "permanent employees," certain seniority, layoff and bumping rights, disciplinary appeal rights, automatic salary step increases, and retirement benefits.  Plaintiffs claim that they were retaliated against for their participation in drafting the Vote of No Confidence.

On July 12, 2013, Plaintiffs served interrogatories and requests for production of documents on Defendants.  Responses to these discovery requests were received on August 13 and 14.  The parties met and conferred regarding the discovery responses on August 30, 2013.

**A.   Plaintiffs' Motion to Compel Further Responses to Requests for Production of Documents**

On September 3, 2013, Plaintiffs filed a motion to compel Defendant City of Hanford to provide further responses to certain requests for production of documents.  (ECF No. 96.) Specifically, Plaintiffs seek further responses to Requests for Production Numbers 1, 10, 12, 13-26, 34, and 38-39 from the Request for Production of Documents, Set One, propounded by Plaintiff Mary Lindsay toward Defendant City of Hanford.  After filing their motion to compel, Plaintiffs received supplemental responses from Defendants.  Plaintiffs contend that Defendants' responses to Requests for Production Numbers 10, 14-16, 18-26, 34, and 38-39, remain deficient.

**B.   Plaintiffs' Motion to Compel Further Responses to Interrogatories**

On September 3, 2013, Plaintiffs filed a motion to compel Defendant City of Hanford to provide further responses to certain interrogatories.  (ECF No. 95.)  Specifically, Plaintiffs seek further responses to Interrogatory Numbers 1, 3-6, 10, 13, 15-18, 22 and 24 from the First Set of Interrogatories propounded by Plaintiff Hanford Executive Management Employee Association toward Defendant City of Hanford.

/ / /

### C.      Defendants' Motion to Quash Subpoena

On September 3, 2013, Defendants filed a motion to quash the subpoena served by Defendants on Scott Nelson.  (ECF No. 97.)  Defendants contend that the subpoena calls for testimony and for the production of documents that are protected by the work product doctrine and the attorney-client privilege.

Scott Nelson was an investigator hired by the City of Hanford's City Council to investigate the claims in the Vote of No Confidence memorandum submitted by Plaintiffs concerning Defendant Straus.  At least two other Vote of No Confidence memoranda were submitted by other organizations.  Defendants contend that Mr. Nelson was hired as an investigator because the allegations against Mr. Straus could have subjected the City of Hanford to liability.  Defendants further contend that all communications with Scott Nelson were directed through the City Attorney's office.  Mr. Nelson's investigation culminated in a written report.

### D.      The Parties' Attempts to Meet and Confer

On August 30, 2013, the parties met and conferred regarding the outstanding discovery disputes.  Defendants agreed to provide some further responses to Plaintiffs' discovery requests.  Plaintiffs informed Defendants that the deadline to file a motion to compel was September 3, 2013, but that any additional responses received before the motion was filed would reduce the number of issues raised in the motions.

On September 18, 2013, the parties filed a joint statement regarding the discovery dispute.  (ECF No. 99.)  Plaintiffs informed the Court that some additional documents have been received, but that Defendants have not provided a privilege log with respect to documents withheld on the basis that they were privileged.

### E.      The Hearing on the Discovery Motions

The hearing on the motions took place on September 25, 2013.  At the hearing, Plaintiffs indicated that issues remain concerning the sufficiency of the supplemental responses provided by Defendants after the motions were filed.  Plaintiffs also indicated that Defendants had just provided a privilege log a week prior to the hearing (on September 18) and Plaintiffs contend that the privilege log was both untimely and insufficient.  Plaintiffs also contend that Defendants

1   withheld certain documents pursuant to a closed session privilege that was not previously raised

2   and was therefore effectively waived.

3        With respect to the motion to quash, Defendants argued that Mr. Nelson's thoughts and

4   conclusions concerning his investigation of Mr. Straus is privileged.  Defendants further argue

5   that Plaintiffs have no need to depose Mr. Nelson concerning interviews Mr. Nelson conducted

6   with other persons, including Plaintiffs, because Plaintiffs can obtain such discovery directly

7   from themselves and the other interviewees.  Defendants also argued that they do not possess

8   Mr. Nelson's notes and reports and therefore cannot produce them, despite the fact that

9   Defendants concede that these notes and reports are in the possession of Defendants' attorneys.

10       After the hearing, both parties submitted further briefing on the matter.  On September

11  26, 2013, Plaintiffs filed further briefing pertaining to the sufficiency of the supplemental

12  discovery responses provided by Defendants.  On September 27, 2013, Defendants submitted

13  documents, in camera, pertaining to the scope of Mr. Nelson's investigation of Mr. Straus.  On

14  October 1, 2013, the Court ordered Defendants to submit copies of the privileged documents for

15  in camera review.  (ECF No. 106.)  The Court also ordered the parties to submit briefing on the

16  issue of certain documents in the possession of Mr. Nelson.  Defendants submitted additional

17  briefing on October 4, 2013 and October 9, 2013.  (ECF Nos. 107-108, 110.)  Defendants also

18  provided a second privilege log on October 9, 2013 describing the documents responsive to the

19  Nelson subpoena.  Plaintiffs submitted additional briefing on October 11, 2013.  (ECF Nos. 111-

20  112.)

21                                            **II.**

22                                      **DISCUSSION**

23  **A.      Plaintiffs' Motion to Compel – Requests for Production of Documents**

24       Defendants withheld certain documents responsive to Plaintiffs' requests for production

25  on the basis of the attorney-client privilege, the work product doctrine and the closed-session

26  privilege.  Plaintiffs contend that Defendants failed to prepare a timely privilege log and thereby

27  waived any protections afforded by any evidentiary privileges.  Plaintiff also continues to assert

28  individualized objections to specific requests for production.

1.      Waiver of Privileges

On the subject of privilege logs, Federal Rule of Civil Procedure 26(b)(5) states, in pertinent part:

> **(5)     Claiming Privilege or Protecting Trial-Preparation Materials.**
> **(A)**      *Information Withheld*.  When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i)      expressly make the claim; and
> (ii)      describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

In Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005), the Ninth Circuit addressed the circumstances in which the failure to timely produce a privilege log would constitute a waiver of the privilege:

> We hold that boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege.  However, we also reject a per se waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit.  Instead, using the 30-day period as a default guideline, a district court should make a case-by-case determination, taking into account the following factors: the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard.  These factors should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process.

In this case, Defendants sought to assert privileges over three categories of documents. First, Defendants assert that certain communications listed in a September 18 privilege log are attorney-client privileged.     Second, Defendants assert that certain attachments to the communications in the September 18 privilege log are protected by a Closed Session Privilege

1   and the work product doctrine.   Third, Defendants assert that reports and notes from Mr.

2   Nelson's investigation of Mr. Straus are protected by the work product doctrine and the attorney-

3   client privilege.   Defendants never produced a privilege log with respect to the third category of

4   documents in the context of Plaintiffs' requests for production, but Defendants did produce a

5   privilege log on October 9 in the context of the Nelson subpoena.   It is worth noting that none of

6   the privilege logs provided by Defendants were timely.   Both of the privilege logs were provided

7   after Defendants' responses were due, after the parties met and conferred regarding the

8   responses, after Plaintiffs filed a motion to compel and after the parties filed their joint statement

9   regarding their discovery disagreement pursuant to Local Rule 251(c).   The October 9 privilege

10  log was not provided until after the hearing on Plaintiffs' motions to compel.

11      Applying the <u>Burlington Northern</u> factors, the Court finds that Defendants have not

12  waived the attorney-client privilege for the correspondences covered by the September 18

13  privilege log.   While the September 18 privilege log was not produced in a timely manner and

14  the information provided therein is minimal, the documents at issue appear to be quintessential

15  examples of attorney-client communications protected by the privilege.   The documents in the

16  September 18 privilege log consist of e-mails between Hanford's city manager and Hanford's

17  attorneys concerning city policies and legal issues.

18      The Court finds that Defendants have waived any privileges applicable to the attachments

19  identified in the September 18 privilege log.   It may be the case that these attachments *could*

20  have been protected by an applicable privilege, but Defendants failed to give Plaintiffs any

21  information that would enable Plaintiffs to evaluate the assertion of privilege.   Since these

22  attachments are separate documents, Defendants should have included separate entries in the

23  privilege log that identified when the attachment document was created, who created it, who it

24  was given to, and what the document was.   Defendants did not provide sufficient information to

25  Plaintiffs.   Therefore, under <u>Ruehle</u>, they waived any privileges applicable to these attachment

26  documents.[1]

27  _____

28  [1] It is also worth noting that Defendants attempted to withhold some of these documents on the basis of a "closed session" privilege, which is not a privilege recognized under federal law and therefore would not apply in these

1    The Court also finds that Defendants have waived privileges with respect to the
2    documents related to Mr. Nelson's investigation of Mr. Straus.  These documents were not
3    mentioned in the September 18 privilege log, and it is unclear why Defendants omitted them
4    from the first privilege log.  It may be the case that Defendants incorrectly assumed that these
5    documents were also the subject of a request for production in the subpoena directed at Mr.
6    Nelson.  Defendants also suggested at the hearing that they did not produce the investigation
7    documents in response to the requests for production because they were not in Defendants'
8    "possession."

9    Defendants' arguments with respect to "possession" are unavailing because the Federal
10   Rules of Civil Procedure require a party to produce any documents in the possession of a third
11   party but nonetheless within that party's control.  Fed. R. Civ. P. 34(a)(1); Soto v. City of
12   Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).  In this case, Defendants have demonstrated that
13   they have control over Mr. Nelson with respect to the documents in Mr. Nelson's possession
14   related to the investigation of Mr. Straus.  Accordingly, Defendants were obligated to produce all
15   of these documents that were in Mr. Nelson's possession to the extent that they were responsive
16   to Plaintiffs' request for production.  Given that Request for Production No. 34 asked for all
17   documents from Mr. Nelson related to the investigation of Mr. Straus, some if not all of these
18   documents should have been produced by Defendants.  Defendants did not produce these
19   documents and failed to provide Plaintiffs with a timely privilege log that covered these
20   documents.

21   It may be the case that Defendants believed that they did not have to assert any privileges
22   with respect to the Nelson investigation documents in the context of the requests for production
23   because Defendants asserted privilege over these documents in their motion to quash.  However,
24   the Court is unaware of any authority that permits Defendants to ignore the privilege issue with
25   requests for production because Plaintiffs sought the same documents from a third party source
26   via a subpoena.  Moreover, even if the Court were to consider the arguments raised in the motion

---

28   proceedings.  See North Pacifica, LLC v. City of Pacifica, 274 F. Supp. 2d 1118, 1126 (N.D. Cal. 2003); Kaufman v. Board of Trustees, 168 F.R.D. 278, 280 (C.D. Cal. 1996).

1    to quash, Defendants have not met their burden of demonstrating that these investigation

2    documents are protected by any privilege.  See discussion, infra, Part II.C.

3        Based upon the foregoing, the Court finds that Defendants adequately asserted the

4    attorney-client privilege with respect to the documents covered by the September 18 privilege

5    log.  However, Defendants waived any privileges with respect to any other documents that

6    should have been produced in response to Plaintiffs' requests for production.  Accordingly, the

7    Court will order Defendants to produce to Plaintiffs all documents that were withheld on the

8    basis of privilege other than those protected by the attorney-client privilege and listed in the

9    September 18 privilege log.

10       2.    Plaintiffs' Individualized Objections To Specific Requests For Production

11       Plaintiffs continue to assert individualized objections to Defendants' responses to

12   Requests for Production Nos. 10, 14-16, 18-26, 34 and 38-39.

13       a.    *Request for Production No. 10*

14       Request for Production No. 10 sought certain e-mail correspondences from Defendant

15   Hilary Straus identified in Defendants' initial disclosures.  Defendants stated that all documents

16   responsive to this request are privileged.  As discussed above, Plaintiff has adequately asserted

17   the attorney-client privilege with respect to the e-mail correspondences between Mr. Straus and

18   Hanford's attorneys.  Therefore, the Court will not order Defendants to produce these

19   documents.

20       b.    *Request for Production No. 14*

21       Request for Production No. 14 sought all documents relating to the "Strategic Plan"

22   referred to by Defendants in another document.  Plaintiffs contend that other responsive

23   documents exist because there were multiple meetings regarding the "Strategic Plan."  However,

24   Defendants contend that they produced all responsive documents and the Court finds

25   Defendants' response to be satisfactory.  Under Federal Rule of Civil Procedure 26(e),

26   Defendants have a continuing obligation to supplement their discovery responses.  Therefore, to

27   the extent that additional documents are discovered, Defendants must produce them in a

28   supplemental disclosure.  In the future, if Plaintiffs can concretely demonstrate that Defendants

improperly withheld responsive documents were withheld, they may raise the issue in an appropriate motion. However, the information provided by Plaintiffs thus far is not sufficient to demonstrate that responsive documents were withheld.

       c.    *Request for Production No. 15*

Request for Production No. 15 seeks all documents related to a "Strategic Plan Monitoring Matrix." Defendants indicated that all responsive documents have been produced and Plaintiffs have not demonstrated that Defendants have improperly withheld any documents. Accordingly, the Court finds Defendants' response to be sufficient.

       d.    *Request for Production No. 16*

Request for Production No. 16 seeks all documents relating to a "Strategic Planning Retreat." Defendants indicated that all responsive documents have been produced and Plaintiffs have not demonstrated that Defendants have improperly withheld any documents. Accordingly, the Court finds Defendants' response to be sufficient.

       e.    *Request for Production No. 18*

Request for Production No. 18 seeks all documents related to the Policy of Administration for Executive Management Employees adopted by the Hanford City Council on March 15, 2011. Plaintiff argues that it appears some documents may have been withheld by Defendants because prior discovery revealed that work in drafting the policy at issue began in July 2010 and Defendants did not produce any documents related to any work or drafts done between July 2010 and March 2011. However, Defendants' indicated that they produced all responsive documents and that no documents were withheld on the basis of privilege. Plaintiffs' arguments do not persuasively demonstrate that any documents were improperly withheld. Accordingly, the Court finds Defendants' response to be sufficient.

       f.    *Request for Production No. 19*

Request for Production No. 19 seeks all documents related to the resolution adopting the Policy of Administration for Executive Management Employees. Plaintiffs' arguments are similar to the arguments made with respect to Request for Production No. 18. For the same reasons discussed above, the Court finds Defendants' response to be sufficient.

1    Plaintiffs also argue that Defendants' response appears to include a typographical error

2  because Defendants cited documents bates stamped 0653 to 0854 as responsive and Plaintiffs'

3  review of these documents showed that they were unrelated to the request.   To the extent that

4  Defendants' response did include a typographical error, Defendants are obligated to correct their

5  response in a supplemental response pursuant to Federal Rule of Civil Procedure 26(e).

6         g.     *Request for Production Nos. 20-23*

7    Requests for Production Nos. 20-23 seek documents relating to communications to or

8  from certain specified persons regarding a March 15, 2011 letter.   Defendants' responses

9  indicated that no such documents exist.   The Court finds Defendants' responses to be sufficient.

10        h.     *Request for Production No. 24*

11   Request for Production No. 24 sought documents relating to Cathy Cain's termination

12  from employment.   Plaintiffs argue that they "cannot believe that [the list of documents produced

13  by Defendants] is a complete listing of all such relevant documents..."   Plaintiffs' argument does

14  not persuasively demonstrate that any documents were improperly withheld.   If Plaintiffs can

15  demonstrate that documents were improperly withheld, and has evidence of improper discovery

16  conduct that goes beyond mere beliefs, Plaintiffs can raise the issue in an appropriate motion.

17  The Court finds Defendants' response to be sufficient.

18        i.     *Request for Production No. 25*

19   Request for Production No. 25 sought documents relating to Mary Rose Lindsay's

20  termination from employment.   The arguments raised by Plaintiffs are essentially the same as the

21  arguments raised with respect to Request for Production No. 24.   For the same reasons discussed

22  above, the Court finds Defendants' response to be sufficient.

23        j.     *Request for Production No. 26*

24   Request for Production No. 26 sought documents pertaining to communications about the

25  Policy of Administration for Executive Management Employees.   Defendants referred to City

26  Council meeting minutes that are posted on the City of Hanford's website.   Plaintiffs argue that

27  Defendants are obligated to identify which specific meeting minutes are responsive to Plaintiffs'

28  request.

1    Federal Rule of Civil Procedure 34(b)(2)(E) states that "[a] party must produce

2   documents as they are kept in the usual course of business or must organize and label them to

3   correspond to the categories in the request."  In this case, Defendants permitted inspection of the

4   documents at issue as they are kept in the usual course of business.  Plaintiffs do not cite any

5   authority that suggests that Defendants must bear the burden of sifting through the documents

6   and organize them in a manner desired by Plaintiffs.  The Court finds Defendants' response to be

7   satisfactory.

8        k.    *Request for Production No. 34*

9    Request for Production No. 34 sought all documents from Scott Nelson about the

10  investigation of Hilary Straus.  Defendants argue that the documents are protected by the work

11  product doctrine.  However, for the reasons discussed above, the Court finds that Defendants

12  waived any work product doctrine protection over these documents.  Accordingly, this objection

13  is overruled.

14   Defendants also argue that Plaintiffs' own statements need not be discovered from Mr.

15  Nelson's documents.  In other words, Plaintiffs know what they told Mr. Nelson and do not need

16  to review Mr. Nelson's documents in order to discover that information.  However, Defendants'

17  argument fails to acknowledge the utility of discovering what Mr. Nelson believes Plaintiffs'

18  said in the event that Plaintiff's recollection and Mr. Nelson's recollection of those interviews

19  differ and Defendants attempt to impeach Plaintiffs using statements Plaintiffs' made to Mr.

20  Nelson.  Defendants also ignore the possibility that Mr. Nelson spoke with individuals other than

21  Plaintiffs during the course of his investigation, and Mr. Nelson's findings may lead to the

22  discovery of admissible evidence.  Accordingly, Defendants' objections are overruled and the

23  Court will order Defendants to produce any documents responsive to Request for Production No.

24  34.

25        l.    *Request for Production No. 38*

26   Request for Production No. 38 sought all documents relating to the preparation of the

27  March 15, 2011 memorandum to the Hanford City Council on the subject of the Policy of

28  Administration for Executive Management Employees.  Defendants' response indicates that all

1   responsive documents that could be located have been produced and Plaintiffs do not present any

2   persuasive evidence that any documents have been withheld.   Accordingly, the Court finds

3   Defendants' response to be sufficient.

4          m.     *Request for Production No. 39*

5          Request for Production No. 39 sought all documents related to a 2011 meeting where the

6   Proposed Policy of Administration for Executive Management Employees was discussed.

7   Defendants' response indicates that no responsive documents exist and Plaintiffs do not present

8   any persuasive evidence that documents were withheld.   Accordingly, the Court finds

9   Defendants' response to be sufficient.

10         **B.     Plaintiffs' Motion to Compel – Interrogatories**

11         Plaintiffs contend that Defendants' responses to certain interrogatories are insufficient.

12   Specifically, Plaintiffs contend that Defendants' responses to Interrogatories Nos. 1, 3-6, 10, 13,

13   15-18, 22 and 24 were insufficient.

14         As a general matter, the Court notes that many of the interrogatories at issue are

15   "contention interrogatories," which are generally disfavored.   "Contention interrogatories which

16   'systematically track all of the allegations in an opposing party's pleadings, and that ask for

17   "each and every fact" and application of law to fact that supports the party's allegations are an

18   abuse of the discovery process because they are overly broad and unduly burdensome.'"   Miles

19   v. Shanghai Zhenhua Port of Machinery Co., LTS, No. C08-5743 FDB, 2009 WL 3837523, at *1

20   (W.D. Wash. Nov. 17 2009) (quoting Lucero v. Valdez, 240 F.R.D. 591, 594 (D.N.M. 2007)).

21   "'Each and every fact' interrogatories pose problems for a responding party and a reviewing

22   court.   Parties are not tasked with laying out every jot and tittle of their evidentiary case in

23   response to interrogatories."   Tubbs v. Sacramento County Jail, No. CIV S-06-0280 LKK GGH

24   P, 2008 WL 863974, at *1 (E.D. Cal. Mar. 28, 2008) (quoting Lucero, 240 F.R.D. at 594).

25   "Contention interrogatories should not require a party to provide the equivalent of a narrative

26   account of its case, including every evidentiary fact, details of testimony of supporting witnesses,

27   and the contents of supporting documents."   Lucero, 240 F.R.D. at *594.

28   ///

With these principals in mind, the Court addresses the specific arguments raised by Plaintiffs' with respect to Defendants' interrogatory responses.

### 1.  Interrogatory No. 1

Interrogatory No. 1 is a contention interrogatory asking Defendants for each and every fact supporting its allegation that Plaintiffs did not suffer any damages.  Defendants generally responded by stating that Plaintiffs received additional employment benefits as a result of Defendants' policy changes, that one defendant received a severance payment upon termination, and any reduced benefits do not constitute damages because Plaintiffs had no vested right in those benefits.   The Court finds Defendants' general response to Plaintiffs' contention interrogatory to be sufficient.

### 2.  Interrogatory No. 3

Interrogatory No. 3 asks for all documents that supports Plaintiff's allegation that Plaintiffs did not suffer any damages.   Defendants provided Plaintiffs with a broad and generalized summary of the documents responsive to the interrogatory.   The Court finds that Defendants' broad and generalized response to Plaintiffs' broad and generalized contention interrogatory is sufficient.

### 3.  Interrogatory No. 4

Interrogatory No. 4 asks for all facts supporting Defendants' contention that Plaintiff's speech was not protected.  Defendants responded by stating that Plaintiffs' speech was made in the course of their employment and therefore not entitled to First Amendment Protection.  The Court finds that Defendants' response to Plaintiff's contention interrogatory was sufficient.

### 5.  Interrogatory No. 5

Interrogatory No. 5 asks for all persons who have knowledge of the facts supporting Defendants' contention that Plaintiffs' speech was made in the course of their employment and therefore not entitled to First Amendment Protection.  Defendants identified "Plaintiffs" in their response, and contend that since Plaintiffs are the ones who engaged in the speech in question (the Vote of No Confidence), they are the most appropriate witnesses regarding the circumstances surrounding their Vote of No Confidence.

1    The Court finds Defendants' response sufficient.   Given the vagueness of the

2    interrogatory, it is sufficient for Defendants to identify the individuals associated with the speech

3    in question.  Plaintiffs did not articulate their interrogatory in a manner that clearly delineated the

4    category of persons that Plaintiffs wanted Defendants to identify.  Plaintiffs' interrogatory is a

5    representative example of why contention interrogatories (or, in this case, an interrogatory which

6    asks a party to identify all witnesses with knowledge of the facts responsive to a contention

7    interrogatory) are disfavored.

8            4.    Interrogatory No. 6

9            Interrogatory No. 6 asks for all documents supporting Defendants' contention that

10    Plaintiffs' speech was not protected.  The only argument raised by Plaintiffs is that Defendants

11    should be obligated to provide some affirmative representation that their response identifies "all"

12    the documents requested.   Since Plaintiffs' interrogatory requested "each document" that

13    supported Defendants' affirmative request, it is implied that Defendants' response identifies

14    "each document."  The Court will not require Defendants to make an express representation of

15    what is clearly implied.  To the extent that Plaintiffs believe that Defendants failed to provide a

16    full and complete response, it is Plaintiffs' burden to demonstrate it in an appropriate motion.

17            5.    Interrogatory No. 10

18            Interrogatory No. 10 asks for all facts that support Defendants' contention that no adverse

19    employment action took place against Plaintiffs.  Defendants' response states that Plaintiffs were

20    not "punished" and any loss of employment benefits were related to a policy change unrelated to

21    any punishment.   Plaintiffs argue that Defendants' response is insufficient because "adverse

22    employment action" is not synonymous with "punishment."   The Court finds Defendants'

23    response to be sufficient.  The gist of Defendants' response states that Defendants did not take

24    any adverse action against Plaintiffs and any adverse consequences suffered by Plaintiffs due to

25    changes in benefits were related to general policy changes.  Again, Plaintiffs' interrogatory is a

26    representative example of why contention interrogatories are disfavored.  In this case, Plaintiffs'

27    contention article is particularly unwieldy because it asks for all facts which support a negative

28    proposition.    Plaintiffs cannot expect a minute-by-minute accounting of each Plaintiffs'

1   employment history with explanations as to how each and every "employment action" taken with
2   respect to each and every Plaintiff was not an "adverse employment action."   Broad inquiries
3   will receive broad responses.   A more pointed interrogatory focused on a specific employment
4   action would merit a more focused response.   Defendants' response was satisfactory.

5           6.      Interrogatory No. 13

6           Interrogatory No. 13 asks for all facts supporting Defendants' contention that Plaintiffs'
7   speech was not a substantial motivating factor for the alleged adverse action.   Defendants'
8   response alludes to certain City Council meetings and retreats where the policy changes that
9   affected Plaintiffs' benefits were discussed without any reference to Plaintiffs' No Confidence
10  Memorandum.   Plaintiffs argue that Defendants' response should identify the specific City
11  Council meetings and retreats alluded to by Defendants.   The Court finds that Defendants'
12  response is satisfactory.   Plaintiffs' interrogatory did not specifically inquire about the City
13  Council meetings and retreats nor is it phrased in a manner such that Defendants' response
14  would be expected to include such level of detail.   Therefore, Defendants were not required to
15  provide that level of detail in their response.

16          7.      Interrogatory No. 15

17          Interrogatory No. 15 asks for each document that supports the facts related to
18  Defendants' contention that Plaintiffs' speech was not a substantial motivating factor for the
19  alleged adverse action.   Defendants' response alludes to privileged e-mails between the City
20  Attorney and the City Manager.   Plaintiffs' contend that Defendants did not provide sufficient
21  specificity regarding those privileged e-mails.   As discussed above, the Court finds that
22  Defendants provided sufficient information to preserve the attorney-client privilege with respect
23  to the e-mails between the City Attorney and the City Manager.   Plaintiffs are not entitled to any
24  more information regarding the content of these privileged documents.   Accordingly,
25  Defendants' response is satisfactory.

26          8.      Interrogatory No. 16

27          Interrogatory No. 16 asks for all facts which support Defendants' contention that
28  Defendants' administrative interests outweigh Plaintiffs' First Amendment rights.   Defendants'

1   response states that Plaintiffs' speech was made in the scope of their employment and therefore
2   not protected.

3          Interrogatory No. 16 is related to the test established by <u>Pickering v. Bd. of Educ.</u>, 391
4   U.S. 563 (1968), for determining when a government employer unconstitutionally "abuse[s] its
5   position as employer to stifle 'the First Amendment rights [its employees] would otherwise enjoy
6   as citizens to comment on matters of public interest.'" <u>Eng v. Cooley</u>, 552 F.3d 1062, 1070 (9th
7   Cir. 2009).  One factor in determining whether the government is liable under this theory is
8   whether the government had a legitimate administrative interest in treating an employee
9   differently from any other member of the general public.  <u>Id.</u> at 1071-72.

10         Contrary to Defendants' suggestion otherwise, the issue of whether administrative
11  interests justified Defendants' actions is distinct from the issue of whether Plaintiffs' speech was
12  made in the scope of their employment.  Although both inquiries may lead to qualified immunity
13  for Defendants, they are separate inquiries.  <u>See Eng</u>, 552 F.2d at 1071-72 (addressing both
14  inquiries separately).  Therefore, Defendants response was insufficient because it fails to set
15  forth the facts that support their contention that administrative interests outweighed Plaintiffs'
16  First Amendment rights.  Accordingly, the Court will compel Defendants' to provide a further
17  response which identifies the administrative interests at issue and explains how those interests
18  outweigh Plaintiffs' First Amendment rights.

19         9.      <u>Interrogatory No. 17</u>

20         Interrogatory No. 17 asks for persons who have knowledge of the fact that Defendants'
21  administrative interests outweigh Plaintiffs' First Amendment rights.  In light of the Court's
22  finding that a further response to Interrogatory No. 16 is required, the Court will also require
23  Defendants to provide a further response to Interrogatory No. 17 which identifies all persons
24  with knowledge of the facts stated in response to Interrogatory No. 16.

25         10.     <u>Interrogatory No. 18</u>

26         Interrogatory No. 18 asks for all documents that support Defendants' contention that their
27  administrative interests outweigh Plaintiffs' First Amendment rights.  In light of the Court's
28  finding that a further response to Interrogatory No. 16 is required, the Court will also require

1   Defendants to provide a further response to Interrogatory No. 18 which identifies all documents

2   supporting the facts stated in response to Interrogatory No. 16.

3        11.   <u>Interrogatory No. 22</u>

4        Interrogatory No. 22 asks for all facts which support Defendants' contention that

5   Defendants would have taken any alleged adverse employment action irrespective of Plaintiffs'

6   alleged protected speech.  Defendants' response states that the employment policies at issue were

7   developed prior to Plaintiffs' Vote of No Confidence and the timing of the development of the

8   policy supports Defendants' contention that the policies were developed in response to labor

9   relations bargaining and not any protected speech.  Plaintiffs argue that Defendants response was

10  not sufficient because it did not identify the specific documents and testimony.  Plaintiffs also

11  argue that Defendants should have provided additional facts regarding the labor relations

12  bargaining.

13       The Court finds Defendants' response to be sufficient.  Plaintiffs' interrogatory did not

14  inquire as to any specific documents or testimony and therefore Plaintiffs could not expect to

15  receive such information in Defendants' response.  Similarly, Plaintiffs' interrogatories did not

16  specifically inquire into the details regarding the labor relations bargaining and therefore

17  Defendants' were not obligated to include such details in their response.

18       12.   <u>Interrogatory No. 24</u>

19       Interrogatory No. 24 asks for all documents which support Defendants' contention that

20  Defendants would have taken any alleged adverse employment action irrespective of Plaintiffs'

21  alleged protected speech.  Defendants' response states that they are unaware of any documents

22  responsive to Plaintiffs' interrogatory, which the Court deems sufficient.

23  **C.   Defendants' Motion to Quash**

24       Defendants seek to quash Plaintiffs' subpoena served on Scott Nelson.  Defendants argue

25  that the subpoena asks Mr. Nelson to produce privileged documents and that compliance with the

26  subpoena would violate the attorney-client privilege and the work product doctrine.  Defendants

27  did not initially provide Plaintiffs or the Court with a privilege log demonstrating how the

28  documents responsive to the Nelson subpoena are privileged.  Defendants did not produce a

privilege log until October 9, 2013--after the hearing on Defendants motion to quash and after the Court expressly ordered Defendants to produce a privilege log.  The October 9 privilege log lists the documents responsive to the Nelson subpoena and identifies the applicable privilege.

Defendants contend that the documents requested in the Nelson subpoena are protected by the work product doctrine and attorney client privilege.  Defendants also contend that Nelson's testimony is privileged.  However, the Court finds that Defendants have not borne their burden of demonstrating that any privilege is applicable.

        1.    <u>Defendants Have Not Adequately Demonstrated The Applicability Of The Attorney-Client Privilege With Respect To The Nelson Subpoena</u>

The Court notes that the October 9 privilege log claims that four documents are protected by the attorney client privilege.  However, the privilege log does not provide sufficient information to invoke the attorney client privilege.  Although the privilege log suggests that these documents consist of notes that arose for communications with Hanford's attorney, the privilege log does not identify who the attorney was communicating with.  Given the context, the communications presumably occurred between Hanford's attorney and Mr. Nelson.  However, Defendants do not demonstrate how Mr. Nelson can be considered a "client" for purposes of the attorney-client privilege.  Defendants characterize Mr. Nelson as a third party investigator retained by Hanford's city attorney.  Accordingly, even assuming that the documents at issue consist of notes pertaining to conversations between Hanford's city attorney and Mr. Nelson, it is unclear how the attorney-client privilege applies.  Moreover, there is no information provided pertaining to the content of those conversations or communications.  Accordingly, Defendants have not met their burden of demonstrating that the attorney-client privilege applies to any of the documents described in the October 9 privilege log.

        2.    <u>Defendants Have Not Adequately Demonstrated The Applicability Of The Work Product Doctrine With Respect To The Nelson Subpoena</u>

The October 9 privilege log primarily claims work product doctrine protection for documents responsive to the Nelson subpoena.  "The work-product doctrine protects 'from discovery documents and tangible things prepared by a party or his representative in anticipation

of litigation.'" <u>U.S. v. Richey</u>, 632 F.3d 559, 567 (9th Cir. 2011) (quoting <u>Admiral Ins. Co. v.</u>

<u>U.S. Dist. Ct.</u>, 881 F.2d 1486, 1494 (9th Cir. 1989)).  "To qualify for work-product protection,

documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by

or for another party or by or for that other party's representative.'"  <u>In re Grand Jury Subpoena,</u>

<u>Mark Torf/Torf Envtl. Mgmt. (Torf)</u>, 357 F.3d 900, 907 (2004)).  "In circumstances where a

document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then

the 'because of' test is used."  <u>Id.</u>

> Dual purpose documents are deemed prepared because of litigation
> if in light of the nature of the document and the factual situation in
> the particular case, the document can be fairly said to have been
> prepared or obtained because of the prospect of litigation.  In
> applying the "because of" standard, courts must consider the
> totality of the litigation, and determine whether the document was
> created because of anticipated litigation, and would not have been
> created in substantially similar form but for the prospect of
> litigation.

<u>Id.</u> (internal quotations and citations omitted).

Defendants contend that all materials related to Mr. Nelson's investigation of the Vote of

No Confidence memoranda should be deemed protected work product because the investigation

was undertaken in anticipation of litigation.  However, the Court finds that Defendants have not

adequately demonstrated that the work product doctrine applies.

Absent from the record provided by Defendants is a declaration or equivalent evidence

from the person at the City Attorney's office who made the decision to retain Mr. Nelson as an

investigator that describes the reasons for which Mr. Nelson was retained.  There also is no

declaration or equivalent evidence from Mr. Nelson that states that it was Mr. Nelson's

understanding that he was retained for the purpose of investigating anticipated litigation.

Defendants did submit records that indicated that Mr. Nelson investigated alleged

incidents of discrimination and "hostile work environment.[2]"  However, the same records also

indicate that Mr. Nelson's investigation also encompassed complaints regarding Mr. Straus'

---

[2] It is worth noting that the references to "hostile work environment" in Mr. Nelson's notes and reports could either refer to "hostile work environment" in the legal/Title VII sense or it could refer to "hostile work environment" in the more colloquial sense, i.e., a work environment where employees are hostile toward one another.  Read in context, the latter appears to be the intended interpretation as the discussion on "hostile work environment" concerns general hostility between employees rather than class-based, discriminatory hostility within the meaning of Title VII.

1   personality and management skills and not just complaints about potentially illegal conduct.  The

2   Vote of No Confidence memoranda that Mr. Nelson was asked to investigate also raises broader

3   complaints regarding Mr. Nelson's competency, rather than any specific illegal conduct or threat

4   of litigation.

5          Having reviewed the investigation materials in question <u>in camera</u>, the Court finds that,

6   considering the totality of the circumstances, it cannot be said that Mr. Nelson's investigation

7   materials were prepared "because of" the prospect of litigation.  Most of the content of Mr.

8   Nelson's investigation was unrelated to any anticipated litigation.  Accordingly, the Court finds

9   that the work product doctrine does not apply to Mr. Nelson's investigation materials.

10              3.   <u>Defendants' Remaining Arguments</u>

11          Defendants also argue that a deposition of Mr. Nelson is unnecessary because Mr. Nelson

12  does not have any first-hand knowledge of the events at issue.  Defendants argue that a

13  deposition of Mr. Nelson is particularly inappropriate in light of the fact that Plaintiffs could

14  depose the same people that Mr. Nelson interviewed that had first-hand knowledge of the events

15  at issue.  Defendants' arguments have no merit.  Defendants cite no authority for the proposition

16  that Mr. Nelson may not be deposed regarding comments Plaintiffs made to Mr. Nelson.  Such

17  discovery may have some value for the purpose of anticipating attacks on Plaintiffs' credibility,

18  refreshing Plaintiffs' recollection, discovering Plaintiffs' prior consistent statements, etc.

19  Deposing Mr. Nelson could also lead to the discovery of other admissible evidence, such as

20  testimony from other witnesses Mr. Nelson has spoken with.

21          Based upon the foregoing, Defendants' motion to quash will be denied.

22     **D.   Plaintiffs' Request for Attorney's Fees**

23          Plaintiffs seek costs and attorney's fees for bringing their motions to compel.  Federal

24  Rule of Civil Procedure 37(a)(5) states:

25          **(5)   Payment of Expenses; Protective Orders.**
            **(A)**   *If the Motion is Granted (or Disclosure or Discovery Is*
26          *Provided After Filing).*   If the motion is granted—or if the
            disclosure or requested discovery is provided after the motion was
27          filed—the court must, after giving an opportunity to be heard,
            require the party or deponent whose conduct necessitated the
28          motion, the party or attorney advising that conduct, or both to pay

the movant's reasonable expenses incurred in making the motion, including attorney's fees.   But the court must not order this payment if:
(i)      the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
(ii)     the opposing party's nondisclosure, response, or objection was substantially justified; or
(iii)    other circumstances make an award of expenses unjust.

As discussed above, many of Defendants' discovery responses were deficient and Defendants did not properly assert the Closed Session privilege or the work product doctrine. Although the Court found that some of Defendants' discovery responses were satisfactory, many responses only became satisfactory after Plaintiffs filed their motion to compel and Defendants provided supplemental responses.    Moreover, Defendants' assertion of the attorney-client privilege was not adequate until after Defendants provided a privilege log, which occurred after Plaintiffs filed their motion to compel and the parties filed their joint statement under Local Rule 251(c). Defendants do not provide any explanation why these supplemental responses and the privilege log were not provided earlier.    Accordingly, the Court finds that Defendants' nondisclosure was not substantially justified and there are no other circumstances that would make an award of expenses unjust. The Court will order Defendants to pay Plaintiffs' reasonable expenses incurred in making their motions to compel.

Plaintiffs submitted a declaration from their attorney indicated that they expended approximately $5,557.00 in attorneys' fees preparing their motions to compel based upon 16.9 hours of work. (Decl. of James W. Henderson, Jr. in Supp. of Mot. to Compel Further Resp. to Interrogatories and Req. for Prod. of Docs. and in Opp'n to Defs.' Mot. to Quash Subpoena of Scott Nelson ¶ 13.) The Court finds that Plaintiffs' expenses were reasonable.    Accordingly, the Court will order Defendants to pay Plaintiffs' $5,557.00 in expenses associated with the motions to compel.

/ / /

/ / /

/ / /

/ / /

### III.

### CONCLUSION AND ORDER

Based upon the foregoing, it is HEREBY ORDERED that:

1.     Plaintiffs' motions to compel are GRANTED;

2.     Defendants shall provide further responses to Plaintiffs' interrogatories and requests for production of documents within twenty-one (21) days of the date of service of this order;

3.     Defendants shall pay Plaintiffs' $5,557.00 in expenses associated with Plaintiffs' motions to compel; and

4.     Defendants' motion to quash is DENIED.

IT IS SO ORDERED.

Dated:   **October 17, 2013**

_____
UNITED STATES MAGISTRATE JUDGE