1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HANFORD EXECUTIVE MANAGEMENT EMPLOYEE ASSOCIATION et al., | 1:11-cv-00828-AWI-SAB |
| Plaintiffs, | **ORDER RE: MOTIONS FOR SUMMARY JUDGMENT** |
| v. | (Docs. 85, 88, 114, 115) |
| CITY OF HANFORD et al., | |
| Defendants. | |
| _____/ | |

**I.**
**INTRODUCTION**

Plaintiffs Hanford Executive Management Employee et al. ("Plaintiffs") and defendants City of Hanford et al. ("Defendants") filed competing motions for partial summary judgment (i.e., summary adjudication) pursuant to Federal Rule of Civil Procedure 56. Defendants' filed a second motion for partial summary judgment on November 1, 2013.   For reasons discussed below, Plaintiffs' motion shall be DENIED; Defendants' first motion shall likewise be DENIED. Defendants' second motion shall be GRANTED.

## II.
## FACTS AND PROCEDURAL BACKGROUND

The Court refers the parties to previous order for a complete chronology of the proceedings.  On July 13, 2012, plaintiffs Hanford Executive Management Employee Association, Cathy Cain,[1] Louis Camara, George Thomas Dibble, Timothy Ieronimo, Mary Rose Lindsay, Carlos Mestas, and Scott Yeager (hereinafter collectively referred to as "Plaintiffs") filed their Second Amended Complaint (hereinafter referred to as "SAC") against defendants City of Hanford, Hilary Straus, Dan Chin, Sue Sorensen, Jim Irwin, Lou Martinez, and Joleen Jameson, (hereinafter collectively referred to as "Defendants") asserting causes of action for (1) "violation of 42 U.S.C. § 1983 – freedom of speech, association and collective activity;" (2) "violation of 42 U.S.C. § 1983 – substantive due process;" (3) "violation of 42 U.S.C. § 1983 – procedural due process;" (4) "violation of article I, § 2(A) and 3 of the California Constitution, Civil Code § 52.1;" (5) "violation of article I, § 7 and 19 of the California Constitution, Civil Code § 52.1;" (6) "violation of Public Safety Officers Procedural Bill of Rights Act – California Gov. Code § 3300, et seq.;" (7) "violation of Firefighters Procedural Bill of Rights Act – California Gov. Code § 3250, et seq.;" (8) injunctive relief; and (9) declaratory relief. *See SAC*. Plaintiffs alleged as follows:

> Plaintiff HANFORD EXECUTIVE MANAGEMENT EMPLOYEE ASSOCIATION ('EMEA') is the exclusive recognized employee organization representing the City of Hanford bargaining unit consisting of all seven (7) non-exempt executive management employees, pursuant to Government Code sections 3500, et seq.  EMEA brings this action on behalf of itself, and its members[.]

Plaintiffs further alleged:

---

[1] Cathy Cain died on June 12, 2012.  On August 3, 2012, the parties stipulated to the substitution of Cain's husband, John Cain, as a plaintiff and successor in interest to Cain.

2

The individual plaintiffs are current and former executive management employees of the City of Hanford ('CITY' or 'HANFORD').  After serving their probationary period, they each earned permanent employment status in their respective positions pursuant to the City's Personnel Rules and Regulations, including the Policy of Administration for Executive Management (hereinafter, 'Rules and Regulations') in effect at the time they were hired.  In the case of Cathy Cain, she gained permanent status in her prior position.  As permanent employees, the individual plaintiffs can be dismissed only for just cause, and only after a due process hearing . . . . The individual plaintiffs also have other vested property rights created by the Rules and Regulations, further described herein, in addition to permanent status[,] that survive legislative amendment.

Plaintiffs further alleged:

Plaintiff CATHY CAIN ('CAIN') was the City of Hanford ('CITY' or 'HANFORD') Interim Community Development Director until May 18, 2012, and a member of the EMEA.  CAIN was hired by Defendant City of Hanford on August 31, 1998, in the position of Assistant Planner and became a permanent employee of the CITY in that position on March 22, 1999.  She was promoted to Associate Planner on May 3, 2006 (the title of that position changed to Senior Planner during her tenure), a position she held until January 26, 2008.  On January 26, 2008, CAIN became the Interim Planning Manager, and became a permanent employee in the Planning Manager position on December 29, 2009.  She worked in that position until May 31, 2010, when she was appointed to her current position of Interim Community Development Director[.]

Plaintiffs further alleged:

On or about May 8, 2012, the CITY sent Cain a letter terminating her employment effective May 18, 2012.  Although the letter expressly stated that she was being terminated for cause, it stated that, as an at-will employee, she had no right to appeal the action.  Although she requested proper notice, a termination hearing, and the other due process protections to which she was entitled as a permanent employee under the Rules and Regulations, the CITY confirmed she would not be permitted any sort of hearing or due process rights.  CAIN was thus terminated without reasonable notice, without an opportunity to be heard, and without any semblance of due process.

Plaintiffs further alleged:

> Plaintiff LOUIS CAMARA ('CAMARA') is the City of Hanford Director of Public Works, and a member of the EMEA. CAMARA was hired by Defendant City of Hanford as an Assistant Civil Engineer on February 8, 1988, served a probationary period and became a permanent employee of the CITY in that position. Subsequently, he promoted to Associate Civil Engineer on July 10, 1989, served another probationary period, and became a permanent employee of the CITY in that position. On January 2, 1995, he was promoted to Assistant City Engineer, served another probationary period, after which he became a permanent employee of the CITY in that position. He worked in that position until July 7, 2003, when he was reclassified to Deputy Director, Public Works on July 7, 2003 for which there was no probationary period. On May 28, 2007, he was named the Acting Director of Public Works, and became the Director of Public Works on December 17, 2007. He passed his probationary period and became a permanent employee of the CITY in this position in June of 2008, a position he has continued to hold up to the present time.

Plaintiffs further alleged:

> Plaintiff GEORGE THOMAS DIBBLE ('DIBBLE') is the City of Hanford Finance Director, and a member of the EMEA. He was hired by Defendant City of Hanford on June 9, 1974 as Finance Director. His probationary period was completed on December 9, 1974, and he became a permanent employee of the CITY in that position, a position he has continued to hold up to the present time.

Plaintiffs further alleged:

> Plaintiff TIMOTHY IERONIMO ('IERONIMO') is the City of Hanford Fire Chief, and President of the EMEA. IERONIMO was hired by Defendant City of Hanford as a Firefighter on October 9, 1978, and became a permanent employee of the CITY in that position as of February 19, 1980. From that date until April 8, 1985 (with a one-month gap during which he was not employed by the City), IERONIMO was a Firefighter. On April 8, 1985, IERONIMO was promoted to Fire Engineer, and became a permanent employee of the CITY in that position as of April 8, 1986. On July 13, 1987, IERONIMO was promoted to Fire Captain, a position in which he became a permanent employee of the CITY on July 13, 1988. On August 12, 1996, IERONIMO promoted to Assistant Chief/Fire Marshal, and became a permanent employee of the CITY in that position on August 12,

4

1997.  Finally, on December 24, 2001, he was promoted to Fire Chief, and he became a permanent employee of the CITY in that position on December 24, 2002, a position that he has continued to hold up to the present time.

Plaintiffs further alleged:

Plaintiff MARY ROSE LINDSAY ('LINDSAY') was the City of Hanford Deputy City Manager until May 24, 2012, and a member of the EMEA.  LINDSAY was hired by Defendant City of Hanford on August 10, 1987 as a Personnel Technician.  She became a permanent employee of the CITY in that position on February 22, 1988.  She was reclassified to Personnel Analyst on January 8, 1990 and became a permanent employee of the CITY in that position on January 8, 1991.  On September 2, 1991, she was reclassified to Senior Administrative Analyst, and became a permanent employee of the CITY in that position on September 2, 1992.  She was reclassified to Assistant to the City Manager on January 1, 1996 and became a permanent employee of the CITY in that position on July 1, 1996.  As of July 7, 2003, she has been a permanent employee of the CITY in the classification of Deputy City Manager, a position she has continued to hold up to the present time.

Plaintiffs further alleged:

On or about May 24, 2012, the CITY terminated LINDSAY.  The CITY asserted that because LINDSAY was an 'at will' employee, the CITY was exercising 'its option' to terminate her employment.  LINDSAY requested proper notice, a termination hearing, and the other due process protections to which she was entitled as a permanent employee under the Rules and Regulations.  LINDSAY was told by the CITY she was being fired without cause and that she was not entitled to a hearing because it was the CITY's position she was an at-will employee.  LINDSAY was thus terminated without reasonable notice, without an opportunity to be heard, and without any semblance of due process.

Plaintiffs further alleged:

Plaintiff CARLOS MESTAS ('MESTAS') is the City of Hanford Police Chief, and Vice President of the EMEA.  MESTAS was hired as the Police Chief on September 22, 2003 and became a permanent employee of the CITY in that position after passing his probation on September 22, 2004.  He has continued to hold that position up to the present time.

Plaintiffs further alleged:

> Until October 4, 2011, Plaintiff SCOTT YEAGER ('YEAGER') was the City of Hanford Recreation Director, and a member of the EMEA.  He was hired by the City into this position on June 4, 2007, and passed probation on November 30, 2007, thus becoming a permanent employee of the CITY in that position.  He continued to hold that position up until October 4, 2011.

Plaintiffs further alleged:

> Defendant CITY OF HANFORD ('HANFORD' or 'CITY') is, and at all times pertinent hereto was, the employer of all employees in the executive management bargaining unit represented by the EMEA, including the individual Plaintiffs.

Plaintiffs further alleged:

> Defendant HILARY STRAUS ('STRAUS') was the City Manager of HANFORD when the actions described herein took place.  STRAUS was hired by the CITY on December 1, 2008 as Deputy City Manager and became the City Manager in May of 2010.  STRAUS resigned subsequent to the filing of the initial Complaint in this matter.  STRAUS is sued herein in both his official and personal capacities.  All allegations made against STRAUS[ ] involve his service as City Manager of Hanford.

Plaintiffs further alleged:

> Defendant DAN CHIN ('CHIN') was the Mayor of HANFORD when the actions described herein took place.  He is currently a member of the City Council of HANFORD.  CHIN resigned as Mayor subsequent to the filing of the initial Complaint in this matter.  CHIN is sued herein in both his official and personal capacities.  All allegations made against CHIN involve his service as Mayor and as a member of the City Council of Hanford ('City Council').

Plaintiffs further alleged:

> Defendant SUE SORENSEN ('SORENSEN') was the Vice-Mayor of HANFORD and a member of the City Council when the actions described herein took place.  She is currently the Mayor of HANFORD.  SORENSEN is sued herein in both her official and personal capacities.  All allegations made against SORENSEN

6

involve her service as Vice-Mayor, Mayor and as a member of the City Council.

Plaintiffs further alleged:

Defendant JIM IRWIN ('IRWIN') is a member of the City Council. IRWIN is sued herein in both his official and personal capacities. All allegations made against IRWIN involve his service as a member of the City Council.

Plaintiffs further alleged:

Defendant LOU MARTINEZ ('MARTINEZ') is a member of the City Council. MARTINEZ is sued herein in both his official and personal capacities. All allegations made against MARTINEZ involve his service as a member of the City Council.

Plaintiffs further alleged:

Defendant JOLEEN JAMESON ('JAMESON') is a member of the City Council. JAMESON is sued herein in both her official and personal capacities. All allegations made against JAMESON involve her service as a member of the City Council.

Plaintiffs further alleged:

On or about November 16, 2010, six of the seven individual Plaintiffs in this matter (CAMARA, DIBBLE, IERONIMO, LINDSAY, MESTAS and YEAGER) signed a memorandum directed to the Hanford City Council and incoming City Council members, entitled, 'Vote of No Confidence – City Manager Hilary Straus.' The three page document set forth the reasons why each of the signatories had no confidence in the ability of STRAUS to properly perform the duties of Hanford City Manager. Some of these stated reasons included allegations of dishonest, unethical and potentially illegal conduct, hiding information from management and the public, improperly awarding contracts to STRAUS' friends, potential Brown Act violations, and other unprofessional conduct.

A copy of the "Vote of No Confidence" memorandum described above was attached to the first amended complaint as Exhibit 1 and incorporated by reference in the second amended complaint. Plaintiffs further alleged:

7

On or about March 11, 2011, all seven of the individuals named as Plaintiffs in this matter signed and submitted a Petition for Recognition and Certification petitioning the Hanford City Council for formal recognition of EMEA as the bargaining unit for the individual Plaintiffs.  As executive management employees, the terms and conditions of their employment with the City of Hanford are governed by the City's Rules and Regulations in effect at the time they were hired.

A copy of the "Rules and Regulations" described above was attached to the first amended complaint as Exhibit 2 and incorporated by reference in the second amended complaint.

Plaintiffs further alleged:

The Rules and Regulations expressly and by operation of law give the individual plaintiffs certain vested property rights protected under California law, including the following: [¶] a. Status as a permanent employee who could only be terminated and/or disciplined for 'just cause' after completion of a probationary period; [¶] b. 'Bumping Rights': the right to return to a previously held position and reemployment rights in the event of a layoff; [¶] c. Appeal rights for discipline; and [¶] d. Progression through salary steps and a non-discretionary right to automatic step increases for 'average' performance.

Plaintiffs further alleged:

Plaintiffs were induced to accept jobs with the CITY in partial reliance on the fact that they knew they would be permanent employees once they passed their probation.  Having all passed their probationary periods the Plaintiffs then enjoyed the benefits of permanent employment, including the knowledge that they could not be divested of their permanent status or employment without due process, and would be entitled to bump to lower positions in the event of layoffs.

Plaintiffs further alleged:

On or about March 10, 2011, STRAUS, on behalf of each and every one of the Defendants, first met with EMEA representatives to inform Plaintiffs of proposed changes to the existing Rules and Regulations.  Those changes were to be presented to the Hanford City Council for ratification on March 15, 2011.  At that meeting, STRAUS refused to provide the EMEA representatives with the PowerPoint presentation that was shown to the City Council.  [¶]

8

1   Plaintiffs thus discovered for the first time on March 10, 2011 that
2   STRAUS had submitted an agenda item to the City Council to
    amend the Rules and Regulations to make substantial changes to
3   the Policy of Administration for Executive Management
    Employees.
4
    Plaintiffs further alleged:
5
6   The proposed changes included: [¶] a. Converting Executive
    Management Employees from permanent employees with property
7   rights in their employment to at-will employees; [¶] Revising the
    Seniority, Layoff and Bumping provisions to strip Executive
8   Management Employees of the right to return to previously held
    positions and reemployment rights in the event of a layoff; [¶] c.
9   Stripping disciplinary appeal rights from Executive Management
10  Employees; [¶] d. Changing the process by which Executive
    Management Employees progress through salary steps and creating
11  a right to deny what were previously automatic step increases on
    the grounds of 'average' performance; and [¶] e. Increasing
12  Executive Management Employees' contributions toward
    retirement, and decreasing Hanford's contributions toward
13  retirement for Executive Management Employees, including the
14  individual Plaintiffs herein, which also had the impact of
    decreasing their salaries for purposes of retirement benefit
15  calculations.   [¶] The changes outlined the paragraph above
    differed substantially from the Rules and Regulations then in
16  existence which apply to the individual plaintiffs.

17  A copy of the March 15, 2011 memorandum to the City Council proposing changes to the
18
    Rules and Regulations was attached to the first amended complaint as Exhibit 3 and incorporated
19
    by reference in the second amended complaint.  Plaintiffs further alleged:
20
21  Attached hereto as Exhibit 4, and incorporated herein by this
    reference is a true and accurate copy of the City of Hanford
22  Management Pay Plan applicable to the individual plaintiffs.
    Among other changes, the City revised the pay plan so that step
23  increases could be denied for 'average' performance, whereas
24  previously step increases could not be so denied.

25  Plaintiffs further alleged:

26  On March 15, 2011, prior to the Hanford City Council meeting, the
    EMEA wrote to the City Council regarding the City's arbitrary and
27  unlawful stripping of the individual plaintiffs' vested property
28

9

> rights.   The letter warned the City Council that passing the
> proposal by City Manager STRAUS could expose the CITY OF
> HANFORD to liability and could also expose the individual City
> Council members and City Manager STRAUS to personal liability.

A copy of the EMEA's March 15, 2011 letter to the City Council was attached to the first

amended complaint as exhibit 5 and incorporated by reference in the second amended complaint.

Plaintiffs further alleged:

> On the evening of March 15, 2011, the HANFORD City Council
> met to consider the proposal by City Manager STRAUS.
> Numerous individuals, including EMEA's counsel, spoke against
> the proposal, and highlighted the arbitrary and unlawful nature of
> many of the components of the proposal.

Plaintiffs further alleged:

> At no time before, during or after the meeting on the evening of
> March 15, 2011 were Plaintiffs given full documentation, as
> required under the Rules and Regulations, regarding the basis for
> the actions outlined above, including the stripping of plaintiffs'
> vested rights.  [¶] At no time before, during or after the meeting on
> the evening of March 15, 2011 were Plaintiffs given any
> explanation, as required under the Rules and Regulations,
> regarding Defendants' 'just cause' for the actions outlined above,
> including the stripping of plaintiffs' vested rights.

Plaintiffs further alleged:

> At no time before, during or after the meeting on the evening of
> March 15, 2011, were Plaintiffs permitted to call sworn witnesses
> on their behalf, as required under the Rules and Regulations, to
> defend against the actions described above, including the stripping
> of plaintiffs' vested rights.  [¶] At no time before, during or after
> the meeting on the evening of March 15, 2011, were Plaintiffs
> provided with any justification, as required under the Rules and
> Regulations, for the actions described above, including the
> stripping of plaintiffs' vested rights.

Plaintiffs further alleged:

> In spite of being aware of the unlawfulness of STRAUS' proposal,
> and refusing to provide any due process to Plaintiffs, each and
> every City Council member voted to accept the changes and

10

> adopted the Amended Rules and Regulations on March 15, 2011.
> [¶] Although the Amended Rules and Regulations do not
> specifically state they apply to existing employees previously [ ]
> hired under the Rules and Regulations in place before March 15,
> 2011, Defendants have represented they apply to the individual
> Plaintiffs to strip them of their vested rights.

A copy of the minutes of the March 15, 2011 City Council meeting at which the Rules

and Regulations were allegedly amended was attached to the first amended complaint as exhibit

6 and incorporated in the second amended complaint by reference.  Plaintiffs further alleged:

> On March 22, 2011, the EMEA delivered a follow-up letter to the
> Hanford City Council, again advising it of the arbitrary and
> unlawful nature of the City Council's actions and highlighting the
> violations of U.S. and California Constitutions, 42 USC § 1983,
> the Meyer-Milias-Brown Act, the Public Safety Officers
> Procedural Bill of Rights Act, and the Firefighters Procedural Bill
> of Rights Act, and warned that if the actions were not immediately
> overturned, the EMEA and its members would file suit, seek
> damages, statutory penalties, and an award of attorneys' fees.  Like
> the March 15, 2011 letter before it, this March 22, 2011 letter also
> warned the City Council that its actions, if not rescinded, could
> expose the CITY OF HANFORD to liability and could also expose
> the individual City Council members and City Manager STRAUS
> to personal liability.

A copy of the EMEA's March 22, 2011 letter of the City Council was attached to the first

amended complaint as exhibit 7 and incorporated by reference in the second amended complaint.

Plaintiffs further alleged:

> On March 25, 2011, the Hanford City Attorney responded by
> stating that the City Council would not rescind its actions.  [¶] On
> March 30, 2011, the EMEA filed a Government Claim Form with
> HANFORD.  An Amended Government Claim Form was filed
> with HANFORD on April 13, 2011.  The City rejected the claim
> on May 24, 2011.

Plaintiffs further alleged:

> On or about May 18, 2012, the CITY terminated CAIN without
> providing her the due process protections she was entitled to as a
> permanent employee under the Rules and Regulations.  [¶] On or

about May 24, 2012, the CITY terminated LINDSAY without a statement of cause and without providing her the due process protections she was entitled to as a permanent employee under the Rules and Regulations.

On April 10, 2013, Plaintiffs filed their motion for partial summary judgment as to their Third, Sixth, and Seventh Causes of Action.  Defendants filed their opposition to Plaintiffs' motion on May 6, 2013.  On May 6, 2013, Defendants also filed their motion for partial summary judgment as to the same Causes of Action.  Plaintiffs filed their opposition to Defendants' motion for partial summary judgment on May 13, 2013.  The Court then took the matters under submission. On the final day for filing dispositive motions, November 1, 2013, Defendants filed their second motion for partial summary judgment as to Plaintiffs' Second Cause of Action – "Violation of 42 U.S.C. § 1983 – Substantive Due Process". Plaintiffs filed their opposition to Defendants' motion for partial summary judgment on December 2, 2013. Defendants filed their reply to Plaintiffs' opposition on December 9, 2013. The Court then took the matters under submission.

The court now addresses all three motions.


**III.**
**LEGAL STANDARD**

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *see* Fed. R. Civ. P. 56(c)(1)(A). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex, supra,* 477 U.S. at p. 325). If the moving party meets its initial burden, the burden shifts to the non-moving party to present evidence establishing the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e., it affects the outcome of the claim under the governing law, *see Anderson,* 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir.1987). In order to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita, supra,* 475 U.S. at p. 587 (citation omitted).

A court ruling on a motion for summary judgment must construe all facts and inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987).

**IV.**
**DISCUSSION**

*A. Plaintiffs' Third Cause of Action ("Violation of 42 U.S.C. § 1983 – Procedural Due Process")*

The parties first move, separately, for summary adjudication of Plaintiffs' Third Cause of Action for "[v]iolation of 42 U.S.C. § 1983 – [p]rocedural [d]ue [p]rocess." *SAC ¶¶* 68-83.  As to this cause of action, Plaintiffs contend summary adjudication should be granted in Plaintiffs' favor because "the actions of [ ] Defendants in divesting Plaintiffs of property rights were done without affording [ ] Plaintiffs their procedural due process." Doc. 85-4 at p. 13. Defendants, on the other hand, contend summary adjudication should be granted in Defendants' favor because "Plaintiffs have not identified an entitlement to trigger due process protections," and that, "[e]ven assuming an entitlement, the legislative process provided the necessary procedure to satisfy due process requirements."  Doc. 86 at p. 7.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property [without due process of law]; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."  U.S. Const. Amend. XIV; *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005).  Accordingly, "[t]o establish a violation of procedural due process[,] a plaintiff must demonstrate: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Tutor-Saliba Corp. v. City of Hailey,* 452 F.3d 1055, 1061 (9th Cir. 2006) (citing *Brewster v. Board of Educ. of Lynwood Unified School Dist.,* 149 F.3d 971, 982 (9th Cir. 1998)); *accord Guatay Christian Fellowship v. County of San Diego,* 670 F.3d 957, 983 (9th Cir. 2011)).  "[A] deprivation of procedural due process is an independent constitutional tort, actionable under [42 U.S.C.] § 1983 with or without proof of actual injury."  *Burt v. Abel,* 585 F.2d 613, 616 (4th Cir.

14

1978) (citing *Carey v. Piphus,* 435 U.S. 247, 266-67 (1978)).  With these principles in mind, the

Court now proceeds to address the parties' contentions.


*1. Did Plaintiffs have any constitutionally protected property interests entitling them to*

*procedural due process protections?*

"The threshold question is whether [Plaintiffs] [have] a constitutionally protectable

property interest[.]"  *Foss v. National Marine Fisheries Service,* 161 F.3d 584, 588 (9th Cir.

1988).  " 'In order to possess a property interest in a benefit, an individual must have more than

'an abstract need or desire for it' or a 'unilateral expectation of it.'  Rather, he must possess 'a

legitimate claim of entitlement to it.'  [Citation.]"  *Brewster, supra,* 149 F.3d at p. 982.  "In

*Board of Regents v. Roth,* 408 U.S. 564 (1972), the Supreme Court explained the source and

nature of constitutionally cognizable property interests: [¶][']Property interests . . . are not

created by the Constitution.  [ ] [T]hey are created and their dimensions are defined by existing

rules or understandings that stem from an independent source such as state law – rules or

understandings that secure certain benefits and that support claims of entitlement to those

benefits.[']"  *Brewster, supra,* 149 F.3d at p. 982.  Plaintiffs now contend each of the individual

plaintiffs had constitutionally protected property interests entitling them to procedural due

process protections in, at the very least, the continued permanent employment status and

bumping rights granted to them under the City of Hanford's Rules and Regulations.  Defendants,

conversely, contend Plaintiffs have failed to identify anything more than a unilateral expectation

to the terms and conditions of their employment.

In order for the court to recognize a vested property interest "a [plaintiff] must

demonstrate a promise or guarantee of a specific benefit or right in [an] entity's policies or state

law." *Chan v. Judicial Council of California,* 199 Cal.App.4th 194, 200 (2011) (citing *Roth, supra,* 408 U.S. at pp. 571-72).  However, "[d]eprivation of a benefit to which one is entitled under a statute or a contract does not automatically give rise to a property interest protected by the Due Process Clause.  'It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state [actor] into a federal claim.'  [Citation].  '[T]he Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts.'  [Citations.]  Thus, although the determination of what is property is made by reference to state law, a court must look to federal constitutional law to determine whether the interest is of the kind protected by the Fourteenth Amendment."  *Portman v. Cty. of Santa Clara,* 995 F.2d 898, 905 (9th Cir. 1993).

Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court finds sufficient evidence in the record to determine that there is no genuine dispute of material fact as to whether Plaintiffs had recognizable property interests under the City of Hanford's Rules and Regulations. Plaintiffs were entitled to protection by the Due Process Clause of the Fourteenth Amendment.

The evidence shows on November 24, 1969, the Hanford City Council passed Ordinance No. 754, which amended Chapter 3, Title 2 of the Hanford Municipal Code so as to create a two-tiered system of municipal employment consisting of (1) a merit personnel system and (2) a position classification plan.  Section 2-3.02 of the Hanford Municipal Code, entitled "Merit System Application and Exceptions," was thereby amended to read, "The provisions of the Merit System established by this ordinance and accompanying Rules and Regulations shall apply to all positions and employments in the municipal service including the Librarian, Secretary, and other employees of the Hanford City Library," with several exceptions not relevant here.  Section 2-

16

3.04 of the Hanford Municipal Code, entitled "Classification Plan," was also amended by Ordinance No. 754. It read, in pertinent part: "All positions of the municipal service shall be classified within a position classification plan, which shall be maintained and operated by the City Manager."

Implementation of the merit personnel system and position classification plan occurred through Ordinance 754's adoption of the City of Hanford Merit System Rules and Regulations (hereinafter, simply "Rules and Regulations"), which, by its terms, applied to all city employees. Section 105 of the Rules and Regulations, entitled "EMPLOYMENT CONSTITUTES ACCEPTANCE OF RULES," provided:

> In accepting employment with the City of Hanford, each employee agrees to be governed by and to comply with the Merit System Rules and Regulations, administrative rules and procedures established by the City Manager pursuant thereto and rules, regulations and directives of the department in which he/she is employed.  [¶] All employees holding a position in the municipal service on the effective date of these Rules and Regulations shall thereafter be subject in all respects to the provisions herein.

The Rules and Regulations explained how the merit personnel system and position classification plan worked.  Under the position classification plan, city employees were appointed to fill positions in one of three classifications upon initial hire: management, mid-management, or confidential.  Of relevance here is the management classification, which included the following positions: City Manager; Assistant to the City Manager; Airport Manager; Building Official; Director of Public Works/City Engineer; Finance Director; Fire Chief; Planning Director; Police Chief; Recreation Director; and City Attorney.  Aside from classification, employees were also assigned different levels of "tenure" (or lack thereof) under the merit personnel system.  Chapter 3, Section 307 of the Rules and Regulations, entitled "CATEGORIES OF APPOINTMENT," established three categories of tenured and untenured

17

employment in the Hanford municipal service: (a) part-time employees; (b) probationary employees; and (c) regular employees.  Of relevance here are the probationary and regular employee categories, which applied to all full-time employees in the municipal service. Probationary employees were defined by Section 307 to mean "those who, through the regular examining process, have been appointed to an authorized position in the Employee Compensation Plan, having a monthly salary, but who have not completed the probationary period provided in Chapter 9 of these Rules and Regulations."  Chapter 9, Sections 901 and 902 of the Rules and Regulations described the probationary period as follows:

> "All original appointments to regular municipal service positions shall be tentative and subject to a probationary period fixed by the Department Head at the time of appointment of not less than six (6) months nor more than twelve (12) months . . . .
>
> The probationary period shall be regarded as a part of the testing process and shall be utilized for closely observing the employee's work, for securing the most effective adjustment of a new employee to his/her position, and for rejecting any probationary employee whose performance does not meet the acceptable standards of work."

That is, full-time employees must have served a minimum six-month probationary period.  If an employee passed his or her probationary period, he or she achieved regular status under the merit personnel system: according to Section 307 of the Rules and Regulations, "[r]egular employees are those who have been appointed to an authorized position in the Employee Compensation Plan, having a monthly salary and who have successfully completed their probationary period and have been retained as hereafter provided in Chapter 9 of these Rules and Regulations."

Each of the individual plaintiffs have submitted declarations with their motion showing they were either appointed or promoted to management classification positions and had passed their probationary periods, making them regular employees under the merit personnel system:

- In a declaration executed on June 10, 2011, **Cathy Cain** testified: "I was hired by Defendant City of Hanford on August 31, 1998, in the position of Assistant Planner and became a permanent employee of the City in that position on March 22, 1999.   [¶]   I was promoted to Associate Planner on May 3, 2006 (the title of that position changed to Senior Planner during my tenure), a position I held until January 26, 2008.   [¶]   On January 26, 2008, I became the Interim Planning Manager, and became a permanent employee in the Planning Manager on December 29, 2009.   On May 31, 2010, I was appointed to my current position of Interim Community Development Director, a position I have continued to hold up to the present time."

- **Louis Camara** testifies: "I was hired by the City of Hanford as an Assistant Civil Engineer on February 8, 1988, served a probationary period and became a permanent employee of the City in that position. On July 10, 1989, I promoted to Associate Civil Engineer, served another probationary period, and became a permanent employee of the City in that position.   On January 2, 1995, I was promoted to Assistant City Engineer, served another probationary period, after which I became a permanent employee of the City in that position.   On July 7, 2003, I was reclassified to Deputy Director, Public Works, for which there was no probationary period.   On May 28, 2007, I was named the Acting Director of Public Works, and became the Director of Public Works on December 17, 2007.   I passed my probationary period and became a permanent employee of the City in this position in June of 2008, a position I have continued to hold up to the present time."

- **George Dibble** testifies: "I was hired by Defendant City of Hanford ('Hanford' or 'City') on June 9, 1974 as Finance Director/Treasurer. My probationary period was completed on December 9, 1974, and I became a permanent employee of the City in that position, a position I have continued to hold up to the present time."

- **Carlos Mestas** testifies: "I was hired as the Police Chief on September 22, 2003 and became a permanent employee of the City in that position after passing my probation on September 22, 2004.   I have continued to hold that position up to the present time."

- **Timothy Ieronimo** testifies: "I was hired by the City of Hanford ('Hanford' or 'City') as a Firefighter on October 9, 1978, and became a permanent employee of the City in that position as of February 19, 1980.   From that date until April 8, 1985 (with a one-month gap during which I was not employed by the City), I was a Firefighter.   On April 8, 1985, I was promoted to Fire Engineer, and became a permanent employee of the City in that position as of April 8, 1986.   On July 13, 1987, I was promoted to Fire Captain, a position in which I became a

permanent employee of the City on July 13, 1988.  On August 12, 1996, I was promoted to Assistant Chief/Fire Marshal, and became a permanent employee of the City in that position on August 12, 1997.  On December 24, 2001, I was promoted to Fire Chief, and became a permanent employee of the City in that position on December 24, 2002, a position that I have continued to hold up to the present time."

- **Mary Rose Lindsay** testifies: "I was hired by the City on August 10, 1987 as a Personnel Technician, and became a permanent employee of the City in that position on February 22, 1988.  I was reclassified to Personnel Analyst on January 8, 1990.  On September 2, 1991, I was reclassified to Senior Administrative Analyst.  I was reclassified to Assistant to the City Manager on January 1, 1996 and became a permanent employee of the City in that position on July 1, 1996.  From July 7, 2003 to my termination on May 25, 2012, I was a permanent employee of the City in the classification of Deputy City Manager."

- **Scott Yeager** testifies: "I was hired by the City of Hanford as Recreation Director on June 4, 2007.  I completed by probationary period on November 30, 2007, and became a permanent employee of the City in that position.  I continued to hold the position of Hanford Recreation Director up to October 4, 2011, when I resigned."

Furthermore, in the joint statement of undisputed facts the parties stipulate that Plaintiffs Cain, Camara, Dibble, Ieronimo, Lindsay, Mestas, and Yeager were all regular "executive management employees as of March 15, 2011." Collectively, these declarations and the joint statement of undisputed fact would be such that no reasonable trier of fact could conclude that at the time of the March 15, 2011 City Council meeting pursuant to which the Rules and Regulations were allegedly amended to divest Plaintiff of their property rights without due process, Plaintiffs had not already achieved classified, regular (i.e., permanent or full-status) employment under the merit personnel system in their positions as management employees.

Such a finding would necessarily imply Plaintiffs were vested with a constitutionally protected property right entitling them to due process.  "A government employee has a constitutionally protected property interest in continued employment when the employee has a legitimate claim of entitlement to the job." *Portman, supra,* 995 F.2d 898, 904 (9th Cir. 1993)

(citing *Roth, supra,* 408 U.S. at 577), and under the California statutory scheme governing civil service employment, "[t]he interest of a permanent or tenured civil servant in the continuation of his or her employment is a vested property interest qualifying for protection under the Constitution's due process guarantee." *Coleman v. Department of Personnel Administration,* 52 Cal.3d 1102, 1109, 805 P.2d 300 (1991) (quoting *Skelly v. State Personnel Bd.,* 15 Cal.3d 194, 206, 124 Cal.Rptr. 14, 539 P.2d 774 (1975)).  "This interest in continued employment embraces not simply the employment itself, but also the employee's current classification." *Hanford Exec. Mgmt. Employee Ass'n v. City of Hanford,* slip copy, 2012 WL 2159398 at *10 (E.D.Cal. 2012) (*Hanford III*) (citing *Ng v. Cal. State Personnel Bd.,* 68 Cal.App.3d 600, 606, 137 Cal.Rptr. 387 (1977)).

Here, California's statutory scheme provides civil service employees like Plaintiffs a legitimate right to continued regular employment in their respective classifications once vested. Ordinance 754 – more specifically, the Rules and Regulations which it adopted – provided the mechanism by which such right could vest in Plaintiffs.  Again, under the Rules and Regulations, a full-time Hanford employee who was appointed to a classified position and passed his or her probationary period achieved regular status in the position he or she held at the time.  The evidence shows Plaintiffs were either hired into or promoted to (and thereafter retained in) classified (management) positions, and that, as of March 15, 2011, Plaintiffs had passed their probationary periods.  Therefore, as of March 15, 2011, Plaintiffs had achieved regular status under the merit personnel system as management employees and, as a result, had acquired an interest in continued regular employment as management employees.  Because Plaintiff fulfilled the requirements of the Rules and Regulations, that interest was no longer a "unilateral

expectation," as Defendants contend, but a vested property right.  Accordingly, Defendants could not alter or deprive Plaintiffs of such interest without complying with due process requirements.

*2. Did the March 15, 2011 amendments to the Rules and Regulations implicate a constitutionally protected property interest, and if so, did Defendants comply with procedural due process requirements?*

*a. Property Interest Implicated*

Having concluded a reasonable trier of fact would find that Plaintiffs had a vested constitutionally protected property interest in continued employment as regular employees in management classifications under the merit personnel system, thereby entitling them to procedural due process protections, the Court now turns to the March 15, 2011 actions of the Hanford City Council.  In particular, the Court seeks to determine if a genuine issue of material fact exists as to whether Defendants altered or deprived Plaintiffs of this (or any other constitutionally protected property) interest without due process in amending the Rules and Regulations pursuant to the March 15, 2011 City Council meeting.  Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court first finds the March 15, 2011 actions of the City Council implicated constitutionally protected interests.

Pre-amendment, the Rules and Regulations established three broad categories of employment (part-time, probationary, and regular, as noted above), with the tenure of an employee appearing to have been derived solely from the distinctions among these different categories.[2]  Of note, Sections 904 and 404 of the Rules and Regulations provided, respectively, that "[d]uring the probationary period an employee may be suspended, demoted or terminated at

---

[2] "Subject," under Section 104 of the Rules and Regulations, "to good behavior, satisfactory work performance, necessity for the performance of the work and the availability of funds."

any time by the Department Head without cause and without the right of appeal or to submit a grievance," and "may be terminated by the Personnel Officer at any time, with or without notice, for cause or for the convenience of the City." However, once an employee passed the probationary period and acquired regular status, as the evidence suggests Plaintiffs did, he or she would have been entitled to a higher level of protection than mere probationary employees.

"Regular employees terminated by the Personnel Officer for cause or for the convenience of the City, shall be given a written statement of the reasons for such termination and may appeal such action in the manner provided in Chapter 10. Such cause shall be other than cause for disciplinary action[.]" (Section 404.) With regard to disciplinary action, "[a]ny regular employee shall have the right to respond, either orally or in writing, to the authority imposing disciplinary action and have the response considered prior to the discipline being imposed" (section 1003), and "[a]ny regular employee shall have the right of appeal from any disciplinary action by his/her Department Head or the City Manager under [Section] 1003." (Section 1004.) In addition, a classified regular-status employee could not have been separated from the municipal service simply because of a lay-off. Under Section 403(D) of the Rules and Regulations, an employee "scheduled to be laid off may voluntarily demote to a lower class when the lower class has similar duties, responsibilities, and requirements as designated by the Personnel Officer, providing the total seniority exceeds the total seniority of the employee in the lower class. Employees may also demote to any previously held position wherein their performance has been judged to be satisfactory, so long as their seniority exceeds that of the person occupying that position." Once vested, this right to voluntarily demote to a lower position in lieu of a lay-off – otherwise known as a "bumping right" – is a property interest protected by due process. *See Hanford III, supra,* 2012 WL 2159398 at *11-*12 (citing

*Alexander v. City of Menlo Park,* 787 F.2d 1371 (9th Cir. 1986) and *Gabe v. Clark County,* 701 F.2d 102 (9th Cir. 1983)).

Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court further finds the March 15, 2011 amendments to the Rules and Regulations implicated the foregoing interests.  The amendments at issue refer to the Hanford City Council's adoption of a new "Policy of Administration for Executive Management Employees," which strips Plaintiffs of their rights to "for cause" employment and "bumping rights."

*b. Process Due*

Having established that Plaintiffs had a vested property interest in continued regular employment as management employees and that the March 15, 2011 amendments to the Rules and Regulations implicated those property rights, the Court now addresses what process was due and whether that process was given. In order to determine what process was due, this Court must address the threshold question of whether the Defendants' action was legislative or adjudicative. *Hanford III, supra,* 2012 WL 2159398 at * 7 (citing *Beck Development Co. v. Southern Pacific Transportation Co.,* 44 Cal.App.4th 1160, 1188 (1996)) ("In considering the applicability of due process principles, [courts] must distinguish between actions that are legislative in character and actions that are adjudicatory."). "Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." *Samson v. City of Bainbridge Island,* 683 F.3d 1051, 1060 (9th Cir. 2012) (quoting *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 19 (1978)).  "However, '[w]hen the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law.'" *Id.* (quoting *Halverson v. Skagit County,* 42 F.3d 1257, 1260 (9th Cir. 1994)); *accord Hanford III, supra,* 2012 WL 2159398 at

24

*13; (citing *Gallo v. U.S. District Court for the District of Arizona,* 349 F.3d 1169, 1181 (9th Cir. 2003) ("When the [government] action is purely legislative, the statute satisfies due process if the enacting body provides public notice and open hearings.")). There is no constitutional requirement for any hearing in a quasi-legislative proceeding. *Franchise Tax Board v. Superior Court in and for Sacramento County*, 36 Cal.2d 538, 549 (1950); see also *Bi-Metallic Co. v. Colorado*, 239 U.S. 441, 445 (1915) ("Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption.")

Generally, adjudicatory matters are characterized by "the government's action affecting an individual [by determining] facts peculiar to the individual case," whereas legislative matters "involve[] the adoption of a broad, generally applicable, legislative rule." *San Diego Bldg. Contractors Assn. v. City Council*, 13 Cal.3d 205, 212 (1974). "The test for 'legislative' and 'adjudicatory' acts described by [the court] in *San Diego* [*Bldg. Contractors Assn. v. City Council*, 13 Cal.3d 205,] does not exclude from the latter category decisions of local governing bodies." *Horn v. County of Ventura*, 24 Cal.3d 605, 614 (1979).

As both parties agree, the determination of whether the action taken by the City Council was legislative or adjudicative is determined by the three considerations articulated in *Horn*: "(1) whether the government action applies to specific individuals or to unnamed and unspecified persons; (2) whether the promulgating agency considers general facts or adjudicates a particular set of disputed facts; and (3) whether the action determines policy issues or resolves specific disputes between particular parties."  *Hanford III, supra,* 2012 WL 2159398 at * 9 (citing *Gallo, supra,* 349 F.3d at p. 1182); *Horn v. County of Ventura, supra*, 24 Cal.3d 605, 613. In Plaintiffs' motion they apply the *Horn* factors to conclude that the hearing was adjudicative in nature.

Defendant applies the same factors in their motion and come to the conclusion that the hearing was legislative in nature.

The *Horn* case, in addition to providing the rule that applies to the current issue, is an analogous case. In *Horn* the planning department of Ventura County approved the division of a piece of property into four lots on the condition that the developer installs a sewer system. *Horn, supra,* 24 Cal.3d at p. 610. The Court concluded that the division of the property (and change of its use) constituted a deprivation of the property rights of adjacent parcel owners. *Id.* at p. 615. The planning department did not give the adjoining landowners notice or the opportunity to be heard prior to issuing its decision. *Id.*at p. 10. In making its decision, the planning department considered such suitability factors as "topography, density, public health, and access rights, [as well as whether] community land use plans" were granted. *Id.* at p. 615. The resolution of those issues "involve[d] the exercise of judgment, and careful balancing of conflicting interests, the hallmark of the adjudicative process." *Id.* Based on the foregoing, the *Horn* Court determined that "[s]ubdivision approvals … involve the application of general standards to specific parcels of real property. Such government conduct, affecting relatively few, is 'determined by facts particular to the individual case' and [is] 'adjudicatory' in nature." *Id.* at p. 614 (citing *Topanga Assn. for a Scenic Community v. County of Los Angeles*, 11 Cal.3d 506, 513-514 (1974)).

The Ninth Circuit in *Rea v. Matteucci,* 121 F.3d 483 (1997), faced a factual scenario similar to the one at bar. The plaintiff was employed as a hearing officer for the state of Nevada. Her position was classified as permanent and she could be terminated only for cause. On June 18, 1993, the Nevada legislature enacted a bill that removed the position of hearing officer from the "classified service" job designation, thereby eliminating her for-cause status. *Id.* at 484. The Ninth Circuit repeated the general rule that "[w]hen a state alters a state-conferred property right

through the legislative process, 'the legislative determination provides all the process that is due…'" *Id.* at p. 485 (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433 (1982). The court clarified, however, that if the legislation was either arbitrary or irrational, or that the legislative process was defective, that a plaintiff would have a triable issue of fact as to whether she had been denied due process. *Id.* The Ninth Circuit considered two non-binding cases where the plaintiffs submitted evidence that the legislation targeted them individually. *Id.*; *Conway v. Sorrell*, 894 F.Supp. 794 (D. Vt. 1995) (holding that there was a genuine dispute of material fact concerning whether a reclassification decision was a general policy change or whether it was an individual determination targeted at the four plaintiffs); *Darling v. Kansas Water Office*, 245 Kan. 45, 50 (1989) (holding that procedural due process requirements were not met where the law enacted was not generally applicable but instead for the loss of constitutionally protected property interest by seventeen known and identifiable individuals.) The *Rea* Court indicated that both cases were instructive as to the type of defect a legislative process must have before it can violate the affected persons' due process rights.

Accordingly, in order for Plaintiffs' procedural due process claim to be successful Plaintiffs would have to prove either that the action taken was adjudicative in nature or that there was a defect in the legislative process due to the targeting of the executive management employees.

In the instant case, a copy of the minutes from the March 15, 2011 city council meeting was attached to Plaintiff's FAC, incorporated by reference into the SAC, and submitted in support of Plaintiff's motion for summary judgment. This Court has reviewed the minutes from the city council meeting. From the minutes it appears that the meeting was regularly scheduled, the meeting was open to the public, and opportunity was given for any person interested to speak

27

on any item on the agenda. Mr. Messing, counsel for the Plaintiffs, addressed the council and voiced objection, on behalf of his clients, to the adoption of the new "Policy of Administration for Executive Management Employees." Mr. Messing made reference to the "Vote of No Confidence –City Manager Hilary Straus" memorandum directed at the City Council in November of 2010 by six of the seven Plaintiffs to this action. Mr. Messing voiced the position that the council adopting the new policy appeared to be retaliation for the specific executive management employees organizing and whistle blowing. Mr. Messing brought before the council the Plaintiffs' objections. Several other city employees, including President of the Police Officer's Association, two Police Captains, the Deputy Public Works Director, the Deputy Fire Chief, and a Utilities Supervisor, spoke to the council regarding the proposed policy. Some made reference to the individuals who occupied the executive management positions on that date whereas others simply voiced their objections to the policy to be implemented. Development Director Cathy Cain, Public Works Director Louis Camara, Finance Director George Dibble, Fire Chief Timothy Ieronimo, Deputy City Manager Mary Lindsay, Police Chief Carlos Mestas, and Recreation Director Scott Yeager (all seven executive management employees and plaintiffs to this action) were all present at the March 15, 2011 hearing in question.

The council then discussed the policy implications of the amendment including: how the amendment would impact the city financially (specifically considering the fact that there are only seven executive management employees), the impact of a shift to "at will" employment for the executive employees, and the impact upon efficiency of a merit based promotion system. City Manager Straus indicated that this amendment is the first step in a policy of top-down revisions with a goal of increasing organizational effectiveness and efficiency. Upon completion of the discussion between the council members, a vote was held unanimously approving the resolution

amending the City's Personnel Rules and Regulations to implement the new Policy of Administration for the executive management employees.

None of the above mentioned facts related to the city council hearing are subject to reasonable dispute.

All of the members of the Hanford City Council, as it existed on March 15, 2011, were deposed in connection with this litigation. All of the members of the council were aware on March 15, 2011, that adoption of the new policy for the administration of executive management employees would apply to the seven executive management employees (often referred to by council members as "department heads") then holding the positions, as well any person hired into an executive management position after the adoption of the policy. See, Dep. of James Irwin Jr. at p. 48; Dep. of Louis Martinez at p. 48; Dep. of Daniel Chin at pp. 65-66; Dec. of Julia Jameson at pp. 52-53, 58; Dep. of Susan Sorensen at p. 75. Despite their awareness of the identity of the executive management employees, none of the Council Members gave any indication that the policy change was intended to punish or voiced any disapproval or dislike toward any of the executive management employees in their depositions. Dep. of Daniel Chin at p. 136, 144. Rather, to the extent that they remembered or ever understood the distinction between "for cause" and "at will" employment, the Council Members indicated that their votes in favor of the policy change were based on their beliefs that the shift would encourage increased performance, efficiency, and accountability as well as their disapproval of merit-based employment and bumping rights in general. See, Dep. of Louis Martinez at pp. 62-64; Dep. of James Irwin, Jr. at p. 60-62; Dep. of Daniel Chin at pp. 116, 121, 131-132, 137; Dep. of Julia Jameson at p. 60-62.

Former Hanford City Manager Straus was also deposed in connection with this litigation. Mr. Straus was asked why he would propose to the council a shift in policy from "for cause" to "at will" employment for the executive management employees. Mr. Straus indicated that he proposed the policy to the council as a cost saving measure and because he saw the measure as a step toward "establishing a culture of performance and accountability." Dep. of Hilary Straus at pp. 168, 206. He further indicated that the timing of the policy change was in an effort to establish "a blueprint or road map for meeting and conferring with the middle managers" regarding their employment status. *Id.*

Plaintiffs submitted to this court a copy of a memorandum dated November 16, 2010 entitled "Vote of No Confidence – City Manager Hilary Straus" which was signed by six of the seven plaintiffs to this action and provided to the Hanford City Council. Generally, the memorandum detailed the Department Heads' concerns at Mr. Straus' competency, experience, ethics, and communication abilities. Although the memorandum was watermarked "Confidential," it ultimately made its way to publication in the Hanford Sentinel. Dep. of Hilary Straus at pp. 157-158. Plaintiffs allege that the drafting of the policy change by Mr. Straus was motivated in part by the Vote of No Confidence memorandum. *See* Doc. 116 at p. 14. Further, Plaintiffs submitted evidence to the effect that both Mr. Straus and Mayor and Council Member Daniel Chin had expressed a desire to have Deputy City Manager Mary Lindsay fired. Dep. of Gary Misenhimer at p. 87. Other than the fact that the Vote of No Confidence memorandum and statements by Mr. Straus and Mr. Chin preceded in time the enactment of the policy, Plaintiffs submit no evidence that the City Council or Mr. Straus considered anything other than policy objectives when drafting and enacting the policy.

Based on the foregoing, the facts required to apply the *Horn* factors are in dispute. It is clear from the legislative record and the depositions of Councilpersons that the government action was to apply to specific individuals who presently held the positions and unnamed and unspecified persons who may in the future hold the positions. Although the legislative record indicates what was discussed at the hearing enacting the policy, Plaintiffs allege that factors considered in drafting and enacting the policy in question were not discussed on the record. Rather, they assert, Mr. Straus and the Council made the decision to draft and enact the policy, respectively, based on a desire to punish the executive management employees for the vote of no confidence. Accordingly, whether general facts were accepted for purposes of making a policy decision or whether the Council resolved particular set of undisclosed dispute between the parties is a disputed fact.

A finding of whether there was a defect in the legislative process also requires a factual finding of what factors were considered in enacting the policy and whether the legislation was specifically directed at the executive employees. The facts necessary for resolution of that question are in dispute.

This court does not reach the question of whether Plaintiffs Cain and Lindsay were deprived of due process when they were terminated without notice and a hearing, as the issue requires a determination of what process was due informed by the unresolved former inquiry.

*c.  Adequacy of Process Given*

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v.*

*Burch*, 494 U.S. 113, 125 (1990). As discussed above, "[w]hen the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." *Halverson v. Skagit County*, 42 F.3d 1257, 1260 (9th Cir. 1994). Since this Court did not come to a conclusion as to whether the action of enacting the policy as to the Plaintiffs was legislative or adjudicative, summary judgment in Plaintiffs' favor could only be granted if the basic legislative procedure was not followed. Conversely, summary judgment could only be granted in favor of Defendants if the procedure required for an adjudicatory hearing was satisfied.

No evidence has been submitted to indicate that the City Council deviated from the standard legislative procedure. In fact, the deposition testimony and legislative record indicates that adequate notice was given in compliance with the procedures for the City of Hanford and members of the public were invited to discuss the specific resolution and any question within the jurisdiction of the Council. Accordingly, summary judgment cannot be granted in favor of Plaintiffs.

Alternatively, in order to satisfy the disciplinary hearing procedure created by the City of Hanford's Merit System Rules and Regulations at Chapter 10, notice of the cause for discipline, opportunity to respond prior to discipline, and right to appeal to a hearing officer jointly selected by the city and employee or representative must have been provided. Hanford Merit System Rules and Regulations Ch. 10, Sec. 501-505. There is no evidence before this Court that an appeal procedure was provided from the City Council's action with respect to the executive management employees. Accordingly, summary judgment cannot be granted in favor of Defendants.

Accordingly, both parties' motions for summary judgment as to Plaintiffs' Third Cause of Action shall be denied.

**B. Plaintiffs' Sixth and Seventh Causes of Action ("Violation of Public Safety Officers Procedural Bill of Rights Act – California Gov. Code § 330, Et. Seq." and "Violation of Firefighters Procedural Bill of Rights Act – California Gov. Code § 3250, Et. Seq.")**

Both Plaintiffs and Defendants move for summary judgment as to the Sixth and Seventh Causes of Action, brought on behalf of plaintiffs Mestas and Ieronimo, respectively, alleging violations of the Public Safety Officers Procedural Bill of Rights Act ("POBRA"), Cal. Gov. Code §§ 3300 et seq., and the Firefighters Procedural Bill of Rights Act ("FFBRA"), Cal. Gov. Code §§ 3250-3262. With few exceptions that are not applicable to this case, FFBRA mirrors and is substantially the same as POBRA. *Hanford III, supra*, 2012 WL 2159398 at * 15; *Hanford Executive Management Employee Ass'n v. City of Hanford*, slip copy, 2011 WL 5825691 at *14 (E.D. Cal 2011) (*Hanford I*).

Both parties' argument as to POBRA and FFBRA center around whether the shift from "for cause" to "at will" employment status constitutes "punitive action" under the respective statutes.  Government Code Sections 3251(c) and 3303 define "punitive action" as "any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment."   Sections 3304 and 3254 both preclude punitive action, unless based on merit, taken against a firefighter or a police officer, respectively, without the opportunity for an administrative appeal. Gov. Code §§ 3254, 3304.

However, POBRA "was not intended to interfere with a … city's right to regulate the causes for which [police officers] may be removed." *Brinkley v. City of Long Beach*, 16 Cal.App.4th 1795, 1806 (1993) (citing *Baggett v. Zelhart*, 32 Cal.3d 128, 138 (1982). Further,

Section 3304 specifies that "[n]othing in this subdivision shall be construed to create a property interest, where one does not exist by rule or law, in the job of Chief of Police." Gov. Code § 3304.

> The limited purpose of an administrative appeal under [S]ection 3304 is to give the peace officer subjected to punitive action an opportunity "to establish a formal record of the circumstance surrounding his termination" ([*Browning v. Block*, 175 Cal.App.3d 423, 430 (1978)]) and "to attempt to convince the employing agency to reverse its decision, either by demonstrating the falsity of charges which led to punitive action, or through proof of mitigating circumstances." (*Browning*,[175 Cal.App.3d at p. 430].)

*Brinkley v. City of Long Beach*, 16 Cal.App.4th at p. 1806. The determination of whether an action constitutes punitive action is made with reference to the content of the document or substance of the action. *Otto v. Los Angeles Unified School Dist.,* 89 Cal.App.4th 985, 987 (2001). "Apart from a transfer, the agency's motive in taking any of such actions is irrelevant. They are each per se punitive without regard to the agency's motivation." *Otto v. Los Angeles Unified School Dist.,* 89 Cal.App.4th at p. 996. Importantly, POBRA "does *not* require a showing that an adverse employment consequence has occurred or is likely to occur. It is sufficient if the [punitive action] 'may lead' to such consequences in the future." *Id*. at 997.

In *Riverside Sheriffs' Assn. v. County of Riverside*, the County terminated an officer because she was physically unable to satisfy the requirements of the job. *Riverside Sheriffs' Assn. v. County of Riverside,* 193 Cal.App.4th 20, 31 (2011). The letter notifying the officer of her termination explicitly stated that she was "not being terminated on 'disciplinary reasons.'" *Id.* at pp. 30-31. Regardless of the County's non-disciplinary intent, the California Court of Appeals found that "the County's action in depriving her of wages and other benefits of her employment constituted […] punitive action within the meaning of POBRA." *Id.* at p. 32.

The POBRA and FFBRA specify, as noted above, that they do not create property interests where one does not exist by law. Cal Gov. Code §§ 3254 (c), 3304(c). Accordingly, resolution of the disputed factual question of whether the policy enacted was a valid legislative exercise or an adjudication as to the individual Plaintiffs without due process is necessary to the resolution of this issue.  If the City Council's activity did, in fact, affect a valid legislative enactment then there was no violation of POBRA OR FFBRA.

Based on the foregoing, both parties' motions for summary judgment as to Plaintiffs' Sixth and Seventh Causes of Action shall be denied.

### C. Plaintiffs' Second Cause of Action ("Violation of 42 U.S.C. § 1983 – Substantive Due Process")

In their November 1, 2013, motion for partial summary judgment, Defendants' move for summary judgment as to Plaintiffs' Second Cause of Action, "[v]iolation of 42 U.S.C. § 1983 – [s]ubstantive [d]ue [p]rocess." *SAC* ¶¶ 51-67. Defendants' contend that the Hanford City Council had a legitimate public purpose in the March 15, 2011 amendment to the Rules and Regulations; thus, the action was not arbitrary or irrational. *See* Doc. 114 at p. 16.  Plaintiffs oppose this position.

As discussed in *Section IV. A*, *supra,* the Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend XIV. While on its face this constitutional provision speaks to the adequacy of state procedures, the Supreme Court has held that the clause also has a substantive component. *See, e.g., Planned Parenthood of S.E. Pennsylvania v. Casey,* 505 U.S. 833, 846–47 (1992) ("it is settled that the due process clause of the Fourteenth Amendment

applies to matters of substantive law as well as to matters of procedure") (quoting *Whitney v. California*, 274 U.S. 357, 373 (1927) (Brandeis, J., concurring)).

*1. Did Plaintiffs have a constitutionally protected right for purpose of substantive due process, if so, was it violated?*

This Court recalls Justice Brandeis' admonition in *Ashwander v. TVA,* 297 U.S. 288, 347 (1936) (concurring opinion) and echoed by the United States Supreme Court in *Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 222-223 (1985), to not "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied[.]" For purpose of substantive due process analysis, the court therefore assumes, without deciding, that Plaintiffs had a constitutionally protectable property right in their continued employment on March 15, 2011.

Assuming that such a right exists, it triggers only rational basis review because no suspect classification is alleged, nor is the assumed right fundamental, since it has not been expressly recognized by the Supreme Court nor is it "so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty, that they are protected by the Fourteenth Amendment." *U.S. v. Juvenile Male*, 670 F.3d 999, 1012 (9th Cir. 2012) (citing *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997)); *accord Palko v. Connecticut,* 302 U.S. 319, 325 (1937); *see Richardson v. City & County of Honolulu,* 124 F.3d 1150, 1162 (9th Cir.1997) (state action that neither utilizes suspect classifications nor implicates fundamental rights will violate substantive due process rights only where it is shown that the action is not "rationally related to a legitimate governmental purpose").

Accordingly, if Plaintiffs' assumed property interest gave rise to a substantive claim under the Due Process Clause to continued employment, it would only ensure that Plaintiffs

remain free of state action that has no legitimate governmental interest but is rather "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989) (citing *Village of Euclid v. Amber Realty Co.*, 272 U.S. 365, 395 (1926)); *accord Glucksberg, supra*, 521 U.S. at p. 722.

To the extent that Plaintiffs allege a substantive due process challenge based on unlawful executive, rather than legislative, action, the High Court has held that "only the most egregious executive action can be said to be 'arbitrary' in the constitutional sense, the cognizable level of executive abuse of power is that which shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998) (citations omitted). The facts of record disclose no such action.

This Court made clear to Plaintiffs when ruling on Defendants' motion to dismiss, "[o]n motion for summary judgment, Plaintiffs [] bear the heavy burden of demonstrat[ing] the irrational nature of [Defendants'] actions by showing that [Defendants] *could* have no legitimate reason for [their] decision. If it is at least fairly debatable that Defendants' conduct is rationally related to a legitimate governmental interest, there had been no violation of substantive due process." *Hanford III*, *supra*, 2012 WL 2159398 at *6, fn. 2 (internal quotes omitted) (citing *Halverson v. Skagit County*, supra 42 F.3d at 1262 (emphasis original)). Rather than attempt to prove that Defendants could have no legitimate reason for their decision, Plaintiffs' argument can be summed up by their allegation that, "Defendants have not shown that […] there were no less onerous ways of revision the policies so as to preserve the Defendants property rights and yet still achieve the desired increase in performance and accountability." *Doc.* 116 at p. 15-16. Defendants were not required to prove that there were no less burdensome alternatives. Rather, Plaintiffs were required to prove that there could have been no legitimate governmental interest

(e.g. increased performance and efficiency) or that the legislation was not rationally related to promoting that interest (e.g. that the Defendants could not have rationally believed that the actions taken would improve performance and efficiency). Plaintiffs did neither.

Because the evidence does not demonstrate any dispute of relevant material fact as to Plaintiffs' substantive due process claim and because no reasonable trier of fact could conclude that Defendants could have had no legitimate reason for the enacted legislation, summary adjudication is GRANTED in favor of Defendants as to Plaintiffs' Second Cause of Action.

### D. Plaintiffs' Fifth Cause of Action ("Violation of Article I, §[§] 7 and 19 of the California Constitution, Civil Code § 52.1")

In Defendants' motion for partial summary judgment filed on November 1, 2013, Defendants seek dismissal of Plaintiffs' Fifth Cause of Action. Defendants appear to read Plaintiffs' Fifth Cause of Action to assert a claim based on substantive due process. Plaintiffs' claim that they "have asserted both State and Federal substantive due process claims." Doc. 116 at p. 8, fn 3. Plaintiffs' Fifth Cause of Action is the only section of the SAC to address the California parallel to the Due Process Clause of the Fourteenth Amendment. As this court addressed in its Order re: Motion for Reconsideration, *Hanford Executive Management Employee Ass'n v. City of Hanford*, 2012 WL 603222 at *14, fn. 8 (E.D. Cal. 2012) *(Hanford II)*, a right to permanent employment status of public employees is not a fundamental right recognized by the California Constitution for purposes of substantive due process.  Accordingly, rational basis review is applied to this claim as well. As such, to the extent that Plaintiffs' Fifth Cause of Action sought to allege a substantive, rather than procedural, due process violation, summary adjudication is GRANTED in favor of Defendants based on the reasoning discussed in

38

*Section IV. D, supra.* To the extent that the Fifth Cause of Action sought to allege a procedural due process violation, summary adjudication is DENIED based on the reasoning discussed in *Section IV. A, supra.*

### V. DISPOSITION

Based on the foregoing, the Court issues the following ORDER:

1. Plaintiffs' Motions for Summary Judgment are DENIED in whole;

2. Defendants' Motions for Summary Judgment are DENIED in part and GRANTED in part;

   a. Defendants' Motion for Summary Judgment is DENIED as to Plaintiffs' Third Cause of Action for violation of Procedural Due Process.

   b. Defendants' Motion for Summary Judgment is DENIED as to Plaintiffs' Seventh and Eighth Causes of Action for POBRA and FFBRA.

   c. Defendants' Motion for Summary Judgment is GRANTED as to Plaintiffs' Second Cause of Action for Violation of Substantive Due Process.

3. Plaintiffs' Fifth Cause of Action remains only in so far as it is coextensive with Plaintiffs' Third Cause of Action. To the extent that Plaintiffs' Fifth Cause of Action alleged a Substantive Due Process Violation, Defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

Dated:   January 29, 2014    _____

                             SENIOR  DISTRICT  JUDGE

39